## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DEVI NAMPIAPARAMPIL,

*Plaintiff*,

v.

THE NEW YORK CITY CAMPAIGN FINANCE BOARD,
DAVID DUHALDE, in his official capacity as Senior Candidate
Services Liaison for the New York City Campaign Finance
Board, HANNAH EGERTON, in her official capacity as the
Director of Candidate Services for the New York City Campaign
Finance Board, AMY LOPREST, in her official capacity as
Executive Director for the New York City Campaign Finance
Board, BETHANY PERSKIE, in her official capacity as General
Counsel for the New York City Campaign Finance Board,
FREDERICK SCHAFFER, in his official capacity as Chairman
of the New York City Campaign Finance Board,  MATTHEW
SOLLARS, in his official capacity as Director of Public Relations
for the New York City Campaign Finance Board, and JACLYN
WILLIAMS, in her official capacity as a Candidate Services
Liaison for the New York City Campaign Finance Board,

*Defendants*.

**COMPLAINT**

Civil Action No. _____

JURY TRIAL DEMANDED

Plaintiff Devi Nampiaparampil hereby alleges for her Complaint against the Defendants,

by and through her undersigned counsel, with knowledge with respect to her own acts and on

information and belief as to other matters, as follows:

## INTRODUCTION

1.      Defendant, the New York City Campaign Finance Board (the "CFB"), along with

its officers and employees (the CFB together with the named officials, "Defendants"), touts itself

as a "nonpartisan, independent city agency that empowers New Yorkers to make a greater impact on their elections."[1]

2.      The CFB, however, has fallen well short of that lofty mission.  Instead of a non-partisan agency focused on educating everyday New Yorkers about candidates and upcoming elections, the agency has devolved into a bureaucratic government censor ripped straight from a Kafka novel.

3.      Plaintiff, Dr. Devi Nampiaparampil, ran as the Republican candidate for New York City's Public Advocate in the 2021 citywide election.  The Public Advocate is the first position in line to succeed the Mayor of New York.  But in her campaign to unseat the incumbent Public Advocate, Jumaane Williams, Dr. Devi encountered a series of speech and campaign restrictions that undermined both her campaign and her free speech rights.

4.      Indeed, the rules and restrictions that Defendants applied to Dr. Devi—as memorialized in contemporaneous correspondence and nearly undisputed facts—violate First Amendment protections that are taught in any foundational law-school course.  Defendants publish a "Voter Guide" ahead of each election to present voters with platform- and campaign-related information for candidates for citywide office.  But the CFB and its officials, including the individual defendants, blunt the usefulness of the Guide, restricting what candidates can say. In the 2021 election cycle, citing the CFB's Rule § 16-02(b)(i)(D) and the CFB's own written guidance that Dr. Devi could not "mention other candidates," Defendants prevented Dr. Devi from *mentioning her opponent **by name*** in the Voter Guide—instead forcing her to sterilize her Voter Guide profile by referring to the incumbent as the "current Public Advocate" (even though many voters may know the incumbent by his name, not his office).

---

[1] *See About the CFB*, New York City Campaign Finance Board, *available at* http://www.nyccfb.info/about.

5.      Ultimately, because her profile was not so sterilized, Defendants omitted Dr. Devi's profile entirely from the Voter Guide, instead stating in place of her profile, in an asterisk buried on the page, that "Candidate did not submit a complete profile in time for inclusion in this printed Voter Guide."

6.      As if that speech-suppression were not enough, Defendants also counseled Dr. Devi (in the video portion of the Voter Guide) against referring to her opponent's wife as a lobbyist—even though Mr. Williams's wife touts her role in the lobbying practice of a major law firm, and revealing that a political-opponent is affiliated with lobbyists is a tried-and-true campaign strategy for politicians on both sides of the aisle.

7.      And the CFB did not stop there.  Defendants also (i) restricted Dr. Devi from spending more than $6,000 of her own money on her campaign (both pre- and post-election), even though she never qualified for public funds (violating basic personal-expenditure protections established in *Buckley v. Valeo*, 424 U.S. 1 (1976)), and (ii) compelled her speech by requiring her to state her race and gender in a press release for the 2021 Public Advocate debate.

8.      Defendants have also undertaken a more purposeful vengeance-campaign against Dr. Devi.  Beginning in August 2022, Dr. Devi took various steps that made clear that she intended to pursue claims concerning statements certain defendants made (not at issue here) in connection with that 2021 election.  In response, beginning in October 2022, Defendants required Dr. Devi to address dozens of newfound audit inquiries—even though the election had been held nearly one year prior, and the CFB, in its post-election audit letter dated November 3, 2021, confirmed that Dr. Devi's campaign had a "0.00%" error rate.  That retaliatory audit continues to this day.

9.     The CFB is a governmental agency run amok, having adopted and applied plainly unlawful rules, regulations, and practices that trample on core political speech and campaigning, violating clear mandates of the First Amendment of the U.S. Constitution and the New York State Constitution.  Plaintiff brings this action to seek legal redress for these unlawful actions and to prevent these rules from violating her rights in future campaigns.

## THE PARTIES

10.     Plaintiff Devi Nampiaparampil is a Harvard-trained, board-certified physician. She ran for the office of New York City Public Advocate in the 2021 general election.  She currently resides in New York, New York.

11.     Defendant New York City Campaign Finance Board is an independent agency of the City of New York.  The CFB was established to administer the Campaign Finance Program created by the New York City Campaign Finance Act in 1988.  N.Y.C. Admin. Code §§ 3-701-719; N.Y.C. Charter §§ 1051-57.  The agency promulgates and applies various rules and regulations applicable to candidates seeking nomination or election to the office of mayor, comptroller, public advocate, borough president, or member of the City Council.  At all relevant times as to their alleged conduct, the CFB employed the individual defendants.  The CFB's headquarters are located at 100 Church Street, New York, NY 10007.

12.     Defendant Amy Loprest, at all relevant times, was the Executive Director of the CFB.  Loprest was involved in the CFB's critical decision to exclude Plaintiff from the CFB's published Voter Guide.

13.     Defendant David Duhalde, at all relevant times, was a Senior Candidate Services Liaison for the CFB.  Duhalde was responsible for aiding candidates, including Plaintiff, in navigating the CFB's rules and technical processes in connection with the election for Public

Advocate, and was involved in the CFB's critical decision to exclude Plaintiff from the CFB's published Voter Guide.

14.     Defendant Hannah Egerton, at all relevant times, was Director of Candidate Services for the CFB.  Egerton was involved in the CFB's critical decision to exclude Plaintiff from the CFB's published Voter Guide and frequently corresponded with Plaintiff regarding CFB rules and regulations.

15.     Defendant Frederick Schaffer, at all relevant times, was Chair of the CFB. Schaffer exerted control and oversight over the CFB and its employees, including in connection with the CFB's actions that gave rise to this action.

16.     Defendant Bethany Perskie, at all relevant times, was General Counsel for the CFB.  Perskie corresponded with Plaintiff in connection with her Voter Guide submissions.

17.     Defendant Matthew Sollars, at all relevant times, was the Director of Public Relations for the CFB.  Sollars corresponded with Plaintiff in connection with a televised Public Advocate debate and an associated media advisory that compelled Plaintiff to identify her race and gender to the public.

