```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   DEVI NAMPIAPARAMPIL,

 4                Plaintiff,

 5          v.                                  23 CV 6391 (ER)

 6   THE NEW YORK CITY CAMPAIGN
     FINANCE BOARD, ET AL.,
 7
                  Defendants.
 8
     ------------------------------x
 9                                              New York, N.Y.
                                                October 18, 2023
10                                              4:00 p.m.

11   Before:

12                       HON. EDGARDO RAMOS,

13                                              District Judge

14                           APPEARANCES

15   HOLWELL SHUSTER & GOLDBERG LLP
          Attorneys for Plaintiff Nampiaparampil
16   BY:  BLAIR EDEN KAMINSKY

17   NEW YORK CITY LAW DEPARTMENT
          Attorneys for Defendants NYC, Et Al
18   BY:  DAVID SUMNER THAYER

19

20

21

22

23

24

25
```

1            THE COURT:  Goof afternoon, everyone.  This is Judge
2    Ramos.
3            Jazmin, please, call the case.
4            (Case called)
5            MS. KAMINSKY:  Good afternoon, your Honor.
6            This is Blair Kaminsky, on behalf of the plaintiff.
7            MR. THAYER:  Good afternoon, your Honor.
8            This is David Thayer, from the New York City Law
9    Department on behalf of the defendant.  With me online are
10   three attorneys with the Campaign Finance Board.
11           MS. KAMINSKY:  Your Honor, I apologize.  This is Blair
12   Kaminsky.  I did just want to note, the plaintiff is on the
13   line as well.
14           THE COURT:  Okay.  So good afternoon to you all.
15           This matter is on for premotion conference.  I note
16   for the record that it is being conducted by telephone and
17   although, we are here at the request of the defendants, this is
18   the first time the parties have appeared before me.
19           So, Ms. Kaminsky, let me begin with you.  Why don't
20   you tell me what is case about in a nutshell.
21           MS. KAMINSKY:  Absolutely.  Thank you, your Honor.
22           So we represent the plaintiff who was the 2021
23   republican candidate for public advocate.  And throughout the
24   campaign and ever since she has encountered a host of Campaign
25   Finance Board policies and practices that (inaudible) violated

her First Amendment rights.  I'll give you some examples.  This is not a -- but I just want to give you some examples.

So the first is that she was told, and not just told but this is a Campaign Finance Board rule, that if her voter guide which is a CFB campaign platform and her voter guide she could not identify her opponent by name, which we think is a clear First Amendment violation.  Likewise, she was told that in the CFB video voter guide, she could not identify her opponent's wife as a lobbyist, again, restricting her speech in violation of First Amendment --

THE COURT:  What was the second one?  She could not do what?

MS. KAMINSKY:  Identify her opponent's wife as a lobbyist.

THE COURT:  Okay.

MS. KAMINSKY:  So the second issue is that in the video voter guide Dr. Devi was told that she could not identify her opponent's wife as a lobbyist.

The next issue is that the CFB limited Dr. Devi's own campaign funding even though she did not receive matching funds.  These are all policies and practices that Dr. Devi would face if she made -- (inaudible), which she very much would like to do.

Beyond those issues that arose in connection with the campaign itself, and those are all constitutional issues that

1  we'll raise as both spacial challenges and as applied, in

2  addition to all of those, the CFB engagement in the retaliatory

3  audit process raising dozens of allegations of Campaign Finance

4  infractions, which it raise only once they say that he was

5  going to pursue legal action pursuing a lawsuit against the CFB

6  which is protected First Amendment speech.

7         So, we've raised a number of First Amendment issues

8  that we're pursuing here.

9         THE COURT:  Let me ask you, I actually have never

10 handled a case involving the New York City Campaign Finance

11 Board.  And the list of items that you just went through seem

12 problematic to me.  So, I assume that these things have been

13 challenged in the past.

14        Is there a body of law concerning these various

15 restrictions in connection with a New York City campaign?

16        MS. KAMINSKY:  There is not.  Of course, there is well

17 established body of law and First Amendment issues generally

18 that we're not aware of anyone else challenging these

19 particular practices and policies.

20        MR. THAYER:  I would echo that.  I'm not aware of any

21 cases directly challenging the various rules that Ms. Kaminsky

22 has identified.

23        THE COURT:  Mr. Thayer, are these actual regulations,

24 restrictions on (inaudible).

