# Exhibit M

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | |
|---|---|---|
| PRESENT: HON. DAKOTA D. RAMSEUR | PART | 34M |
| Justice | | |

-----------------------------------------------------------------X

DEVI E NAMPIAPARAMPIL, METROPOLIS PAIN MEDICINE PLLC,

                       Plaintiff,

- v -

NEW YORK CITY CAMPAIGN FINANCE BOARD,

                       Defendant.

-----------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 159019/2022 |
| MOTION DATE | 12/16/2022 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 104, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 125 were read on this motion to/for                        DISMISSAL          .

     In October 2022, *pro se* plaintiff Devi Nampiaparampil and Metropolis Pain Medicine PLLC (hereinafter, "Metropolis," which plaintiff solely owns) commenced the instant action against defendant New York City Campaign Finance Board ("CFB"), an independent non-partisan agency tasked with overseeing rules related to the use of public funding in elections for NYC public offices. Some of the agency's responsibilities include offering candidates training and guidance in complying with campaign finance laws and publishing informational guides to voters. Nampiaparampil alleges, among other things, that when she was running to be New York City's Public Advocate in 2021, the CFB provided her (whether negligently or intentionally) with false information and made at least two false statements that libeled her. Taken together, plaintiffs allege that the CFB's actions during the election made it more difficult to secure campaign financing, which in turn caused injuries to both Nampiaparampil's person and her business. In motion sequence 001, the CFB has moved to dismiss the complaint with prejudice pursuant to CPLR 3211 (a) (7) for failure to state a cause of action and (a) (8) for lack of personal jurisdiction. Plaintiffs oppose the motion in its entirety. In addition, they cross move for permission: (1) to file the required Notice of Claim and to deem it as timely served *nunc pro tunc*; and (2) for Nampiaparampil to represent Metropolis in this matter. For the following reasons, defendant's motion to dismiss is granted and the cross motion is denied.

## BACKGROUND

     Plaintiff Nampiaparampil is a trained physician who in 2021 ran in the general election for the Office of New York City Public Advocate. The CFB is an independent non-partisan agency established by the New York City Campaign Finance Act, codified in the New York City Administrative Code at Title 3, Chapter 7, entitled "Campaign Financing." (*See* Admin. Code § 3-708.) The CFB holds training sessions to inform those candidates who wish to use public funds in their campaigns on how to comply with various finance regulations, including individual

159019/2022  NAMPIAPARAMPIL MD, DEVI E ET AL vs. NEW YORK CITY CAMPAIGN FINANCE BOARD
Motion No.  001

Page 1 of 8

M001

1 of 8

contribution limits and reporting requirements. (Admin. Code §3-703 [15].) Registered candidates, their campaign managers, and their treasurer are required to attend such training programs. (*Id.*) During one of these mandatory sessions, plaintiffs allege that CFB employees erroneously advised her that she could not use more than three times the maximum allowed individual contribution (for the Office of Public Advocate, $2,000) of her own personal finance to fund her campaign,[1] (NYSCEF doc. no. 1 at ¶10, complaint), that her employees at Metropolis could not work for the campaign as it would be considered a corporate contribution, and that Nampiaparampil's use of a car would be considered a campaign expense (which allegedly forced her to place herself in danger during the campaign by riding the subway late at night). In addition, she faults the CFB for failing to advise her that she could spend campaign money up front and pay off the debt later. (*Id.* at ¶ 12-14.) Relying on the advice or lack thereof, plaintiffs contend that the CFB interfered with their ability to raise money for the campaign and, consequently, Nampiaparampil was forced to perform campaign activities that could otherwise have been outsourced to professionals, all of which deprived her medical practice of a physician and her small children of a mother. (*Id.* at ¶ 16.) Moreover, the need for fundraising, plaintiffs allege, forced her to hold campaign events that placed her in danger from constituents: at one event, a man injured her and later assaulted her; at another, a man appeared in a "Joker" masked and threatened to kill her as the Joker had Batman's father. (*Id.* at ¶¶ 19, 23.)