18.     Defendant Jaclyn Williams, at all relevant times, was a Candidate Services Liaison for the CFB.  Williams interacted with Plaintiff during the campaign and in connection with the CFB's post-election audit.

19.     At all relevant times, Defendants have acted or failed to act, as alleged herein, under the color of state or local law.  The individual defendants played a central role in the CFB conduct outlined herein.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the controversy arises under the U.S. Constitution and 42 U.S.C. § 1983.

21.     This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a).

22.     This Court has authority to award attorneys' fees pursuant to 42 U.S.C. § 1988.

23.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the present claims occurred in this district.

## FACTUAL BACKGROUND

### I.      Plaintiff Devi Nampiaparampil, M.D., M.S

24.     Dr. Devi Nampiaparampil, known in her circles and among the public as "Dr. Devi," is a board-certified physician specializing in interventional pain medicine, sports medicine, hospice and palliative care, and physical medicine and rehabilitation.  She performs interventional spinal pain procedures, joint injections, and nerve blocks for refractory pain.  Her primary private practice, Metropolis Pain Medicine, is located in New York City and attracts patients from across the country.  Dr. Devi has also owned small businesses in other states: Cytokine Press LLC in Maricopa County, Arizona, and Muscle and Nerve Pain Specialists PC in Cook County, Illinois.

25.     Dr. Devi graduated from the seven-year combined B.A./M.D. program at Northwestern University in 2002 and completed all her specialty training through Harvard Medical School.  She completed her internship in Internal Medicine at Beth Israel Deaconess in 2003 and her residency in Physical Medicine and Rehabilitation at Spaulding Rehabilitation Hospital in 2006.  In 2007, she completed a fellowship in Pain Medicine and Anesthesia at

Harvard University's Brigham and Women's Hospital.  Dr. Devi was the only woman in her residency and fellowship classes.  Since completing her training, she has been ranked by her professors, now peers, as among the top 5% of alumni from her residency program.

26.     Dr. Devi is also an Associate Professor at New York University's Grossman School of Medicine, where she has served on the faculty since 2010.  She has authored more than sixty publications in peer-reviewed journals over the course of her twenty-one-year career as a physician, including over twenty publications in the Journal of the American Medical Association (JAMA); in 2023, Amazon ranked the textbook that she co-authored as the number one bestseller in Ultrasonography (Radiology).  In addition, Dr. Devi offers medical consulting, educational and other services for corporations and government agencies; she has also appeared as a medical expert witness for the City of New York.

27.     Beyond her private practice, teaching, research, and private and litigation consulting services, Dr. Devi has a significant presence in local and national media.  She has served as Fox 5 New York's on-air medical contributor, regularly appearing on various programs.  She also has appeared in more than 500 national and international news segments, including for major news networks such as CNN, MSNBC, and Fox News, and for other programs such as the TODAY Show, The Dr. Oz Show, CBS This Morning, and NBC News.  As an actor, she appeared on the popular television show "General Hospital" and is a member of the Screen Actors Guild/American Federation of Television and Radio Artists (SAG/AFTRA).  She holds a Master of Science in Journalism from Columbia University.

28.     In 2021, Dr. Devi sought election for the office of New York City Public Advocate ("Public Advocate") as the citywide Republican nominee for that seat.  Throughout the election process, Dr. Devi regularly interacted with the CFB.

II.        **The New York City Campaign Finance Board**

29.        Defendant CFB was established to administer the Campaign Finance Program created by the New York City Campaign Finance Act in 1988, in the wake of multiple corruption scandals.  *See* N.Y.C. Admin. Code §§ 3-701–3-719; N.Y.C. Charter §§ 1051–57.  The stated mission of the agency is to "limit[] the role and influence of private money in the political process[.]"[2]  It promulgates the New York City Campaign Finance Board Rules (the "Board Rules"), which are codified into law under Title 52 of the Rules of the City of New York.

30.        The CFB says that it seeks to promote fair elections through various programs.  Among these programs are:  (1) the CFB's publication of a citywide "Voter Guide"; and (2) the CFB's Matching Funds Program.

A.        **The CFB Voter Guide**

31.        Chapter 16 of the CFB's Board Rules requires that the CFB publish a Voter Guide containing, among other information, statements from each candidate running for public office in New York City.  *See* CFB Board Rules § 16-02(a).  The candidate statements are intended to inform the public of the candidate's background and political platform.  The CFB has described the Voter Guide as a "critical" resource that "helps NYC voters make informed choices at the polls."[3]  The CFB is required to publish the Voter Guide in English and Spanish—both in print and online—and to mail a copy to every "city household in which there is at least one registered voter."  *Id.* § 16-03.  The CFB also publishes a video edition of the Voter Guide.

---

[2] *History of the CFB*, New York City Campaign Finance Board, *available at:* http://www.nyccfb.info/about/history (last visited July 14, 2023).

[3] @NYCCFB, Twitter (June 1, 2018, 1:58 PM), https://twitter.com/nyccfb/status/1002610373973946368.

32.   Candidates submit two types of statements for the Voter Guide:  (1) the "candidate print statement"; and (2) the "candidate video statement."

      a.   The candidate print statement contains biographical information about the candidate, including their previous experience, education, current occupation, as well as their political party and organizational affiliations.  The candidate print statement is also a piece of campaign literature, as the candidate is directed to include "information about the candidate's principles, platform, or views."  The foregoing information is included in both the printed and online Voter Guide.  *Id.* §§ 16-02(a), (b)(i)(A).  The candidate print statement must be submitted to the Board for approval.  *See id.* §§ 16-02(b)(i)(E), (F).

      b.   The candidate video statement is a video-recorded statement by the candidate for inclusion in the video edition of the Voter Guide.  The video statement must contain the same type of information about the candidate as the print statement, and the candidate's scripts for the video statement must be submitted for CFB approval before the candidate's scheduled recording session with the CFB.  *Id.* § 16-02(b)(ii).

33.   The CFB Board Rules contain four prohibitions on the content that may be included in the candidate print statement.  Three of these restrictions apply to speech that would be considered obscene, false, or criminal:  (i) the statements may not contain profanity or statements that are patently offensive, obscene, libelous, or defamatory; (ii) the statements may not assert facts that the candidate knows or should know to be false; and (iii) the statements may not violate any city, state, or federal law.  *Id.* § 16-02(b)(i)(D).

34.     The other restriction—at issue in this case—is that statements may not "refer to any opposing candidate by name." *Id.* Similar restrictions apply to the video statement. *Id.* § 16-02(b)(ii)(A)(1) (the print- and video-restrictions together, the "Challenged Rule").

35.     The deadline for Voter Guide submissions is determined by the Board. *Id.* §§ 16-02(b)(i)(F); 16-02(b)(ii)(C).

36.     Candidate statements that violate the requirements outlined in the CFB Board Rules, "as determined by the Board in its sole discretion," will not be included in the Voter Guide. *Id.* §§ 16-02(b)(i)(E), 16-02(b)(ii)(G).