25        MR. THAYER:  The CFB does have a particular regulation

1   that prohibits candidates in the CFB's voter guide from
2   identifying other candidates by name.  They're told or
3   encouraged to use the office instead.  I think that, my sense
4   is that it's sort of the genesis of this rule was partly out of
5   concerns for decorum in documents that were going to be
6   distributed to all residents by the CFB.
7             In addition to there being --
8             THE COURT:  I'm sorry.  I am trying to understand it.
9   There's some noise that came through.
10            So you are saying that these restrictions are in
11  connection with materials that the Board itself sent out?
12            MR. THAYER:  That's correct, your Honor.
13            In advance of I believe every general election in the
14  city, the Board distributes a voter guide.  In fact, I think
15  I've got one in my apartment lobby this morning.  And
16  basically, that voter guide is a place where candidates who
17  have submitted a statement to the Campaign Finance Board, that
18  statement is included.  It usually hits on key campaign
19  platform issues or identify major accomplishments of the
20  candidate (inaudible) for example, but have to be distributed
21  by the CFB.
22            THE COURT:  All right.  And if it's distributed by CFB
23  presumably, this voter guide has all of the candidates?
24            MR. THAYER:  As I understand it, yes, all of the
25  candidates are listed.  In this particular case, the

1  plaintiff's written statement for the voter guide was not
2  included because at first it was returned to her because she
3  had named the incumbent public advocate by name.  Then as I
4  understand it, she attempted to correct that and return it to
5  the CFB.  The CFB did not receive it in time for inclusion in
6  the written voter guide.
7           However, plaintiff stated candidates also created a
8  video voter guide, which I think is distributed on the Campaign
9  Finance Board website through YouTube as well, she did get to
10 have the statement video, campaign video voting guide
11 statement.
12          THE COURT:  Okay.  So, again, this is something that
13 is provided to the public by the Campaign Finance Board?
14          MR. THAYER:  That is correct, your Honor.
15          THE COURT:  Tell me again what the reason is for not
16 mentioning your opponent.  It seems to me that if especially as
17 an incumbent, what's the harm that is attempted to be
18 addressed?
19          MR. THAYER:  I think that originally the notion was
20 decorum and it was meant for candidates to talk about their own
21 campaign rather than the campaign of others.  And I think as I
22 understand it, there was also a concern that some candidates
23 will drop out and if another candidate campaign statement in
24 the voter guide is referring to a candidate who is no longer in
25 the race by name, it may sort of generate confusion with the

1    voters.

2            THE COURT:  And the restriction on the amount of money
3    that an individual can spend on their campaign, is that an
4    actual rule as well.

5            MR. THAYER:  Yes, that's correct, your Honor.
6    Candidates are who are participating in the Campaign Finance
7    Board's Public Financing Program do face restrictions on the
8    amount of money that they themselves may contribute to their
9    own campaign.  In the plaintiff's case that limit here was six
10   thousand dollars.  But the Campaign Board's perspective is that
11   this is well grounded in Constitutional law around public
12   financing programs.  And I think plaintiff makes much of the
13   fact that she does not actually receive public funding for her
14   campaign.  But the importance, what's important here to
15   remember is that candidates who participate in a Public
16   Campaign Financing Program are not necessarily guaranteed
17   public funding.  They participate to be eligible to receive
18   that.  But in order to then actually receive funds, they
19   basically, their campaign basically has to have enough momentum
20   and buzz.  I believe they have to have over five hundred city
21   residents donate an amount in excess of -- I'm not sure I
22   recall the number but I want to say something like $100,000.

23           THE COURT:  Okay.  And I think I understood from
24   Ms. Kaminsky that the plaintiff here did not participate in
25   that program.  Do we have contrary information?

1       MR. THAYER:  Yes, your Honor, I do have contrary
2  information.  The plaintiff did participate.  She was a
3  participating candidate in the program but she does not
4  ultimately prove eligible to actually receive something.
5       THE COURT:  Meaning that she applied to be eligible
6  for public finance monies.
7       MR. THAYER:  Correct.  Which triggered the
8  restrictions on her own contributions campaign.
9       THE COURT:  Okay.
10      MR. THAYER:  It's not the receipt of funding that
11 triggers the restrictions on her own contributions to her own
12 campaign.  It is the facts that she is a participating
13 candidate in the program.
14      THE COURT:  And then I'm curious.  How long have these
15 regulations, restrictions, et cetera, been in place?
16      MR. THAYER:  I'm actually not sure.  Mr. Gallagher,
17 who is the acting general counsel of the Campaign Finance
18 Board, if he wants to jump in and provide some insight into
19 that.
20      MR. GALLAGHER:  Sure.  This is Joseph Gallagher, the
21 interim general counsel at the Campaign Finance Board.
22      The restrictions have been in place since the
23 inception of the program that was enacted by the city council
24 in 1989, and the first election cycle was 1991 that had these
25 restrictions in place for participating campaigns.