In addition to holding training sessions for candidates, the CFB also produces a voter guide that it then distributes to eligible New York City voters. The voter guide publishes a concise statement, provided by the candidates themselves, and may include information such as their party affiliation, previously held elected public offices, endorsements, and their policy positions/platform. (*See* New York City Charter, Chapter 46, §1053.) Each statement must comply with CFB promulgated rules and regulations. (*See* RCNY § 16-02.)[2] In the complaint, Nampiaparampil appears to argue that the CFB defamed her when it published the guide with an asterisk next to her name with the caption, "Candidate did not submit a complete profile in time for inclusion in this printed voter guide." (NYSCEF doc. no. 1 at ¶ss.) According to her, the CFB objected to her statement because it included a rival candidate's personal name, as opposed to his position, in violation of CFB rules. Plaintiffs allege that the CFB printed the guide even though she corrected the issue through the CFB's web portal. Lastly, the CFB issued an allegedly libelous press release when it stated, "This debate is not required under city law since two or more candidates have not met the nonpartisan, objective, and non-discriminatory criteria established in the Campaign Finance Act." (*Id.* at ¶ 8.) According to plaintiffs, the CFB made these two statements with malice, and injured Nampiaparampil's reputation by suggesting she lacked interest in the campaign and was disorganized, unserious, etc. (*Id.* at ¶tt.)

In this action, plaintiff has asserted causes of action against the CFB for negligence, libel, disparagement of a commercial entity, negligent hiring and retention, and breach of contract. In lieu of an answer, the CFB has moved to dismiss each cause of action under CPLR 3211 (a) (7).

---

[1] Administrative Code § 3-703 (1) (h) does prohibit candidates from making personal expenditures to the campaign to three time the applicable amount for individual contributions but this limitation only applies if the candidate wishes to obtain public funds for their campaign.
[2] The Court provides a copy of the Board's rules here: https://www.nyccfb.info/PDF/CFB_Rules.pdf

159019/2022   NAMPIAPARAMPIL MD, DEVI E ET AL vs. NEW YORK CITY CAMPAIGN FINANCE BOARD
Motion No. 001
Page 2 of 8
M002

2 of 8

The Court below finds that plaintiff has not alleged facts that sufficiently plead any of these causes of action.

## DISCUSSION

*General Municipal Law Sections 50-e and 50-i*

General Municipal Law § 50-i (1) provides that no action shall be prosecuted or maintained against a city entity for personal injury, wrongful death, or damage to property resulting from the city's negligence "unless (a) a notice of claim shall have been made," "(b) at least thirty days shall have elapsed since the service of such notice," and "(c) the action or special proceeding shall be commenced within one year and ninety days after the event upon which the claim is based." (General Municipal Law § 50-i.) § 50-e of the same law requires that plaintiffs must serve notice on the city within 90 days after the claim arises. (General Municipal Law § 50-e.) Here, plaintiffs have not complied with these provisions. First, Nampiaparampil and Metropolis did not serve the CFB with a notice of claim within 90 days. (*See Nicholas v New York*, 130 AD2d 470, 471 [2d Dept 1987] ["Compliance with the notice of claim provisions of General Municipal Law § 50-e is a condition precedent to suit. As such, it must be pleaded in the complaint" (citations omitted)].) The most recent allegation overall (a verbal assault by a third-party on the campaign trail) is from December 2021. (NYSCEF doc. no 1 at ¶ 29.) The most recent allegation concerning conduct by the CFB would be the training sessions, in March and April (NYSCEF doc. no 6, campaign training attendance record) and the voter guide, published, as far as the Court can tell, around September 2021. And yet, as to either, there is no allegation that plaintiffs served notice. As such, they have failed to comply with §50-e's 90-day time to file a notice of claim.

Second, plaintiffs have failed to comply with § 50-i (1) (c), which is also why the Court must deny plaintiffs' cross motion to rectify the failure to serve notice. § 50-e (5), entitled "application for leave to serve a late notice," provides "upon application, the court...may extend the time to serve a notice of claim" but such extension "shall not exceed the time limited for the commencement of the action by claimant." (GML §50-e [5].) Where a plaintiff moves to rectify the failure to provide notice after the 1-year-and-90-day period for an action in which the statute applies, the court is without authority to grant it. (*See Roytal Daycare Ctr., LLC v PB 2180 Pitkin Ave, LLC*, 180 AD3d 1097, 1099 [2d Dept 2022]; *Beauvoir v City of New York*, 176 AD3d 437, 437-438 [1st Dept 2019] ["To permit a court to grant an extension after the Statute of Limitations has run would...allow the court to grant an extension which exceeds the Statute limitations"].) Here, since plaintiffs' general negligence claim and negligent hiring/retention/supervising claim arise from CFB's training sessions that took place in March and April 2021, these causes of action are unmistakably outside the year-and-90-day period, and as such the Court is powerless to grant an extension for a notice of claim. As to their remaining claims—libel, disparagement of a commercial entity, and breach of contract—plaintiffs have not demonstrated a reasonable excuse for failing to provide notice or that defendant had actual knowledge of the essential facts[3] of the cause of action. (*See Williams v Nassau County Med.*