**B.     The CFB Matching Funds Program**

37.     The CFB also runs a Matching Funds Program (the "Program" or "Matching Funds Program") that matches every $1 from a local donor with up to $8 of funding supplied by the City of New York.  The goal of the Program is, ostensibly, to help ensure that candidates can run against well-known and well-funded opponents, and to ensure that the voices of smaller, everyday donors are considered alongside larger contributors.

38.     For participating Public Advocate candidates in the 2021 election, the maximum contribution was $2,000, and the total maximum funding for a primary or general election was $4,408,000.  During the 2021 election cycle, participating candidates could personally spend up to $6,000 on their own campaigns—*i.e.*, three times the contribution limit.

39.     To be eligible to receive public funds, candidates must (1) raise a minimum number of contributions of $10 or more from the district(s) they hope to represent and raise a minimum amount from New York City residents; (2) agree to comply with, and demonstrate continued compliance with, the requirements of the Campaign Finance Act and CFB Rules;

(3) be on the ballot and have an opponent; and (4) submit a financial disclosure form.  Following

the election, campaigns must return any public funds not spent, and participate in an audit.

40.     Although Plaintiff sought to receive public funds, she ultimately did not qualify

for the Program because—given the CFB's byzantine requirements for establishing qualifying

contributions and Defendants' application of these roadblocks (and others) to stifle Dr. Devi's

campaign—she did not raise the minimum number of qualifying contributions.

### C.     The CFB Staff

41.     Dr. Devi interacted with several CFB staff members over the course of her

campaign.  Among those staff members were candidate liaisons and other personnel responsible

for assisting candidates via trainings, providing guidance regarding the CFB's Rules and the

Campaign Finance Act, conducting audits of campaign finances, and answering candidates'

questions about the relevant regulations.  According to the CFB's Ethical Guidelines, CFB

employees are required to follow "standards of behavior that go beyond legal and professional

obligations in order to ensure the highest degree of public confidence in the work of the Board"

and to "give greatest effect to its mandate as a non-partisan entity."  At all relevant times in this

action, the relevant employees from the CFB included:

42.     **David Duhalde**.  David Duhalde joined the agency as a Senior Candidate

Services Liaison in January 2020.  Although, as noted above, the CFB's own rules require the

agency and its staff to act as neutral, non-partisan election officials, Mr. Duhalde appears to be

anything but neutral.  Prior to his tenure at the CFB, he served as the Deputy Director at

Democratic Socialists of America ("DSA") from August 2015–2017.  He is also the former

political director of "Our Revolution," a Bernie-Sanders-affiliated political organization that, as

Duhalde described in April 2020, "would mobilize grassroots organizers into local formations to

advance social movement goals, elect candidates backing the Sanders agenda, and reform the Democratic Party."[4]

43.     The DSA had previously endorsed one of Dr. Devi's opponents in the Public Advocate race, the incumbent and current Public Advocate Jumaane Williams.  Additionally, and perhaps most egregiously,[5] an individual with the last name "Duhalde" **living at an address where a David Duhalde resided**, donated to "Jumaane 4 Ny"—Mr. Williams's Lieutenant-Governor campaign—on July 18, 2018.

44.     **Hannah Egerton**.  Egerton is the current Director of Candidate Services at the CFB.  She joined the agency in 2012 as a Candidate Services Liaison.  She manages outreach, trainings, and guidance provided to candidates and their staff with respect to compliance with the CFB's Rules and the Campaign Finance Act.

45.     **Bethany Perskie**.  Throughout the 2021 election period, Perskie served as General Counsel to the CFB.  She previously served as associate counsel with the CFB.  On information and belief, Perskie no longer works for the CFB.

46.     **Matthew Sollars**.  Throughout the 2021 election period, Sollars served as Director of Public Relations.  Sollars was responsible for CFB press materials in connection with the televised Public Advocate debate.

47.     **Jaclyn Williams**.  Jaclyn Williams was a Candidate Services Liaison at the CFB from August 2019 through May 2022.  In her role, she purported to assist candidates and their staff in preparing campaign finance disclosure reports and provided guidance on campaign

---

[4] David Duhalde, *Our Revolution Failed to Live Up to Its Potential. But the Bernie Movement Needs a Mass Organization Now*, Jacobin (Apr. 28, 2020), *available at* https://jacobin.com/2020/04/our-revolution-bernie-sanders.

[5] CFB Ethics Guideline 3(b) states that "staff shall not . . . make contributions to, or directly or indirectly request any person to make or pay any political assessment, subscription or contribution for, any candidate for an elective office of the city or for any elected official who is a candidate for any elective office."

finance rules and the Matching Funds Program.  On information and belief, she currently works for the New York City Housing Authority.

**III.     Dr. Devi's Campaign for Public Advocate & Interactions with the CFB**

48.      The Public Advocate is a non-voting member of the New York City Council and can co-sponsor or introduce legislation.  The official also acts as the City's ombudsperson, overseeing city agencies and investigating complaints from citizens about the agencies' activities.  The Public Advocate is the first in the line of succession to become Mayor should the need arise.

49.     The current Public Advocate, Jumaane Williams, assumed the office in March 2019 and ran as an incumbent against Dr. Devi in 2021.  Previously, he served as the New York City Councilmember for the 45th District.

50.     In Spring 2021, Dr. Devi decided to run for Public Advocate against Mr. Williams.  Dr. Devi was inspired to run for office due to harrowing personal experiences (as both a care provider and as a mother) with the City's underwhelming response to COVID-19.  She had never previously been involved in politics, but was troubled enough with her experiences to believe the City badly needed a change in leadership.  On April 2, 2021, Dr. Devi formally filed papers with the Board of Elections to run for Public Advocate.

51.     On April 6, 2021, Dr. Devi kicked off her campaign for Public Advocate.  She ran as a centrist, moderate Republican.  Her opponents in the general election were (i) the Democratic incumbent, Jumaane Williams, (ii) the Conservative candidate, Anthony Herbert, and (iii) the Libertarian candidate, Devin Balkind.  In the general election, Dr. Devi won the

support of more than 254,000 voters (approximately 23.4% of the vote), but ultimately lost the race to Mr. Williams.

52.    Throughout the course of the campaign and following the election, Dr. Devi had multiple troubling encounters with the CFB and its staff despite her best efforts to comply with the agency's numerous rules and regulations.  Instead of facilitating interactions between candidates and voters, and allowing voters the opportunity to assess candidates on the merits and on their political platforms, Defendants erected a labyrinth of roadblocks that hampered the democratic process.  Rather than detail all of those obstructions, this Complaint focuses on select aspects of the CFB's conduct.

### A.    The CFB Instructs Dr. Devi Regarding Limitations On Personal Contributions To Her Campaign

53.    In March 2021, the CFB required Dr. Devi to attend its mandatory candidate training program, which addresses CFB rules and its financial disclosure and auditing processes.