1    THE COURT:  Okay.  And they've never been challenged
2    before?
3    MR. GALLAGHER:  I have to look back at all of the case
4    law but certainly, public financing has been challenged and has
5    been upheld.  And restrictions, the main crux is that you're a
6    voluntary participant in this program and you sign a long
7    certification acknowledging that you understand the
8    restrictions that will be placed on your campaign in order to
9    be eligible for public funds, not for the granting of public
10   funds.
11   THE COURT:  So, if I wanted to run for public advocate
12   and I was a billionaire and I didn't apply, I could spend as
13   much money as I wanted on my campaign?
14   MR. GALLAGHER:  Exactly, your Honor.  Michael
15   Bloomberg is a perfect example of that.
16   THE COURT:  What is it you want to do, Mr. Thayer?
17   MR. THAYER:  Yes, your Honor.  We have sought leave
18   move to dismiss here.  We think that there was a prior action
19   in New York County Supreme Court that the plaintiff brought and
20   that was dismissed on the merits in response to a motion under
21   3211 (A) (7) of the Civil Practice Law and Rules that is a
22   motion for failure state a cause of action.  And we believe
23   that that action applying New York Res Judicata Law, which is
24   the appliable law here precludes that action from going
25   forward.

1          THE COURT:  When was that action filed and decided?

2          MR. THAYER:  The action was decided on April 14, 2023,

3    and it was filed on October 21, 2022.  And it's under index

4    number 159019/2022 in New York County.

5          THE COURT:  Was the plaintiff represented by the

6    Holwell Shuster firm in that action as well?

7          MR. THAYER:  The plaintiff was not represented.  She

8    was present.

9          THE COURT:  Thank you.

10         Ms. Kaminsky, why isn't this action precluded by the

11   prior action?

12         MS. KAMINSKY:  Sure.  First I will just clarify the

13   last point.  The reason (inaudible) they preclude the prior

14   action was because the CFB had (inaudible)understand that there

15   would be a Campaign Finance violation if she had engaged

16   council.  I'll get back to that when we talk about the res

17   judicata claim but I did just want to add that.

18         So we're here alleging continuing misconduct.  There

19   is an ongoing injury that we are addressing here, so that res

20   judicata is simply inapplicable.  we cited a couple Second

21   Circuit cases and a District of Connecticut case in our letter

22   going to these points.  The fact that Dr. Devi is considering

23   running again and would very much like to run again but for

24   those rules a new fact that was not addressed before

25   (inaudible) constitutional claims.  Constitutional claims were

1  not raised in the original action and courts have declined to
2  apologize (inaudible) where the second action asserts
3  constitutional claims, success of challenges by the same
4  plaintiff to the same statute on constitutional grounds that
5  haven't been barred by res judicata.
6        We're also seeking different relief here.  We are
7  seeking both equitable relief and damages.  The prior actions
8  sought only damages.
9        And finally, circling back to where I started, it
10 would be fundamentally unfair for the Court to bar her claims
11 here where she didn't retain counsel in the prior action and
12 because CFB led her to believe that would violate county and
13 finance rules.
14       THE COURT:  Can you talk a little bit more about that?
15 So she had a particular conversation with someone at the CFB?
16       MS. KAMINSKY:  No.  She was advised that any
17 professional that she engaged, if she paid them, that would
18 have to come from campaign funding.  If they provided pro bono
19 work, that would counter the campaign contribution, all of
20 which would be subject to the Campaign Finance Program's
21 restrictions for the results, as she is very concerned that if
22 she engaged counsel, that would violate Campaign Finance rules
23 and that could have various ramifications, both for her
24 campaign, but also for her as a doctor and personally.
25       THE COURT:  I guess, I'm not quite following.

1          She was told during some training that was provided

2   that if in connection with her campaign she retained

3   professionals that they would have to be retained in a

4   particular fashion.  Was that lawsuit in connection with her

5   campaign?

6          MS. KAMINSKY:  It was.  It related to facts on the

7   campaign, yes.  And what we're saying is the CFB applies these

8   rules and (inaudible) CFB put out there very, very technical

9   and so she did not want to run any risk of those rules.

10         THE COURT:  Okay.  Very well.  So, Mr. Thayer, let me

11  ask you this, are you planning to move solely on res judicata

12  and not on the merits?

13         MR. THAYER:  Your Honor, I did also in my premotion

14  letter include a statement indicating that -- Oh, it seems like

15  my colleagues at the Campaign Finance Board have dropped off

16  here.