---

[3] Plaintiffs allege that the CFB had actual notice of their claims, describing various instances in which the CFB took adverse actions against her. For instance, she alleges that the CFB opposed sending a supplemental mailing to voters after it had published its official guide, "manipulated

NYSCEF DOC. NO. 146
INDEX NO. 159019/2022
RECEIVED NYSCEF: 04/14/2023

Case 1:23-cv-06391-ER    Document 25-13    Filed 11/10/23    Page 5 of 9

*Ctr.*, 6 NY3d 531, 538 [2006]; *Porcaro v City of New York*, 20 AD3d 357, 358 [1st Dept 2005] [Key factors court must consider is whether movant demonstrated a reasonable excuse, whether municipality acquired actual notice, and whether delay would substantially prejudice the municipality].) Additionally, plaintiffs' proposed notice of claim to be served describes the time of her injury in March of 2021—well beyond one year and 90 days. Accordingly for these reasons alone, plaintiffs' causes of action are dismissed.

However, given the importance of the allegations to plaintiffs, the Court will address the merits of each cause of action below.

*CPLR 3211 (a) (7)—Failure to State a Cause of Action*

On a motion to dismiss for failure to state a cause of action under CPLR 3211 (a) (7), courts afford the pleadings a liberal construction, accept the facts as alleged in the complaint as true, and give the plaintiff the benefit of every possible favorable inference. (*Leon v Martinez*, 84 NY2d 83, 87 [1994]; *JF Capital Advisors, LLC v Lightstone Group, LLC*, 25 NY3d 759, 764 [2015].) However, the court need not accept as true bare legal and factual conclusions. (*Vig v New York Hairspray Co.*, 67 AD3d 140, 145 [1st Dept 2009].) A courts' inquiry is limited to assessing the legal sufficiency of the plaintiff's pleadings; accordingly, its only function is to determine whether the facts as alleged fit within a cognizable legal theory. (*JF Capital Advisors*, 25 NY3d at 764.)

Plaintiff's Negligence Cause of Action

Where a municipality is exercising a government function—as is indisputably the case when the CFB conducts the statutorily obligated training sessions for candidates and their campaigns—a plaintiff seeking to recover must demonstrate the municipality owed them a special duty of care. (*Ferreira v City of Binghampton*, 38 NY3d 298, 309-310 [2022].) This is known as the special duty rule. It can be defined as such: while a municipality owes a general duty to the public, it does not owe "a duty of care running to a specific individual sufficient to support a negligence claim unless the facts demonstrate that a special duty was created." (*Id.*, quoting *Valdez v City of New York*, 18 NY3d 69, 75 [2011]; *Applewhite v Accuhealth, Inc.*, 21

---

the Department of Sanitation to prosecute my campaign for eleven violations of illegal campaign postings," and opposed various FOIL requests. (NYSCEF doc. no. 104 at p 27, ¶120.) However, none of these allegations demonstrate that the CFB had knowledge of the facts that underlie the legal theories upon which its liability for libel, breach of contract, or disparagement is based. (*See Matter of Islam v City of New York*, 164 AD3d 672, 674 [2d Dept 2018]; *Mehra v City of New York*, 112 AD3d 417, 418 [1st Dept 2013] [Holding that a report against the defendant that did not make mention of petitioner's present allegations and how they caused his injury did not establish defendant's knowledge].) Here, a Justice of this Court declined an OSC for a supplemental publishing (NYSCEF doc. no. 99), there is no evidence of "manipulation," and the CFB "opposed" the FOIL request by explaining that they did not have files matching the requested documents. (NYSCEF doc. no. 91.) Plaintiffs provide the Court with nothing that would indicate these instances provided actual notice.