54.    During these sessions, the CFB made several crucial representations to Dr. Devi and the other candidates.

a.    *First*, the CFB represented to participants that the use of any third-party service provider in their field of service (*e.g.*, lawyers providing legal advice)[6] would either (i) count as an in-kind contribution subject to expenditure and contribution limits (if services were rendered in lieu of payment) or (ii) be required to be funded by campaign funds (if the campaign paid for the third-

---

[6] The CFB further represented that the use of third-party service providers separate from the provider's field of service (*i.e.*, having a lawyer hand out campaign literature on the sidewalk) would not be subject to these restrictions.

party services).  Thus, a candidate could not use her own funds (beyond the

contribution limit) to fund such services.

b. *Second*, the CFB informed Dr. Devi that, if she merely sought to participate in

the Matching Funds Program (and regardless of whether she was accepted

into the Program such that she received public funds), she would be subject to

a personal expenditure cap.  (This message was reinforced both during and

after the campaign.)

**B.  The CFB Excludes Dr. Devi From The Printed Voter Guide**

55.  The CFB initially set August 2, 2021, as the deadline for submitting candidate

statements to the Voter Guide.  The CFB's web portal for submissions malfunctioned that day

(one of a series of ill-timed crashes and malfunctions during the 2021 election cycle), so the

deadline was extended to August 3, 2021.

56.  On August 3, 2021, Dr. Devi submitted her candidate print statement for the

Voter Guide through the CFB web portal.  Defendant Duhalde confirmed receipt, but explained

via email that, under Rule 16-02(b)(i)(D)(1), the submission could not be used as written because

Dr. Devi had mentioned "Jumaane Williams" by name, rather than referring to him as an

"opponent" or "the current Public Advocate."  Duhalde instructed Dr. Devi to submit a revised

statement by August 5, 2021.  Duhalde advised that Dr. Devi could email any changes, but did

not advise her that she should not submit via the web portal, which was the standard vehicle for

submitting the print statement.

57.  Following Duhalde's communication, Dr. Devi submitted a revised candidate

print statement on August 5, 2021, via the web portal.  Unbeknownst to candidates, however,

although the CFB web portal was still technically accepting submissions on the user end, the

CFB was no longer receiving those statements on its end.  Dr. Devi did not hear of any further issues with her submissions until it was too late.

58.     On September 28, 2021—nearly eight weeks after Dr. Devi's Voter Guide submission—Dr. Devi received an email from Defendant Egerton informing her that her Voter Guide profile had been excluded from the Voter Guide because she had "mention[ed] [her] opposing candidate[] by name":

Dear Devi Nampiaparampil:

Thank you for providing the details about your request. The below response is on behalf of the Executive Director of the Campaign Finance Board (CFB). As we stated in our previous communications, the CFB will print your name as Devi Elizabeth Nampiaparampil, which matches your initial submission, in our 2021 general election Voter Guide. Moreover, it is our long-standing policy that honorifics such as "Dr." are not included as part of the candidate's name. We hold all candidates to the same standards and cannot make any exceptions.

Secondly, we want to note that your profile in the online and print Voter Guide will only state your name. On August 4, 2021, we informed your campaign that you needed to resubmit your Voter Guide profile and Video Voter Guide script because the original violated Board rules mentioning opposing candidates by name. We provided an extension for your resubmission that was due on August 5, 2021. We did not receive an updated profile, but did receive your revised video script. Because we did not receive an updated Voter Guide submission, we were unable to publish any other information in the print Voter Guide. Your online Voter Guide profile will contain your name and the video you filmed in August.

Sincerely,

Hannah Egerton

Director of Candidate Services

New York City Campaign Finance Board

100 Church Street, 12th Floor

New York, NY 10007

59.     Shortly thereafter, the CFB published the print and online Voter Guide.  The Voter Guide was also mailed to millions of registered voters.  A CFB press release at the time included a statement from Defendant Loprest that "Millions of city voters rely on the Voter Guide to help finalize their decisions at the polls in our local elections."[7]

60.     The Voter Guide contained the statements and photographs of the other three candidates for Public Advocate.  Dr. Devi's section, however, was excluded.  Instead, the Voter

---

[7] *See* https://www.nyccfb.info/media/press-releases/nyc-official-voter-guide-2021/.

Guide displayed Dr. Devi's name but added an asterisk next to it with the caption—drafted and inserted by the CFB, without Dr. Devi's approval—"Candidate did not submit a complete profile in time for inclusion in this printed Voter Guide." This asterisk and explanation were buried on the far right side of the Voter Guide, without any photograph of Dr. Devi or further explanation of her positions—no "Top 3 Issues" or even "Background Information."

61.     The 2021 Voter Guide, in relevant part, thus appeared as follows:



62.     As one might imagine, the CFB employees' decision to exclude Dr. Devi from the Voter Guide—based entirely on the use of her opponent's name—had a devastating effect on Dr. Devi's campaign, by giving voters the impression that Dr. Devi was not running a serious campaign and could not meet basic deadlines. Indeed, individuals and donors expressed exactly those concerns to Dr. Devi's campaign.

63.     This deleterious turn-of-events had tangible effects, materially impacting her fundraising.

64.     By way of example, in the weeks before the Voter Guide was published without her candidate statement, Dr. Devi raised approximately $80,000.

65.     Just one week later, however, once the Voter Guide was mailed to millions of registered voters, the campaign raised only approximately $1,000.  The CFB's conduct thus precipitated a 98.75% drop in her fundraising.[8]

66.     This drop in fundraising, in turn, impacted Dr. Devi's ability to qualify for the Matching Funds Program.  Although Dr. Devi sought to receive matching funds, she in fact did not qualify for the Program, and did not receive a single cent of matching funds.[9]

67.     Nonetheless, the CFB prohibited Dr. Devi from contributing personally, either via money or in-kind contributions, to her own campaign beyond the $6,000 cap.

68.     Meanwhile, Dr. Devi's opponent, the incumbent Public Advocate who received a glitzy spread in the Voter Guide right below Dr. Devi's omitted profile, received nearly $1 million in public matching funds.[10]

---

[8] Furthermore, CFB employees refused to allow Dr. Devi to use the honorific "Dr." in the Voter Guide or in other campaign materials and CFB press releases, despite allowing a prior candidate to use the Dr. honorific.

[9] Dr. Devi's qualification for matching funds was impeded by other roadblocks mounted by Defendants; for nearly every contribution Dr. Devi submitted as meeting the minimum for matching funds, the CFB came up with an excuse for why it did not qualify.

[10] *See* Carl Campanile, *Jumaane Williams gets nearly $1M in reelection matching funds — but critics claim he doesn't need it*, N.Y. Post (Oct. 7, 2021, 7:45 PM), https://nypost.com/2021/10/07/jumaane-williams-gets-1-million-in-reelection-matching-funds/.

C. **The CFB Restricts and Fails to Publicize Dr. Devi's Video Voter Guide Statement**

69.    Dr. Devi's Video Voter Guide statement was also effectively excluded from public dissemination.

70.    *First*, Duhalde flagged as improper a statement in Dr. Devi's proposed video statement script, which accurately referred to Mr. Williams's wife as a "lobbyist."

71.    Duhalde (whose household had apparently donated to a prior campaign of Mr. Williams), informed Dr. Devi that she could be <u>sued</u> for "mentioning the candidate's wife"— including the accurate characterization that Mr. Williams's wife was a "lobbyist."[11]

72.    This threat of suit from Defendant Duhalde pressured Dr. Devi to revise her script to remove the reference to Mr. Williams's wife and her job.