17         But returning to your Honor's question, the premotion

18  letter also did highlight at the last two claims in the

19  plaintiff's complaint relate to the retaliation allegedly in

20  the form of an audit against Ms. Nampiaparampil.  And we do

21  believe that there's also Monell issues with that.  So, I did

22  include that in the premotion letter as well

23         THE COURT:  Tell me about the audit.  According to

24  Ms. Kaminsky, the audits were noticed after either she told you

25  she'd be filing the lawsuit or after she filed the lawsuit.  Do

1  you know what the timeline there is?
2           MR. THAYER:  All campaigns are audited after the
3  campaign.
4           THE COURT:  Every one?
5           MR. THAYER:  Yes, your Honor.
6           THE COURT:  Okay.
7           MR. THAYER:  It is my understanding the Campaign
8  Finance Board had already issued preliminary findings in excess
9  of 200 such preliminary findings this year alone.
10          THE COURT:  With respect to the plaintiff?
11          MR. THAYER:  No, just to all candidates.  And I think
12 the typical, the pace of auditing was that around the time that
13 she filed her judicial action in state supreme that the
14 auditing time of year, so to speak, had come around.  So, I
15 think it's pure happenstance that she happened to file a
16 lawsuit and then the CFB began its charter mandated audit of
17 her.
18          THE COURT:  Okay.  The auditing time of year?
19          MR. THAYER:  I just wanted to say, your Honor, I
20 believe that chime that we just heard was the Board's attorneys
21 coming back on.
22          THE COURT:  Okay.  Very well.  So this is what I'm
23 going to do.  I am going to allow the defendants to make their
24 motion and it'll be done on the following schedule:
25          The motion will be due in three weeks, November 8.

1  The response will be due three weeks after that, which will be,
2  actually, the Friday, December 1 because of the holiday of the
3  prior week.  On Friday December 1 the response is due and on
4  Friday, December 8, the reply.
5           MR. THAYER:  Your Honor, may I ask that the initial
6  moving papers be set for the 10th?  I note that the 7th is the
7  day before is Election Day and a Holiday in which both of our
8  offices will be closed.  So the reviewing of final papers may
9  be somewhat hampered by that.
10          THE COURT:  You get the day off for Election Day?
11          MR. THAYER:  It's a state holiday, yes, your Honor.
12          THE COURT:  So you wanted the 10th?
13          MR. THAYER:  Yes, please.
14          THE COURT:  You could file it on the 10th, and the
15 responses will still be due on December 1 and the reply on
16 December 8.
17          Okay.  Anything else from you, Ms. Kaminsky?
18          MS. KAMINSKY:  Yes, your Honor.
19          We have been trying to have a Rule 26(F) conference
20 with defendants.  They've refused.  They say because they're
21 moving to dismiss, discovery would be futile.  Obviously, if
22 they want to move to stay discovery, they can, but they have
23 not.  So, we would like to have that Rule 26(F) conference with
24 them, and of course, if they do move to stay, we would have the
25 opportunity to do so to oppose that and brief that.  So we

1  would like some guidance from your Honor on how to proceed
2  there.
3           THE COURT:  Mr. Thayer, there's been no discovery,
4  correct?
5           MR. THAYER:  Sorry, your Honor.  There was an echo
6  there and I missed your Honor's question.
7           THE COURT:  I don't believe there's a request to stay
8  discovery, correct?
9           MR. THAYER:  That's correct, your Honor.  I have not
10 made one to date.  I did intend to also raise this with the
11 Court today.  We do believe that the motion is not only
12 potentially dispositive of all of the case but potentially at a
13 minimum, some of the case, and that the scope of discovery
14 would be pretty much determined by the order on the motion.  I
15 would be happy to brief the stay question alongside of the
16 motion to dismiss itself or if your Honor would prefer that we
17 do a quick letter brief exchange, I'm happy to do that as well.
18          THE COURT:  Let's do that instead.  If you could put
19 in a letter and Ms. Kaminsky can respond for the following
20 week, that would be useful.
21          MR. THAYER:  I'm sorry, your Honor.  There was an echo
22 again.  I didn't hear the deadline for our motion.
23          THE COURT:  One week from today and one week later
24 Ms. Kaminsky's response.
25          MS. KAMINSKY:  Thank you, your Honor.

NAIAANAMC                     Conference

1          THE COURT:  Okay.  Anything else, Mr. Thayer?
2          MR. THAYER:  Nothing for the defendants, your Honor.
3     Thank you.
4          THE COURT:  We're adjourned.  Stay well, everyone.
5                       (Adjourned)