159019/2022   NAMPIAPARAMPIL MD, DEVI E ET AL vs. NEW YORK CITY CAMPAIGN FINANCE BOARD
Motion No. 001

Page 4 of 8

M004

4 of 8

NY3d 420, 426 [2013].) Such a special duty is "born of a special relationship between the plaintiff and the government entity." (*McLean v City of New York*, 12 NY3d 194, 199 [2009].)

The Court of Appeals has recognized that special duties arise in three distinct ways: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by a person who benefits from the duty, or (3) when the municipality assumes positive direction and control in the face of a known, blatant, and dangerous safety violation. (*Ferreira*, 38 NY3d at 310; *McLean*, 12 NY3d at 199.) On the instant pleadings, the only plausible theory supporting a special duty is (1). But to recover against a municipality for an alleged breach of a statutory duty, the statute must also envision either an express or implied private right of action. (*McLean*, 12 NY3d at 200, citing *Pelaez v Seide*, 2 NY3d 186, 200 [2004].) Here, since Administrative Code Title 3, Chapter 7 does not have an express private-right-of-action provision and it is plaintiffs' obligation to prove a special duty (*see Ferreira*, 38 NY3d at 310), plaintiffs must demonstrate the statute contains an implied right.

The Court of Appeals has found that a private right of action may fairly be implied only in a narrow subset of cases where (1) the plaintiff is one of the class members for whose particular benefit the statute was enacted, (2) recognition of a private right would promote the legislative purpose, and (3) to do so would be consistent with the legislative scheme. (*Sheehy v Big Flats Community Day*, 73 NY2d 629, 633 [1989]; *Pelaez*, 2 NY3d at 200.) All three factors must be satisfied before an implied private right of action will be recognized. (*Haar v Nationwide Mut. Fire Ins. Co.*, 34 NY3d 224, 228-229 [2019].) Here, the statutes under which plaintiffs have brought these negligence claims do not fairly permit an implied right.

With respect to whether plaintiff is a member of the class for whose particular benefit the statutes were enacted, the Court finds that she is not. Broadly speaking, candidates undoubtedly benefit from the CFP's training and guidance. However, the CFB and the regulations they enforce for candidates to receive public funds are not aimed for their particular benefit but rather aimed at ensuring fairer, more competitive elections, limiting the role of money in politics, increasing the impact of smaller donations, providing challengers with a more level playing field against incumbents, and increasing the visibility of candidates from under-represented communities. In other words, the purpose of Administrative Code, Title 3 is not to provide benefits to the candidates themselves,[4] but to facilitate the policy goals described above. (*See* Section 1. Declaration of Legislative Intent and Findings, 12/2003 [The Council "seeks to reaffirm" the fundamental goals of enhancing competition for elective municipal offices, limiting campaign contributions and expenditures to reasonable levels, and vastly increasing public information about the sources and uses of campaign funds."].)

On the "most important" factor (*Cruz v TD Bank, N.A.*, 22 NY3d 61, 70-71 [2013]), the Court finds a private right of action to be inconsistent with the legislative scheme. § 3-703 (15) states, "[p]articipating candidates, their campaign managers, treasurers or persons with

---

[4] Nampiaparampil's membership in a minority group—as an Indian American—and as a unique candidate—a trained physician with military and combat experience—creates no more of a special duty, as she argues, than it does for other candidates.

159019/2022   NAMPIAPARAMPIL MD, DEVI E ET AL vs. NEW YORK CITY CAMPAIGN FINANCE BOARD
Motion No. 001
Page 5 of 8
M005

5 of 8

significant managerial control over a campaign shall be required to attend a training provided by the campaign finance board concerning compliance with the requirements of the campaign finance program and use of the campaign finance program software." The statute's clear, unambiguous language, which the Court must give effect to (*see Locke v Aston*, 31 AD3d 33, 36 [1st Dept 2006]), puts the onus on candidates and members of their campaign to attend training sessions. By the language, the statute does not impose upon the CFB an obligation to ensure the training is of a certain nature or quality.[5] Were the Court to interpret § 3-703 (15) in such a way as to create a private right of action for candidates who challenge the sufficiency of CFB's training sessions, the Court would be opening a pandora's box of litigation against the CFB that the legislature clearly did not intended.