73.    Dr. Devi revised her script accordingly, and Duhalde accepted and approved the revised script.  (Other instructions from the CFB directed that Dr. Devi refrain from criticizing other candidates in the Voter Guide, including a written directive that Dr. Devi "not mention other candidates" in her Voter Guide profile.)

74.    *Second*, despite configuring other candidates' video statements so they could be easily discoverable online by voters (for example, by including search tags), the CFB posted Dr. Devi's video statement in a way that was virtually unsearchable.

D. **Dr. Devi Is Compelled To Identify By Race And Gender**

75.    The CFB hosted a debate for Public Advocate in October 2021.

---

[11] Michael Gartland, *NYC public advocate Jumaane Williams to wed lobbyist with ties to the tabloid he hates*, N.Y. Daily News (June 13, 2021), https://www.nydailynews.com/news/politics/new-york-elections-government/ny-nyc-public-advocate-jumaane-williams-to-marry-india-sneed-20210713-sbiz65pi4faatgpcy7w37zlz4m-story.html;    Carl Campanile & Jason Beeferman, *Public Advocate Jumaane Williams' wedding bash draws Adams, de Blasio, AG James*, N.Y. Post (July 16, 2021), https://nypost.com/2021/07/16/nyc-public-advocates-wedding-bash-draws-eric-adams-mayor-de-blasio-ag-james/ (describing Ms. Sneed as a "lobbyist").

76.     In advance of that debate, Defendant Sollars informed Dr. Devi by email that there would be a press release concerning the debate.

77.     In an email dated October 18, 2021, Sollars explained that "[i]n anticipation of the Public Advocate debate tomorrow night, we will send out an additional media advisory."  Sollars advised Plaintiff that he needed a "[v]isual description" as part of the press release, which should "include your race [and] gender."  This requirement was purportedly "to provide greater access to blind or visually-impaired voters."

78.     Plaintiff did not desire to include her race or her gender in this government-mandated press release because she believed it was inconsistent with her equal-opportunity campaign platform. Nonetheless, after Sollars followed up on October 19, 2021—saying he "would like to send this release out ASAP"—Plaintiff was forced to provide a description that stated she was a "5'3" Indian-American female in my early 40s with dark brown hair and dark brown eyes."

79.     The press release was indeed released later that day, with Plaintiff's compelled speech presented, in relevant part, as follows:

### Candidates Appearing:

- Devi Nampiaparampil: "I am a 5'3" Indian-American female in my early 40's with dark brown hair and dark brown eyes. I am wearing a fitted navy blue suit and a stylish red shirt."

- Jumaane Williams: "I am a black man with short hair wearing an olive green suit, green vest and white shirt. I am 45 years old, and I have tourette syndrome."

### E.     Dr. Devi Seeks A Temporary Restraining Order To Correct For Her Exclusion From The Voter Guide

80.     After discovering that her print statement would not be included in the Voter Guide, on September 29, 2021, Dr. Devi sought a temporary restraining order in New York State

Supreme Court (the "TRO Court").[12]  The CFB's attorney noticed an appearance in the TRO Court.

81.     Dr. Devi requested that a flyer or postcard insert be added to the distributed Voter Guide with her profile included.  Despite her motion, the CFB moved forward with distribution of the Voter Guide, mailing it to millions, prior to the TRO hearing.

82.     Ultimately, the TRO was rejected as moot, since the Voter Guide had already been mailed out to millions of people.

83.     Five days before the election—even though Dr. Devi had not qualified for the Matching Funds Program—Defendant Jaclyn Williams emailed Dr. Devi that she would be subject to "post-election penalties" as a result of "[o]ver-the-limit contributions."

## IV.     The Election And Immediate Aftermath

84.     The 2021 New York City Public Advocate general election took place on November 2, 2021.  Dr. Devi lost to Mr. Williams by a vote of 68.4% to 23.4%.  She received over 254,000 votes.  Dr. Devi publicly conceded the race on multiple social media platforms on November 2, 2021.

85.     After the election, however, the CFB continued to superintend confusing and unlawful rules and practices.

86.     *First*, the day after the election—even though she had received zero public-matching funds—Defendant Williams once again sent Dr. Devi an email, on behalf of the CFB, this time explaining that Dr. Devi had to be "mindful of spending remaining campaign funds only on permissible post-election expenditures" and advising that "[y]our campaign can only spend on very limited activities."  Defendant Williams also attached a guide explaining that Dr.

---

[12] *Nampiaparampil v. New York City Campaign Finance Board*, Index No. 010118/2021 (Sup. Ct., N.Y. Cty.).

Devi could only make "reasonable expenditures" for "legal fees in furtherance of your campaign *if you have a reasonable chance of winning*."  This notice also included a bolded "**Prohibited**" section that proscribed Dr. Devi from donating to any "other campaigns."

87.     Further, in or around January 2022, in conversations with Defendant Williams, Dr. Devi was further given to understand that she was subject to strict personal-expenditure limits—including for third-party vendors or consultants—as a matter of law, even though, to repeat, she had received no matching funds from the CFB.  Indeed, Defendant Williams sent Dr. Devi a link to a CFB "guideline"—explaining that the "penalt[ies] for over-the-limit contributions can be found" there; those guidelines state that the CFB has complete discretion to impose whatever penalties it deems appropriate.[13]

88.     *Second*, Dr. Devi's campaign exited the election with zero flagged campaign finance violations and zero penalties.  Following the election, entering 2022, Dr. Devi's campaign no longer had any assets.  In the months that followed the election, in anticipation of post-election accounting, Dr. Devi's then candidate-services liaison, Defendant Williams, informed her that she should close her campaign bank account in order to cease the need to file further financial disclosures.  Relying on this information, Dr. Devi closed her campaign bank account in early January 2022.  However, despite the absence of any campaign activity, as of July 24, 2023, Dr. Devi is still required to file disclosure statements with the CFB.

---

[13] *See Guidelines For Staff Recommendations For Penalty Assessments For Certain Violations* at 2 ("While the CFB expects the standard penalties to be appropriate in most cases, CFB staff may increase or decrease the amount of a recommended penalty–or recommend no penalty at all–if warranted based on the circumstances described below."), *available at* http://www.nyccfb.info/pdf/2021_Penalty_Guidelines.pdf.

**V.      The CFB's Retaliatory Audit And Dr. Devi's *Pro Se* State Court Action**

89.      In August 2022, Dr. Devi sought to bring libel claims against the CFB.  In this regard, she filed a proposed order-to-show-cause in the TRO Court, and also sought to enter papers in the TRO Court in furtherance of making such claims.

90.      The TRO Court declined to sign the order to show cause in August 2022, and such decision was entered on the docket.

91.      Just a few weeks thereafter, ***and nearly one full year after she had lost the Public Advocate election***, the CFB abruptly sent Dr. Devi a letter, dated October 7, 2022, describing alleged campaign finance violations and threatening "significant penalties."

92.      This was so despite the CFB finding zero outstanding campaign finance violations upon Dr. Devi's exit from the election.  Indeed, in a letter from the CFB dated November 3, 2021, the CFB confirmed that Dr. Devi's campaign's "backup error rate"—meaning the error rate in back-up documentation to support fundraising figures—was "0.00%."  This same letter flagged minor potential additional issues, that Dr. Devi resolved in April 2022.