Lastly, § 3-708 is a comprehensive statute with 11 subdivisions. Among other things, it provides for five board members to be appointed by the mayor and speaker of the NYC Council for set terms (§ 3-708 [1]), gives the CFB the power to employ necessary staff (§ 3-708 [3]), specifies how board members may be removed from office (§ 3-708 [4]), allocates the power to investigate wrongdoing, including to examine and take testimony (§ 3-708 [5]), requires the CFB to publicize the names of candidates for city-wide election (§ 3-708 [6]), and allows it to render advisory opinions, promulgate rules, and make available compliance manuals and summaries (§ 3-708 [7][a] and [b], § 3-708 [8]). § 3-703 is similarly as comprehensive: it creates eligibility requirements to receive public funds, describes reporting requirements to the CFB, limits personal and corporate funding of the candidates' campaign, and prescribes penalties for failing to comply. Absent from either statute is any provision creating governmental tort liability. As explained in *McLean*, "it is fair to infer that the Legislature considered carefully the best means for enforcing [the relevant provisions] and would have created a private right of action against erring government agencies if it found it wise to do so." (*McLean*, 12 NY3d at 200-201.) And while *McLean* considered the special duty rule, in contrast to here, in the context of an injured plaintiff who was not directly injured by the governmental agency but by a third-party child-care service that the agency recommended (*id.* at 198), the court in *Ferreira* considered and rejected the importance of such a difference. Instead, the court found that a rule purporting to draw a distinction between injuries inflicted by municipal actors versus nongovernmental actors is "belied by our precedent, unworkable, and contrary to public policies upon which the special duty requirement is founded." (*Ferreira*, 38 NY3d at 312.) For the several reasons listed above, plaintiffs have not established that a private right of action exists under these statutes. As such,

---

[5] Whether the training sessions are then considered discretionary or ministerial acts is…inconsequential. When official action involves the exercise of discretion, as might be the case in designing the educational materials to be given to candidates, officers are not liable for the injurious consequences of that action even if they are the result of negligence or malice. (*Tango v Tulevech*, 61, NY2d 34, 40 [1983]; *McLean*, 12 NY3d at 202.) Where government conduct is ministerial and negligent, the plaintiff must show a duty running directly to the injured person. (*Lauer v City of New York*, 95 NY2d 95, 99-100 [2000].) Thus, even where an act is ministerial, to sustain liability against the city, the duty breached must be more than owed the public generally. (*Id.* at 100.) Described above, plaintiffs have failed to demonstrate a duty above that owed to the public.

159019/2022  NAMPIAPARAMPIL MD, DEVI E ET AL vs. NEW YORK CITY CAMPAIGN FINANCE     Page 6 of 8
BOARD
Motion No. 001
                                                                                    M006

6 of 8

their general negligence cause of action[6] and negligent hiring and supervising cause of action are fatally deficient.

Libel Cause of Action

To adequately plead a cause of action for libel, plaintiffs must demonstrate: (1) a false assertion of fact; (2) that defendant made/published to a third party; (3) without privilege and with the requisite degree of fault; and that (4) caused reputational injury. (*See Stepanov v Dow Jones & Co., Inc*, 120 AD3d 28, 34 [1st Dept 2014]; *Frechtman v Gutterman*, 115 AD3d 102, 104 [1st Dept 2014].) Where a plaintiff is a public figure or limited-purpose public figure, which undoubtedly Nampiaparampil is here as a candidate who ran a campaign for public office, she must plead "actual malice" by clear and convincing evidence. (*See Guerrero v Carva*, 10 AD3d 105, 115 [1st Dept 2004]; *Rebecca Broadway L.P. v Hotton*, 143 AD3d 71, 77 [1st Dept 2016] [Recognizing that even a limited-purpose public figure is required to prove actual malice as to the relevant issue to recover damages].) For this motion, neither Statement 1—"[t]his debate is not required under city law since two or more candidates have not met the nonpartisan, objective, and non-discriminatory criteria established in the Campaign Finance Act" nor Statement 2— "Candidate did not submit a complete profile in time for inclusion in this printed voter guide"— are not sufficiently plead.