93.      However, on the heels of Dr. Devi taking steps to pursue claims against the CFB and in apparent retaliation, the CFB identified *dozens on dozens* of supposed campaign-finance violations for a dormant campaign that had ended a year prior.

94.      These allegations were exceedingly minor and technical.  By way of example, one related to missing an $8.96 receipt from Duane Reade.

95.      Dr. Devi was forced to respond to the audits and attest to financial records without the help of an accountant or attorney, because she believed, based on the CFB's representations, that hiring one would violate the CFB's campaign-finance rules.  In addition to the CFB representations to this effect during Dr. Devi's mandatory training sessions, Dr. Devi

received similar variations of that advice following the election, particularly from Defendant Williams.

96.     Dr. Devi ultimately responded to the CFB's audit-related inquiries via letter on May 8, 2023.  Responding to this audit took Dr. Devi hundreds of hours, as she could not outsource the tasks the CFB had assigned her due to the CFB's representation that any such assistance could incur penalties.  During the time Dr. Devi spent responding to these purported violations, she was, for example, unable to treat existing or new patients.

97.     On information and belief, the CFB has not flagged or required responses to this scale of purported campaign-finance violations by similarly-situated candidates.

98.     In October 2022, Dr. Devi filed her lawsuit against the CFB in New York State Supreme Court, alleging, among other items, negligence and libel in connection with statements made by the CFB.

99.     Dr. Devi proceeded *pro se* based on the understanding, gathered through CFB training sessions and other conversations with Defendants, that she could incur campaign finance penalties if she retained counsel (even though she did not ultimately participate in the Matching Funds Program).  Without access to counsel and given Defendants' statements, Dr. Devi did not understand that although it may generally be the case that legal expenses are considered campaign expenses, the New York City Campaign Finance Act expressly waives any campaign expenditure limitations for purposes of litigating claims related to the election.  N.Y.C. Admin. Code § 3–706(4)(a).

100.    The court eventually dismissed Dr. Devi's complaint.

**VI.**     **Dr. Devi's *Pro Se* Federal Court Action**

101.     On May 26, 2023, still under the impression she could face penalties if she engaged counsel, Dr. Devi filed a *pro se* complaint in the Eastern District of New York, naming the CFB and certain of its directors and staff as defendants.  She again proceeded *pro se* based on the CFB's representations that she could not retain legal counsel without incurring campaign finance violations.

102.     Dr. Devi discovered that the statements made by Ms. Williams and the CFB during its mandatory training sessions regarding legal expenses were false after speaking to a pro bono attorney on or around May 22, 2023.  *See* N.Y.C. Admin. Code § 3–706(4)(a).

103.     On June 22, 2023, Judge Pamela K. Chen, presiding over that case, issued a show-cause order to explain why the case should not be transferred to the Southern District of New York, in light of the fact that it was not apparent from the face of Dr. Devi's complaint that the violations occurred in the Eastern District of New York.

104.     In light of that order, and following Dr. Devi's retention of counsel in connection with this case, Dr. Devi voluntarily dismissed her complaint in the E.D.N.Y., and filed the instant action.

105.     But for Defendants' actions in connection with the foregoing, including the rules and requirements challenged herein, Plaintiff would seek to run for election again in an election within the jurisdiction of the CFB.

**<u>FIRST CAUSE OF ACTION</u>**
**42 U.S.C. § 1983**
**Violation of the First and Fourteenth Amendments**
**to the U.S. Constitution – Facial and As-Applied**
**(Freedom of Speech – Written Voter Guide)**

106.     Plaintiff reasserts and realleges the preceding allegations as if fully set forth herein.

107.    The First Amendment prevents Congress from enacting laws that abridge the freedom of speech.  *See* U.S. Const. amend. I.

108.    The First Amendment is applicable to the States through the Fourteenth Amendment.  *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

109.    Accordingly, States cannot "restrict expression because of its message, its ideas, its subject matter, or its content."  *Id*. (internal quotation marks and citation omitted).

110.    "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  *Id*.  Even laws that are "facially content neutral, will be considered content-based regulations of speech" if they "cannot be justified without reference to the content of the regulated speech."  *Id*. at 164 (internal quotation marks and citation omitted).

111.    Content-based laws are subject to strict scrutiny.  *Id*.  Therefore, content-based laws "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."  *Id*. at 163.

112.    The CFB prohibits candidate statements from referring to any opposing candidate by name (defined earlier as the "Challenged Rule").  CFB Board Rules §§ 16-02(b)(i)(D)(1); 16-02(b)(ii)(A)(1).  The CFB also propounds written guidance that, consistent with the Challenged Rule, advises candidates to refrain from mentioning other candidates in the Voter Guide.  The Challenged Rule restricted Plaintiff's freedom of expression in the 2021 Public Advocate election, thus causing a First Amendment injury.

113.    The Challenged Rule will limit Plaintiff's freedom of expression as a candidate in future citywide elections, and will cause the same such injury in the future if not remedied.

26

114.    Defendants cannot justify the Challenged Rule without reference to the content of the Plaintiff's desired speech.

115.    Therefore, the Challenged Rule is a content-based law and subject to strict scrutiny.

116.    There is no compelling state interest for the speech restrictions in the Challenged Rule.

117.    The Challenged Rule is not narrowly tailored.

118.    Accordingly, the Challenged Rule is unconstitutional under the First Amendment as a facial matter, and also as-applied to Plaintiff in these circumstances, and will cause the same such injury in the future if not remedied.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983**
**Violation of the First and Fourteenth Amendments**
**to the U.S. Constitution – Facial and As-Applied**
**(Freedom of Speech – Video Voter Guide)**

119.    Plaintiff reasserts and realleges the preceding allegations as if fully set forth herein.

120.    The First Amendment prevents Congress from enacting laws that abridge the freedom of speech.  *See* U.S. Const. amend. I.

121.    The First Amendment is applicable to the States through the Fourteenth Amendment.  *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

122.    Accordingly, States cannot "restrict expression because of its message, its ideas, its subject matter, or its content."  *Id*. (internal quotation marks and citation omitted).

123.    "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  *Id*.  Even laws that are

"facially content neutral, will be considered content-based regulations of speech" if they "cannot be justified without reference to the content of the regulated speech." *Id*. at 164 (internal quotation marks and citation omitted).

124.    Content-based laws are subject to strict scrutiny. *Id*. Therefore, content-based laws "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id*. at 163.

125.    Plaintiff sought to campaign against her opponent in the 2021 Public Advocate election by accurately characterizing her opponent's wife as a lobbyist in Plaintiff's Video Voter Guide profile.

126.    Defendants prevented Plaintiff from making such statement. The CFB also propounds written guidance that advises candidates to refrain from mentioning other candidates in the Voter Guide, including the video script.

127.    This activity restricted Plaintiff's freedom of expression in the 2021 Public Advocate election, thus causing a First Amendment injury.

128.    These restrictions will limit Plaintiff's freedom of expression as a candidate in future citywide elections, and will cause the same such injury in the future if not remedied.