In Statement 1, Nampiaparampil is not directly mentioned but only referred to as part of a class of people by the statement "two or more candidates." However, to plead a cause of action for libel, plaintiffs must plead facts showing that the matter published is "of and concerning plaintiff." (*Kirch v Liberty Media Corp.*, 449 F3d 388, 399 [2d Cir. 2006], citing *Julian v Am. Bus. Consultants, Inc.*, 2 NY2d 1, 17 [1956]; *Geisler v Petrocelli*, 616 F2d 636, 639 [2d Cir. 1980] ["Plaintiffs in defamation proceedings bear the burden of demonstrating that the libel designates the plaintiff in such a way as to let those who knew her understand that she was the person meant"].) Since plaintiff cannot demonstrate that CFB's statement referred to or specifically identified her, and the complaint lacks detail as how plaintiff might otherwise be identified, she cannot recover for libel. But this raises another significant point: Nampiaparampil asserts no other allegation, other than the statement itself, that would even indicate that she was one of the candidates referred to as not having met the requisite criteria for inclusion in the debate. On the Court's reading, her assertion that the statement is false (*at* NYSCEF doc. no. 1 at pp 12 ¶ 8) is based entirely on the conclusory statements.[7] (*Id.* pp 8 ¶z [The CFB "negligently

---

[6] While the Court need not address the elements of her negligence cause of action any further, the Court recognizes that plaintiff has not established the proximate causation element of a negligence cause of action. Plaintiff describes injuries to her such as being attacked by one supporter and menaced by another but conduct by third parties which is extraordinary and unforeseeable severs the causal connection between the CFB's alleged inaccurate advice and plaintiff's injuries.

[7] Plaintiff references having to spend approximately $113,000 to qualify for the debate but no additional context is provided as to whether this minimum requirement is derived from an email, statute, or rule. The paragraph in which allegation is contained (NYSCEF doc. no. 31 at pp 18, "Negligence/CFB-Sponsored Televised Debate", at ¶3) does not cite to any statute, regulation, or communication with the CFB.

159019/2022  NAMPIAPARAMPIL MD, DEVI E ET AL vs. NEW YORK CITY CAMPAIGN FINANCE BOARD
Motion No. 001

Page 7 of 8

M007

7 of 8

fail[ed] to acknowledge Dr. Nampiaparampil had met the terms of a mandatory debate"] and pp 12 ¶9 [The CFB negligently or "recklessly and with actual malice failed to intervene when journalists and varied media spread the false hood that [she] had not met the minimum fundraising threshold"].) [8]

As to Statement 2, the call is closer, but ultimately, even assuming all allegations are true as the Court must on motions to dismiss, there is nothing to indicate that she met the deadline and complied with the CFB's rules to have her profile be published in the voter guide. After referring to her opponent by name in the statement she provided to the CFB, she alleges that: the CFB did not clearly inform her that the only acceptable method of making changes was through email (id. at pp 4, ¶ 16); the CFB did not maintain an effective web portal to submit a new submission for the voter guide (NYSCEF doc. no. 1 at pp11, ¶ll); a CFB web failure prevented her from submitting her candidate profile on the first instance before the CFB extended the deadline; and she believed she uploaded the changes to the voter guide through CFB's portal. (NYSCEF doc. no. 31 at pp 5, ¶¶17,19.) None of these allegations, if true, plead that the CFB's voter guide published a false statement. The pleading failures described above do not even take into account that plaintiff has failed to described how the CFB might have published these statements with actual malice. Accordingly, even had plaintiffs served a notice of claim, these claims were insufficiently pleaded.

Lastly, since the CFB and Nampiaparampil did not have an enforceable contract, there can be no breach. That claim is also without merit.

Accordingly, for the foregoing reasons, it is hereby

ORDERED that defendant New York City Campaign Finance Board's motion to dismiss pursuant to CPLR 3211 (a) (7) is granted, and the complaint is dismissed; and it is further

ORDERED that counsel for defendant shall serve a notice of entry, along with a copy of this order, on all parties within twenty (20) days of entry.

This constitutes the decision and order of the Court.

_____4/14/2023_____          _____
                 DATE                                   DAKOTA D. RAMSEUR, J.S.C.

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

---

[8] Because these assertions are based in negligence, they do not open the CFB to liability.

159019/2022   NAMPIAPARAMPIL MD, DEVI E ET AL vs. NEW YORK CITY CAMPAIGN FINANCE BOARD
Motion No. 001                                                                                   Page 8 of 8

M008

8 of 8