129.    Defendants cannot justify the application of these restrictions without reference to the content of the Plaintiff's desired speech.

130.    Therefore, the application of these restrictions is a content-based law and subject to strict scrutiny.

131.    There is no compelling state interest for such speech restrictions.

132.    The application of these restrictions is not narrowly tailored.

133.    Accordingly, the application of these restrictions violated Plaintiffs' First Amendment rights on an as-applied basis, and will cause the same such injury in the future if not remedied.

134.    These restrictions are also unconstitutional under the First Amendment as a facial matter.

### THIRD CAUSE OF ACTION
**42 U.S.C. § 1983**
**Violation of the First and Fourteenth Amendments**
**to the U.S. Constitution – Facial and As-Applied**
**(Compelled Speech – Debate)**

135.    Plaintiff reasserts and realleges the preceding allegations as if fully set forth herein.

136.    "Compelling speech as a condition of receiving a government benefit cannot be squared with the First Amendment." *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 234 (2d Cir. 2011).

137.    Defendants compelled Plaintiff to state her race and gender in connection with a press release, authored by Defendants and dated October 19, 2021, concerning the 2021 debate for Public Advocate.

138.    Compelling this speech as a condition of publicizing the 2021 debate for Public Advocate violated Plaintiff's First Amendment rights on an as-applied basis.

139.    These restrictions will compel Plaintiff's freedom of speech as a candidate in future citywide elections as well, and will cause the same such injury in the future if not remedied.

140.    This practice is unconstitutional in all such applications, and therefore facially violates the First Amendment.

29

## FOURTH CAUSE OF ACTION
### 42 U.S.C. § 1983
### Violation of the First and Fourteenth Amendments
### to the U.S. Constitution – As-Applied
### (Campaign Expenditures – Pre-Election)

141.    Plaintiff reasserts and realleges the preceding allegations as if fully set forth herein.

142.    If a campaign-related expenditure restriction "imposes a substantial burden on the exercise of the First Amendment right to use personal funds for campaign speech, that provision cannot stand unless it is justified by a compelling state interest." *Davis v. FEC*, 554 U.S. 724, 740 (2008).

143.    It is also true that "if a candidate voluntarily chooses to accept public funds in lieu of private fundraising . . . then prohibiting her from using funds other than the public grant, including her own, does not burden her constitutional rights." *Corren v. Condos*, 898 F.3d 209, 227 (2d Cir. 2018).

144.    Although Plaintiff sought to receive public-matching funds through participation in the Program, due to Defendants' byzantine requirements and their application of those requirements to Plaintiff in particular, she ultimately did not qualify for the Program, and did not receive any public-matching funds.

145.    Nonetheless, Defendants limited Plaintiff's personal campaign expenditures to $6,000 before election day.

146.    These restrictions will limit Plaintiff's freedom of speech as a candidate in future citywide elections as well, and will cause the same such injury in the future if not remedied.

147.    Defendants' application of this rule violated Plaintiff's First Amendment rights on an as-applied basis.

**FIFTH CAUSE OF ACTION**
**42 U.S.C. § 1983**
**Violation of the First and Fourteenth Amendments**
**to the U.S. Constitution – Facial and As-Applied**
**(Campaign Expenditures – Post-Election)**

148.    Plaintiff reasserts and realleges the preceding allegations as if fully set forth

herein.

149.    Defendants' matching-funds program only applies to candidates within an

election cycle.

150.    An election cycle is defined in Defendants' "Campaign Finance Handbook" (at

42) as comprising the "out-year (or before the election year), primary election, and general

election" time period.

151.    However, Defendants limited Plaintiff's personal campaign expenditures to

$6,000 after election day.

152.    These restrictions will limit Plaintiff's freedom of speech as a candidate in future

citywide elections as well, and will cause the same such injury in the future if not remedied.

153.    Defendants' application of this rule violated Plaintiff's First Amendment rights on

an as-applied basis.

154.    These restrictions are also unconstitutional under the First Amendment as a facial

matter.

**SIXTH CAUSE OF ACTION**
**42 U.S.C. § 1983**
**Violation of the First and Fourteenth Amendments**
**to the U.S. Constitution**
**(Retaliation)**

155.    Plaintiff reasserts and realleges the preceding allegations as if fully set forth

herein.

31

156.    "[R]etaliat[ion] . . . in violation of the First Amendment" requires showing that Plaintiff's "(1) speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [them]; and (3) there was a causal connection between this adverse action and the protected speech." *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018) (internal quotation marks omitted).

157.    Plaintiff undertook protected speech by, for example, suing the CFB on multiple occasions, including, in October 2021 and October 2022, and by taking steps to pursue claims in summer 2022.  In addition, she spoke out publicly concerning her experience with the CFB.

158.    Beginning in August 2022, Dr. Devi took steps that made clear that she intended to pursue claims in connection with certain statements certain defendants made (not at issue here) in connection with that 2021 election.  Following this protected activity and in apparent retaliation, Defendants suddenly accused Plaintiff of dozens of accounting and audit infractions associated with her then-dormant campaign for Public Advocate.

159.    Defendants' accounting and auditing investigations are ongoing.

160.    The allegations of accounting impropriety are serious, could have wide-ranging implications for her professional standing (including potentially exposing Plaintiff to risk of losing her professional licenses and compromising her ability to participate in insurance programs), and have cost Plaintiff hundreds of hours of her time to address—hours she could have instead been, for example, treating patients.

161.    These allegations would cause any person of ordinary firmness from deciding to speak out against, or to sue, Defendants.

162.    This retaliatory action was instituted in response to Plaintiff's protected speech, in violation of the First Amendment.

**SEVENTH CAUSE OF ACTION**
**Violation of N.Y. Const. art. I, § 8 – Facial and As-Applied**
**(Freedom of Speech – Written Voter Guide)**

163.    Plaintiff reasserts and realleges the preceding allegations as if fully set forth herein.[14]

164.    Article I, Section 8 of the New York Constitution provides that, "Every citizen may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

165.    "The protection afforded by the guarantees of free . . . speech in the New York Constitution is often broader than the minimum required by the First Amendment." *O'Neill v. Oakgrove Constr., Inc.*, 71 N.Y.2d 521, 529 (1988).

166.    The protections of the First Amendment of the United States Constitution therefore provide a baseline, but not a ceiling, for the protections guaranteed by the New York Constitution.

167.    Plaintiff's allegations in Count I are incorporated by reference herein.

168.    Defendants' conduct violated the New York Constitution.

**EIGHTH CAUSE OF ACTION**
**Violation of N.Y. Const. art. I, § 8 – Facial and As-Applied**
**(Freedom of Speech – Video Voter Guide)**

169.    Plaintiff reasserts and realleges the preceding allegations as if fully set forth herein.

---

[14] Counts VII through XII are pleaded in the alternative, to the extent Counts I through VI, arising under the United States Constitution and Section 1983, are not cognizable. *See Buari v. City of New York*, 530 F. Supp. 3d 356, 408 (S.D.N.Y. 2021).

170.    Article I, Section 8 of the New York Constitution provides that, "Every citizen may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

171.    "The protection afforded by the guarantees of free . . . speech in the New York Constitution is often broader than the minimum required by the First Amendment."  *O'Neill v. Oakgrove Constr., Inc.*, 71 N.Y.2d 521, 529 (1988).

172.    The protections of the First Amendment of the United States Constitution therefore provide a baseline, but not a ceiling, for the protections guaranteed by the New York Constitution.

173.    Plaintiff's allegations in Count II are incorporated by reference herein.

174.    Defendants' conduct violated the New York Constitution.

## NINTH CAUSE OF ACTION
### Violation of N.Y. Const. art. I, § 8 – Facial and As-Applied
### (Compelled Speech – Debate)

175.    Plaintiff reasserts and realleges the preceding allegations as if fully set forth herein.

176.    Article I, Section 8 of the New York Constitution provides that, "Every citizen may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

177.    "The protection afforded by the guarantees of free . . . speech in the New York Constitution is often broader than the minimum required by the First Amendment."  *O'Neill v. Oakgrove Constr., Inc.*, 71 N.Y.2d 521, 529 (1988).

178.   The protections of the First Amendment of the United States Constitution therefore provide a baseline, but not a ceiling, for the protections guaranteed by the New York Constitution.

179.   Plaintiff's allegations in Count III are incorporated by reference herein.

180.   Defendants' conduct violated the New York Constitution.

**TENTH CAUSE OF ACTION**
**Violation of N.Y. Const. art. I, § 8 – As-Applied**
**(Campaign Expenditures – Pre-Election)**

181.   Plaintiff reasserts and realleges the preceding allegations as if fully set forth herein.

182.   Article I, Section 8 of the New York Constitution provides that, "Every citizen may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

183.   "The protection afforded by the guarantees of free . . . speech in the New York Constitution is often broader than the minimum required by the First Amendment." *O'Neill v. Oakgrove Constr., Inc.*, 71 N.Y.2d 521, 529 (1988).

184.   The protections of the First Amendment of the United States Constitution therefore provide a baseline, but not a ceiling, for the protections guaranteed by the New York Constitution.

185.   Plaintiff's allegations in Count IV are incorporated by reference herein.

186.   Defendants' conduct violated the New York Constitution.

**ELEVENTH CAUSE OF ACTION**
**Violation of N.Y. Const. art. I, § 8 – Facial and As-Applied**
**(Campaign Expenditures – Post-Election)**

187.     Plaintiff reasserts and realleges the preceding allegations as if fully set forth
herein.

188.     Article I, Section 8 of the New York Constitution provides that, "Every citizen
may freely speak, write and publish his or her sentiments on all subjects, being responsible for
the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or
of the press."

189.     "The protection afforded by the guarantees of free . . . speech in the New York
Constitution is often broader than the minimum required by the First Amendment." *O'Neill v.
Oakgrove Constr., Inc.*, 71 N.Y.2d 521, 529 (1988).

190.     The protections of the First Amendment of the United States Constitution
therefore provide a baseline, but not a ceiling, for the protections guaranteed by the New York
Constitution.

191.     Plaintiff's allegations in Count V are incorporated by reference herein.

192.     Defendants' conduct violated the New York Constitution.

**TWELFTH CAUSE OF ACTION**
**Violation of N.Y. Const. art. I, § 8**
**(Retaliation)**

193.     Plaintiff reasserts and realleges the preceding allegations as if fully set forth
herein.

194.     Article I, Section 8 of the New York Constitution provides that, "Every citizen
may freely speak, write and publish his or her sentiments on all subjects, being responsible for

the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

195.    "The protection afforded by the guarantees of free . . . speech in the New York Constitution is often broader than the minimum required by the First Amendment."  *O'Neill v. Oakgrove Constr., Inc.*, 71 N.Y.2d 521, 529 (1988).

196.    The protections of the First Amendment of the United States Constitution therefore provide a baseline, but not a ceiling, for the protections guaranteed by the New York Constitution.

197.    Further, under the New York Constitution, a retaliation claim lies where the activity constitutes protected speech; where the consequences taken by the State would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights"; and where there is a causal connection between the exercise of the protected activity and the adverse action.  *Massaro v. Dep't of Educ.*, 121 A.D.3d 569, 569-70 (1st Dep't 2014).

198.    Plaintiff's allegations in Count VI are incorporated by reference herein.

199.    Defendants' conduct violated the New York Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants, and issue the following relief:

(a)    Monetary damages against Defendants for all economic, monetary, actual, consequential, and compensatory damages Plaintiff has suffered as a result of Defendants' conduct, in an amount to be proven at trial.

(b)    A declaration that the rules, regulations and conduct challenged herein violate both the First Amendment to the United States Constitution and

the New York State Constitution, including that:

  i.   The Challenged Rule is unconstitutional on its face and as applied to
       Plaintiff under the First Amendment to the Constitution of the United
       States because it is a content-based and/or viewpoint-based
       regulation of speech that is not narrowly tailored to achieve a
       compelling government interest, and application of the rule will
       violate Plaintiff's constitutional rights in future campaigns;

  ii.  Defendants violated Plaintiff's First and Fourteenth Amendment
       rights by restricting her speech in connection with the video Voter
       Guide, such practice, rule, or regulation is facially unconstitutional,
       and application of the rule will violate Plaintiff's constitutional rights
       in future campaigns;

  iii. Defendants violated Plaintiff's First and Fourteenth Amendment
       rights by compelling her speech in connection with the 2021 Public
       Advocate debate, such practice, rule, or regulation is facially
       unconstitutional, and application of the rule will violate Plaintiff's
       constitutional rights in future campaigns;

  iv.  Defendants violated Plaintiff's First and Fourteenth Amendment
       rights by restricting her personal campaign expenditures before the
       November 2, 2021 election, and application of the rule will violate
       Plaintiff's constitutional rights in future campaigns;

  v.   Defendants violated Plaintiff's First and Fourteenth Amendment
       rights by restricting her personal campaign expenditures after the

November 2, 2021 election, such practice, rule, or regulation is facially unconstitutional, and application of the rule will violate Plaintiff's constitutional rights in future campaigns; and

vi.    Defendants violated Plaintiff's First and Fourteenth Amendment rights by unlawfully retaliating against her for undertaking constitutionally-protected activity.

(c)    Nominal damages of $1.00.

(d)    Punitive damages.

(e)    Permanent injunctive relief against Defendants, enjoining enforcement of the Challenged Rule and all other rules, regulations, and practices that gave rise to the Constitutional injuries alleged herein.

(f)    An award of attorneys' fees and costs under 42 U.S.C. § 1988 and other applicable law.

(g)    All other further legal and equitable relief as the Court may deem just and proper.

Dated:  July 24, 2023
          New York, NY

                                  HOLWELL SHUSTER & GOLDBERG LLP

                                  By:   */s/ Blair E. Kaminsky*           
                                  Blair E. Kaminsky
                                  Brian T. Goldman
                                  Arian Soroush
                                  425 Lexington Avenue
                                  New York, NY 10017
                                  Tel:  (646) 837-5151
                                  bkaminsky@hsgllp.com
                                  bgoldman@hsgllp.com
                                  asoroush@hsgllp.com

                                  *Attorneys for Plaintiff*