after inauguration]. Incumbent elected candidates shall not incur transition expenses, except for expenditures made for the purpose of furthering the elected candidate's selection as Speaker of the City Council.

**§2. Subdivision (a) of section 2-03 of chapter 2 of title 52 of the rules of the city of New York is amended to read as follows:**

(a) The candidate must notify the Board of any material change in the information required to be listed on the candidate's Filer Registration or Certification, including any new information or any change to any required information, concerning any political committee, bank account, merchant or payment processor account, candidate or treasurer employment, address, telephone number, or email address, in such manner as may be provided by the Board, if such change occurs prior to the covered election or within a period of five years from the filing of a final statement showing satisfaction of all liabilities and disposition of all assets arising from the covered election, including payment of any penalties or repayment of public funds owed to the Board. Such notification must be submitted no later than the next deadline for filing a disclosure statement, or, in the case of changes that occur after the deadline for the [last] final disclosure statement required to be filed, no later than 30 days after the date of the change.

**§3. Subparagraph (B) of paragraph (ii) of subdivision (b) of section 4-05 of chapter 4 of title 52 of the rules of the city of New York is amended to read as follows:**

(B) Pre-election disclosure statements are due: (i) 32 and 11 days before the election; [and] (ii) at the Board's discretion, on October 15 in the year before the year of the election; and (iii) at the Board's discretion, on March 15 and the fourth Friday in August in the year of the election.

**§4. Subparagraph (C) of paragraph (ii) of subdivision (c) of section 4-05 of chapter 4 of title 52 of the rules of the city of New York is amended to read as follows:**

**(C) Contributions totaling $99 or less from a single source.** Contributions totaling $99 or less from a single source need not be separately itemized in a disclosure statement, unless such contributor is an employee of the candidate or of the spouse, or domestic partner of such candidate or of [a business] an entity in which such candidate, spouse, or domestic partner has an ownership interest of 10% or more or in which such candidate, spouse or domestic partner holds a management position, such as the position of officer, director, or trustee; provided, however, that contributions that are not itemized shall not be matchable.

**§5. Section 4-06 of chapter 4 of title 52 of the rules of the city of New York is amended to read as follows:**

**§4-06. Daily disclosures during the two weeks preceding the election.** If a candidate, during the 14 days preceding an election, accepts aggregate contributions and/or loans from a single source [in excess] of $1,000 or more or makes aggregate expenditures to a single [vendor] payee [in excess] of $20,000 or more, the candidate must report, in a disclosure to the Board, all contributions and loans accepted from such source or expenditures made to such [vendor] payee during that 14-day period. The first such disclosure must be received by the Board within 24 hours after the contribution or loan that causes the total to [exceed] reach $1,000 is accepted or the expenditure that causes the total to [exceed] reach $20,000 is made. Each subsequent disclosure must be received by the Board within 24 hours after any additional contribution or

loan is accepted or expenditure is made. Information reported in these disclosures must also be included in the candidate's next post-election disclosure statement.

**§6. Subdivision (a) of section 4-07 of chapter 4 of title 52 of the rules of the city of New York is amended to read as follows:**

(a) A candidate must file all disclosure statements required under section 4-05(b) until such time as the candidate files a final statement demonstrating the disposition of all committee assets and satisfaction of all committee liabilities, including the payment of any penalties or repayment of public funds owed to the Board; provided, however, that any financial activity occurring after the final statement has been filed must be reported in the next semi-annual disclosure statement.

**§7. Subdivision (j) of section 5-05 of chapter 5 of title 52 of the rules of the city of New York is amended to read as follows:**

**(j) Contributions with unreported occupation, employer, and business address.** Contributions for which the candidate has not reported the contributor's occupation, employer, and business address, where such contributions: (i) total more than $99; or (ii) total $99 or less, and the contributor is an employee of the candidate, of the spouse or domestic partner of such candidate, or of [a business] an entity in which such candidate, spouse, or domestic partner has an ownership interest of 10% or more or in which such candidate, spouse, or domestic partner holds a management position, such as the position of officer, director, or trustee.

**§8. Subparagraph (D) of paragraph (ii) of subdivision (a) of section 6-02 of chapter 6 of title 52 of the rules of the city of New York is amended to read as follows:**

(D) payments to the candidate or a spouse, domestic partner, child, grandchild, parent, grandparent, [brother, or sister] or sibling of the candidate or spouse or domestic partner of such child, grandchild, parent, grandparent, [brother, or sister] or sibling, or to [a business] an entity in which the candidate or any such person has a 10% or greater ownership interest;

**§9. Subdivision (e) of section 6-06 of chapter 6 of title 52 of the rules of the city of New York is amended to read as follows:**

**(e) Where identification would be [impractical] impracticable.** This requirement may be modified by the Board concerning items upon which identification would be [impractical] impracticable.

**§10. Subdivision (a) of section 7-04 of chapter 7 of title 52 of the rules of the city of New York is amended to read as follows:**

(a) A candidate shall not be eligible to receive more than one quarter of the applicable maximum pursuant to § 3-705(2)(b) of the Code unless the Board determines that one of the conditions set forth in § 3-705(7)(a)(2) or (3) of the Code is satisfied, or the candidate submits a certified signed statement attesting to the need for additional public funds and demonstrating that at least one of the conditions set forth in §3-705(7)(a)(1) of the Code is satisfied. The statement must be filed with the Board no later than the due date [for] of the applicable disclosure statements as follows, except that, if basis for filing the statement arises after the due date, and no basis existed prior to such due date, then the statement shall be due by the deadline for the disclosure statement immediately preceding the next date on which a public funds payment is scheduled to be made:

(i) Candidates in the primary election must file the statement of need no later than the due date [for] of the 32-day pre-primary election disclosure statement.

(ii) Candidates in the general election must file the statement of need no later than the due date [for] of the 32-day pre-general election disclosure statement.

**§11. Section 7-06 of chapter 7 of title 52 of the rules of the city of New York is amended to read as follows:**

**§ 7-06 Withholdings[.]**

(a) The Board [may] shall withhold [up to] 5% of the amount of public funds payable to a candidate until the final pre-election payment for any election in which the candidate is eligible to receive public funds. Such withheld funds shall not be payable to any candidate who is not otherwise eligible to receive a payment, or who fails to provide, to the satisfaction of the board, such submissions as may be requested by the board for the purpose of publishing a video statement in the voter guide pursuant to chapter 16 of these rules.

(b) In addition, the Board may withhold from pre-election public funds payments: (a) a percentage equal to the projected rate of invalid matching claims; (b) an amount equal to any contributions made, received, solicited, or otherwise obtained in violation of any law, pending disgorgement of such contributions to the Fund or refund to the contributor; and (c) up to an additional 5% if the Board determines that there is reason to believe that the candidate has failed to comply with the Act, including by failing to adequately respond to a Board request for information or documentation. Withholdings shall be subject to post-election audit.

**§12. Subdivision (b) of section 7-07 of chapter 7 of title 52 of the rules of the city of New York is amended to read as follows:**

(b) Disbursements that would otherwise result in a deduction pursuant to paragraph (ii) of subdivision (a) of this section shall not result in any such deduction if:

(i) such disbursements are made out of a segregated bank account;

(ii) at no time does the segregated bank account contain any funds other than contributions received by the candidate and deposited directly into the account pursuant to this section, and bank interest paid thereon;

(iii) funds deposited into the segregated bank account are not used for any purpose other than disbursements governed by paragraph (ii) of subdivision (a) above or payment of bank fees associated with the segregated bank account;

(iv) contributors whose contributions are deposited into the segregated bank account have confirmed in writing, pursuant to section 4-01(b)(ii)(B), that they understand that these contributions will only be used for such disbursements and will not be matched with public funds;

(v) copies of such written confirmations are submitted to the Board by the due date [for] of the disclosure statement in which such contributions are required to be reported pursuant to these rules;

(vi) copies of checks for each disbursement out of the segregated bank account are submitted to the Board by the due date [for] of the disclosure statement in which such disbursements are required to be reported pursuant to these rules;

(vii) a copy of each bank statement for the segregated bank account is submitted to the Board by the due date [for] of the next disclosure statement; and

(viii) for each individual contribution deposited into the segregated bank account, and each disbursement out of the segregated bank account, the candidate has complied with all other applicable provisions of the Act and these rules, including but not limited to the record keeping and reporting provisions.

**§13. Paragraph (iii) of subdivision (b) of section 13-03 of chapter 13 of title 52 of the rules of the city of New York is amended to read as follows:**

(iii) Transition [liabilities] <u>expenditures</u> may not be incurred [nor expenditures made] after the elected candidate assumes office, and inauguration [liabilities] <u>expenditures</u> may not be incurred [nor expenditures made] after January 31 in the year after the year of the election, except for:

(A) [expenditures made to satisfy liabilities incurred on or before January 31,

(B)] expenditures related to fundraising to satisfy <u>transition</u> liabilities incurred on or before <u>the elected candidate assumes office or inauguration liabilities incurred on or before</u> January 31, and

[(C)] <u>(B)</u> routine and nominal expenditures associated with and necessary for satisfying such liabilities, terminating the entity, and responding to the post-election audit.

**§14. Paragraph (ii) of subdivision (c) of section 13-03 of chapter 13 of title 52 of the rules of the city of New York is amended to read as follows:**

(ii) If a TIE has funds remaining after all liabilities have been paid, it shall refund such funds to one or more of its donors, or if that is impracticable, <u>issue a payment</u> to the Fund.

**§15. Section 14-03 of chapter 14 of title 52 of the rules of the city of New York is amended to read as follows:**

**§14-03. Disclosure dates[.]**

**(a) Filing dates[.** The Board shall publish a schedule of disclosure statement filing dates and reporting periods for primary and general elections, and for ballot proposals, based on the following:]

(i)  Disclosure statements are due [on January 15, March 15, July 15, and the fourth Friday in August of the election year.] <u>every Monday of the election year until and including the fourth Monday after the general election.</u>

(ii) [Additional disclosure statements are due:

(A) For a primary election: 32 and 11 days before and 10 days after the election.

(B) For a general election: 32 and 11 days before and 27 days after the election.

(iii)] During the 14 days before a primary or general election, an independent spender must submit a disclosure statement to the Board within 24 hours of distributing any reportable communication, making any reportable expenditure, or receiving any reportable contribution.

[(iv) The Board's published schedule of disclosure statement filing dates shall reflect that if a disclosure statement is due to be submitted on a Saturday, Sunday, or legal holiday, submission shall be considered timely if made on the next business day.]

[(v)] (iii) An independent spender that has not distributed any reportable communications, made any reportable expenditures, or received any reportable contributions within a reporting period is not required to file a disclosure statement for that period.

**(b) Reporting periods[.]**

    **(i) First disclosure statement[.]**

        (A) The reporting period for the first disclosure statement containing communications or expenditures related to candidates in a primary or general election begins on the first day of the election cycle.

        (B) The reporting period for the first disclosure statement for communications or expenditures related to ballot proposals begins on the first day of January in the year in which the proposal appears on the ballot.

    **(ii) Each subsequent disclosure statement.** The reporting period for each subsequent disclosure statement begins on the [third day before the deadline for the submission of the previous disclosure statement] preceding Monday.

    **(iii) Conclusion of reporting period.** The reporting period for all disclosure statements concludes on and [include] includes the [fourth day before the deadline for the submission of that disclosure statement] day before the filing due date.

    **[(iv) Weekends and holidays.** The Board's published schedule of reporting period dates shall reflect that if a disclosure statement is due to be submitted on a Saturday, Sunday, or legal holiday, the reporting period will conclude on and include the fourth day before the next business day.]

**§16. Paragraph (viii) of subdivision (d) of section 15-02 of chapter 15 of title 52 of the rules of the city of New York is amended to read as follows:**

**(viii) Special election due dates for compliance with § 12-110 of the Code.** The candidate's compliance with the requirements in § 12-110 of the Code shall be considered timely demonstrated to the Board if the Board receives confirmation of the candidate's compliance on or prior to the due date [for] of the first disclosure statement required to be filed with the Board pursuant to section 15-02(d)(ii).

**§ 17. Paragraph (i) of subdivision (e) of section 15-03 of chapter 15 of title 52 of the rules of the city of New York is amended to read as follows:**

(i) Public funds received for a special election to fill a vacancy may be used only for expenditures made by a candidate to further the candidate's nomination or election to fill such vacancy, and may not be used for any expenditure that is not qualified as defined in § 3-704 of the Code and section 6-02(a). An expenditure made prior to the date on which a vacancy was declared shall be presumed not to be in furtherance of the [campaign's] candidate's nomination or election, unless the candidate provides evidence demonstrating that the vacancy was reasonably anticipated when the expenditure was made.

**§18. Section 15-06 of chapter 15 of title 52 of the rules of the city of New York is amended to read as follows:**

**§15-06. Independent expenditure disclosure[.]**

(a) [The reporting period for the first independent expenditure disclosure statement in a special election concerning candidates begins on the day the vacancy is declared.] Disclosure statements are due every Monday until and including the fourth Monday after the special election.

(b) [Disclosure statements are due 32 and 11 days before and 27 days after the election. If the first disclosure statement for a special election is otherwise due within a period of five days of a required disclosure statement, a single combined statement may be filed on the date on which the latter of the two separate statements is required to be filed.] **Reporting period**

> **(i) Candidate elections**. For candidates anticipated to be voted on in a special election, the reporting period for the first independent expenditure disclosure statement begins on the day the vacancy is declared. The reporting period for each subsequent disclosure statement begins on the preceding Monday.

> **(ii) Ballot proposals**. For ballot proposals anticipated to be voted on in a special election, the reporting period for the first independent expenditure disclosure statement begins on the date the first reportable expenditure is incurred. The reporting period for each subsequent disclosure statement begins on the preceding Monday.

> **(iii) Conclusion of reporting period.** The reporting period for all disclosure statements concludes on and includes the day before the filing due date.

(c) **Daily disclosure.** During the 14 days before the election, an independent spender must submit a disclosure statement to the Board within 24 hours of distributing any reportable communication, making any reportable expenditure, or receiving any reportable contribution.

(d) [For ballot proposals anticipated to be voted on at a special election, additional disclosure statements are due on January 15 and July 15 in the year of the election. The reporting period for the first disclosure statement begins on the date the first reportable expenditure is incurred.] An independent spender that has not distributed any reportable communications, made any reportable expenditures, or received any reportable contributions within a reporting period is not required to file a disclosure statement for that period.

**§19. Subdivision (a) of section 15-07 of chapter 15 of title 52 of the rules of the city of New York is amended to read as follows:**

(a) A special election TIE must not [incur liabilities or] make expenditures after 30 days following the candidate's inauguration, except for [expenditures made to satisfy liabilities

incurred within 30 days of inauguration,] expenditures related to fundraising to satisfy [such] liabilities incurred within 30 days of inauguration, or expenditures related to terminating the entity or responding to the post-election audit.

**§20. The definitions of "candidate print statement," "candidate video statement," and "election" in section 16-01 of chapter 16 of title 52 of the rules of the city of New York are amended to read as follows:**

**"Candidate print statement"** means the document filed by a candidate containing biographical and other information requested by the Board, and a photograph of the candidate, for inclusion in the printed or online [primary or general election] Voter Guide.

**"Candidate video statement"** means a video-recorded statement by the candidate for inclusion in the video and online edition of the [primary or general election] Voter Guide.

**"Election"** means any [primary or general] election for the office of mayor, public advocate, comptroller, borough president, or Council member, or a general election in which a ballot proposal is on the ballot, and does not include any [special election held to fill a vacancy, or] election held pursuant to court order.

**§21. Subparagraph (A) of paragraph (ii) of subdivision (b) of section 16-02 of chapter 16 of title 52 of the rules of the city of New York is amended to read as follows:**

(A) Candidate video statements must contain [information regarding the candidate's platform and candidacy,] the same biographical information as candidate print statements and may contain such other information as the candidate may choose, including a concise audio description of the candidate; [except] provided, however, that the candidate may not:

(1) refer to any opposing candidate by name;

(2) use profanity, or statements, gestures, or materials that are patently offensive, obscene, or pornographic;

(3) make statements that are slanderous, or defamatory, or assert facts that the candidate knows or should know to be false;

(4) engage in any commercial programming or advertising;

(5) display any literature, graphs, or props; or

(6) violate any city, state, or federal law, including regulations of the New York State Public Service Commission and the Federal Communications Commission.

**§22. Subparagraph (F) of paragraph (ii) of subdivision (b) of section 16-02 of chapter 16 of title 52 of the rules of the city of New York is amended to read as follows:**

**(F) Video statements shall be recorded in English.** Candidates may record a portion of their video statements in a language other than English if the script submitted for Board approval contains both the English and non-English text and an English translation of all non-English text. No additional time will be allotted for statements recorded in multiple languages. The Board will take such measures as it deems reasonable and necessary to ensure that an American Sign

Language translation is available for each video statement and that captions are available for each video statement in English and other languages required by law.

**§23. Subparagraph (G) of paragraph (ii) of subdivision (b) of section 16-02 of chapter 16 of title 52 of the rules of the city of New York is amended to read as follows:**

(G) Candidate video statements that violate any of the requirements outlined in this chapter, as determined by the Board at its sole discretion, will not be included in the Voter Guide.

**§24. A new subparagraph (I) of paragraph (ii) of subdivision (b) of section 16-02 of chapter 16 of title 52 of the rules of the city of New York is added, to read as follows:**

(I) The Board will take such measures as it deems reasonable and necessary to ensure that candidate video statements included in the Voter Guide are accessible to individuals with vision disabilities.

**§25. Subdivision (b) of section 16-03 of chapter 16 of title 52 of the rules of the city of New York is amended to read as follows:**

(b) The Board will produce an online Voter Guide in English and [make the translated versions of the printed editions available online] Spanish, and in other languages required by law.

# EXHIBIT AD: CFB on My Article

 Gmail

Devi Nampiaparampil <devichechi@gmail.com>

---

## FW: Newsweek: How a Death Row Inmate's Request to Give His Organs Kept Him Alive

2 messages

---

**Hormis Thaliath** <HThaliath@nyccfb.info>
To: "devichechi@gmail.com" <devichechi@gmail.com>

Thu, Apr 30, 2015 at 1:31 PM

**Hormis Thaliath**

Auditor

New York City Campaign Finance Board

100 Church Street, 12th Fl.

New York, NY 10007

(212) 409-1819

www.nyccfb.info


**From:** Jonnathon Kline
**Sent:** Thursday, April 30, 2015 12:39 PM
**To:** Hormis Thaliath
**Subject:** RE: Newsweek: How a Death Row Inmate's Request to Give His Organs Kept Him Alive


Great article! When I reached the end I was struck by how it felt incredibly well balanced, giving me the facts and not trying to make a conclusion. It's what journalism should always feel like but, sadly, seldom does.


**From:** Hormis Thaliath
**Sent:** Wednesday, April 29, 2015 6:12 PM
**To:** Jonnathon Kline; Kitty Chan; Sue Ellen Dodell
**Subject:** Newsweek: How a Death Row Inmate's Request to Give His Organs Kept Him Alive


Hey guys,


Devi and I have been working on a documentary about a death row inmate who asked to donate his organs before he is executed. Today, Newsweek.com published an article Devi wrote about the story!

Check it out when you get a chance:

http://www.newsweek.com/how-death-rows-request-give-his-organs-kept-him-alive-326552

Thanks!

**Hormis Thaliath**

Auditor

New York City Campaign Finance Board

100 Church Street, 12th Fl.

New York, NY 10007

(212) 409-1819

www.nyccfb.info

---

**Devi Nampiaparampil** <devichechi@gmail.com>
To: Hormis Thaliath <HThaliath@nyccfb.info>

Thu, Apr 30, 2015 at 1:37 PM

Oh wow!! That's awesome, Honey!!! 🐾
[Quoted text hidden]
--

Devi E. Nampiaparampil, MD
Assistant Professor Rehabilitation Medicine
NYU School of Medicine
www.doctordevi.com

# EXHIBIT AE: Press Release Screenshot

**6:33**

◀ Gmail

🔒 nyccfb.info

Eric Adams: "I am a bald black man, in my early 60's with brown eyes. I am wearing a blue suit and white button down shirt."

Shaun Donovan: "I am a white male, in my mid-50's with sandy blonde hair and blue eyes. I am wearing clear square-rimmed glasses and a royal blue suit."

Kathryn Garcia: "I am a white female in my early 50's with medium length blonde hair and blue eyes. I am wearing a navy suit with a white blouse."

Raymond J. McGuire: "I am a 6' 4" Black male, in my early 60s, bald with brown eyes. I am wearing a Navy-blue suit, light blue collared shirt and dark blue tie."

Dianne Morales: "I am a first-generation Afro-Latina, 53 years old, with medium length curly, dark hair and brown eyes. I am wearing a Navy blue dress and jacket."

# EXHIBIT AG: FOIL DeBlasio No Final Audit



**New York City Campaign Finance Board**
100 Church Street, 12ᵗʰ Floor, New York, NY 10007
212.409.1800 | www.nyccfb.info

October 18, 2023

Devi Nampiaparampil
drdevifornyc@gmail.com

Re: <u>Freedom of Information Law Request</u>

Dear Devi Nampiaparampil:

This letter is in response to your Freedom of Information Law ("FOIL") request, received by this office on September 12, 2023, for "the CFB's Final Audit Report for Bill De Blasio's 2017 Mayoral campaign."

A thorough and diligent search of the Campaign Finance Board's (the "Board's") files indicates that the Board does not possess records responsive to your request. Pursuant to Public Officers Law § 89(4), you may, within thirty days of receiving this letter, submit a written appeal of this determination to Joseph Gallagher, Acting General Counsel.

Sincerely,

Rhonda Gaskins
Records Access Officer

# EXHIBIT AH: Blocked Email

 Gmail

Devi Nampiaparampil <drdevifornyc@gmail.com>

---

## Digital Campaign Fundraising

Mail Delivery Subsystem <mailer-daemon@googlemail.com>
To: drdevifornyc@gmail.com

Mon, Sep 13, 2021 at 2:45 PM



## Message blocked

Your message to **JWilliams@nyccfb.info** has been blocked.
See technical details below for more information.

The response from the remote server was:

```
550 permanent failure for one or more recipients (jwilliams@nyccfb.info:blocked)
```

Final-Recipient: rfc822; JWilliams@nyccfb.info
Action: failed
Status: 5.0.0
Remote-MTA: dns; d181735a.ess.barracudanetworks.com. (209.222.82.253, the
server for the domain nyccfb.info.)
Diagnostic-Code: smtp; 550 permanent failure for one or more recipients (jwilliams@nyccfb.info:blocked)
Last-Attempt-Date: Mon, 13 Sep 2021 11:45:41 -0700 (PDT)

---------- Forwarded message ----------
From: Devi Nampiaparampil <drdevifornyc@gmail.com>
To: Jaclyn Williams <JWilliams@nyccfb.info>
Cc: MJN <mnampi@gmail.com>, Theo Chino <theo@doctordevi.com>
Bcc:
Date: Mon, 13 Sep 2021 14:45:28 -0400
Subject: Re: Digital Campaign Fundraising
----- Message truncated -----

# EXHIBIT AI: Notice of Claim Receipt

www.comptroller.nyc.gov



**THE CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**
**CLAIMS AND ADJUDICATIONS**
**1 CENTRE STREET  ROOM 1200**
**NEW YORK, N.Y.  10007-2341**

**Brad Lander**
**COMPTROLLER**

015 - 151

Date:        1/20/2023
Claim Number:  2023PI002145
RE:        Acknowledgment of Claim
Your Claim/Policy#:

DEVI NAMPIAPARAMPIL
111 JOHN STREET #2509
NEW YORK NY 10038
DRDEVIFORNYC@GMAIL.COM

Dear Claimant:

    We acknowledge receipt of your claim, which has been assigned the claim number shown above. Please refer to this claim number in any correspondence or inquiry you may have with our office.

    We will do our best to investigate and, if possible, settle your claim. However, if we are unable to resolve your claim, **any lawsuit against the City must be started within one year and ninety days from the date of the occurrence.**

    If you have any questions regarding your claim, you may contact us at 212-669-4729 for claims involving personal injury.

    If you need to communicate in a language other than English, please let us know, and we will make translation services available to you.

Sincerely,

Bureau of Law & Adjustment

OTHER

**NEW YORK STATE SUPREME COURT**
**COUNTY OF NEW YORK**

---

**DEVI NAMPIAPARAMPIL,**

                    **Plaintiff,**

        **- against -**

**NEW YORK CITY CAMPAIGN FINANCE BOARD,**

                    **Defendant.**

---

**101118-2021**

**AFFIDAVIT IN OPPOSITION TO**
**MOTION TO DISMISS**

---

        **DEVI NAMPIAPARAMPIL,** affirms the following under penalties of perjury:

1.    I am the plaintiff in this lawsuit.

2.    I offer this affidavit in opposition to defendant New York City Campaign Finance Board's (the CFB) motion to dismiss.

3.    I have stated a violation of the Rules of the City of New York, 52 RCNY 16.

4.    The New York City Charter mandates that a printed voter guide be produced for public awareness of candidates for city office; 52 RCNY 16(a) discusses the importance of the voter guide.

5.    Defendant itself admitted that the printed voter guide and "its distribution will fully, fairly, and impartiality inform, the public about the candidates."

6.    The Defendant breached its obligations to do this.

7.    The CFB offered an unsound technical argument over the principle of unbiased voter education and a fair election.

8.    In the entire history of New York City, 1 am both the first person of South Asian descent, and the first physician and

veterans, wounded in Vietnam, who were spit on when they returned home.

12. As a candidate for New York City Public Advocate, I submitted an in-depth timely voter profile to the New York City Campaign Finance Board. The Campaign Finance Board, plagued with technical issues with its own website, created circumstances that made it impossible to submit profiles on the day of the deadline in the manner in which they demanded. They recognized that. Therefore, they altered their demands in order to excuse their own failings. But when I supposedly failed to meet their new criteria, they refused to grant me any latitude or consideration despite knowing the tremendous harm it would cause me and the voters. (Notably, he CFB extended the deadline twice. From 5pm to 11:59pm the first time because of its technical problems. And then from August 2nd to August 3rd because of continued technical problems. The deadlines are obviously very soft when the CFB makes mistakes.)

13. On August 4, 2021, David Duhalde-Wine emailed me that, in order to be included in the voter guide, I must make one change. I had to change the name "Jumaane Williams" to the general term, "the current Public Advocate." I submitted my revision through the CFB's apparently faulty portal. My Treasurer and I had several email conversations and extensive Microsoft Zoom meetings with the CFB over the next 8 weeks. We did not hear of any problems with the

3

Therefore, he could not initiate contact with the CFB employees by phone or in-person. This was my experience as well. When he committed the same alleged "error" that I did, the CFB attorney contacted him by phone and by email and co-authored his voter profile with him and for him. His Affidavit is attached as **Exhibit A.**

19. The CFB general counsel included unsupported misstatements in her affirmation. This Court accepted her comments without allowing me to testify that they were completely false. This placed us in a no-win situation.

20. The real impact of the CFB's actions is clear. I fundraised approximately $80,000 the week before the voter guide was mailed. I fundraised only approximately $1,000 the week after the voter guide was mailed. Donors and supporters of mine questioned my commitment as a candidate because the CFB stated -- to every eligible voter in New York City -- that I didn't submit my profile in time. There was no further explanation. This led to a domino effect. Since the matching funds determination is directly related to fundraising, I could not meet the threshold for matching funds after the voter guide was sent. Meanwhile, the CFB awarded my opponent almost $1 million in taxpayer funds because he met the threshold. This is irrespective of the fact that I had fundraised more than double what he did in the disclosure prior to the voter guide being sent.

21. The CFB already has had a substantial influence on this

5

 Gmail                                    Devi Nampiaparampil <drdevifornyc@gmail.com>

## 01118/2021 Nampiaparampil v New York City Campaign Finance Board

David Fish <fish@davidmfish.com>                                    Mon, Oct 25, 2021 at 4:41 PM
To: William McKenzie <wmckenzi@nycourts.gov>
Cc: Bethany Perskie <BPerskie@nyccfb.info>
Bcc: drdevifornyc@gmail.com

Your Honor,

As you know, I represent the plaintiff in the referenced matter.

Plaintiff prepared the attached Affidavit in Opposition to Motion to Dismiss, with Exhibit A (Tavarez Affidavit) for filing and service today.

I was unable to electronically file these documents.  The case was not recognized by the efiling portal.

I attach the affidavit for Your Honor's review and for defendant's counsel, as you directed that opposition, if any, should be served and filed today.

I apologize for any inconvenience.

--
David M. Fish
**David M. Fish PC**
400 Garden City Plaza, Suite 432
Garden City, New York 11530
Tel: (212) 869-1040
Fax: (646) 964-6538

*Mail should be sent to*:
David M. Fish PC
P.O. Box 982
Harriman, New York  10926

This email message and any attachments are confidential. If you are not the intended recipient, please immediately reply to the sender and delete the message from your email system. Thank you.

**2 attachments**



**Exhibit A - Tavarez Affidavit.jpg**
2646K

 **Affidavit in Opposition to Motion to Dismiss.pdf**
342K

I, Theo Bruce Chino Tavarez, was a candidate for New York City Public Advocate in the 2021 election year. I am a lifetime member of the Democratic Socialists of America.

I submitted an entry for the New York City Campaign Finance Board's (CFB) printed and online voter guide.

In that submission, I referred to the incumbent for that position, Jumaane Williams, by name. I made various other statements that were considered non-compliant according to the CFB policies.

The CFB called me and emailed me to notify me that what I had done was not compliant with its policies.

I was given approximately one week to make revisions and resubmit my profile.

Ms. Loving, an attorney at the CFB initiated a phone call to me. We spoke on the phone for over 10 minutes. She offered me several options as to how to rewrite my statement so that it could be included in the voter guide that is distributed to the millions of eligible voters in New York City.

Ultimately, the CFB rewrote the voter profile for me. Then the CFB attorney emailed me my statement for my review to make sure I agreed with what she had written. The CFB attorney submitted my profile to the appropriate individuals on my behalf.

Because of the COVID pandemic, the CFB employees were working remotely throughout my race. Because of the CFB COVID policies, I was unable to initiate contact with employees of the CFB by telephone or in person. I am certain that the CFB initiated all contact with me.

Sincerely,

Theo Bruce Chino Tavarez

Teresa Jimenez
Notary Public, State of New York
No. 01JI6320899
Qualified in New York County
Commission Expires March 9, 2023

On the twenty fifth day of October in the year two thousand twenty one before me, the undersigned, personally appeared Theo Bruce Chino Tavarez personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

# CHAPTER 8  UPDATES TO THE AUDIT PROCESS FOR 2017

The goal of the audit process is to help campaigns remain in compliance and, if they are eligible, receive matching funds. Enforcement of the Act and Rules helps bolster confidence for both the public and candidates that all campaigns and spenders are in compliance with the rules. This prevents candidates from gaining an unfair advantage over their opponents, helps safeguard taxpayer dollars, and ensures that oversight is consistent. With reviews and findings sent after each of the 16 total disclosure statements, the CFB's audit process provides campaigns with multiple opportunities to resolve any findings of noncompliance.

To improve audit procedures for the 2017 election cycle, the CFB incorporated feedback and suggestions from the 2013 election cycle into the way it conducts its audits and the content and format of the initial documentation requests (IDRs) and draft audit reports (DARs). These recommendations were to simplify the language used and make the language consistent across the IDR and DAR.

In 2017, the CFB introduced the Preliminary Analysis, which is sent to campaigns approximately a month before the first payment dates. This Preliminary Analysis offers campaigns a snapshot of their payment eligibility status and gives them notice of findings that could prevent the receipt of public funds. This gives campaigns an additional opportunity to correct any issues.

In accordance with a new rule that went into effect for the 2017 elections, campaigns were required to submit bank and merchant account statements and deposit slips with each disclosure statement.[1] In 2013, campaigns may have received only one pre-election notice of disclosure issues stemming from their bank reconciliation. Instituting earlier and more frequent bank reconciliations gave campaigns an opportunity to receive a real-time assessment of their financial discrepancies and possible findings, as well as gather and present required documentation ahead of time. It also improved the quality of the Board's public disclosure.

---

1    *See* Board Rule 3-03(f).

In previous election cycles, the CFB's audit team has sent out an IDR, which is a general request for all documents to campaigns after the election. The CFB revisited this step of the process to make it more clear and comprehensive. Starting with the special elections after the 2013 election cycle, the CFB sent a more detailed and precise IDR requesting more documentation up front and giving campaigns an additional opportunity to make necessary amendments to their disclosure statements. This allowed campaigns to resolve issues that would previously have been first identified in the DAR. As a result, there are fewer findings in the DAR than in previous years, and auditors are able to give more precise recommendations for how to fix those findings.

Finally, the CFB has taken a number of steps to improve the timeliness of the post-election audit process. To determine what audit measures were needed for each campaign, the CFB developed an approach based on an analysis of campaign activity. This approach significantly reduced the number of audits needed, especially in comparison with the 2013 election cycle. For this reason, the CFB was able to send the first DARs from the 2017 election cycle out to campaigns in April of 2018, whereas the first 2013 election cycle DARs were not sent until mid-August of 2014.

| COMPARISON OF 2013 AND 2017 ELECTION CYCLE AUDIT PROGRESS | | |
|---|---|---|
| | 2013 ELECTION CYCLE | 2017 ELECTION CYCLE |
| NUMBER OF CAMPAIGNS* | 249 | 224 |
| CAMPAIGNS RECEIVING AUDITS | 209 | 191 |
| INITIAL DOCUMENTATION REQUESTS (IDRS) SENT | 208/209 (99.5%)[†] | 112/112[‡] (100%)[§] |
| DRAFT AUDIT REPORTS (DARS) SENT | 0/209 (0.0%)[†] | 86/191 (45.0%)[§] |

[*] Does not include terminated campaigns.

[†] As of June 30, 2014.

[‡] Collecting bank records and other documents from campaigns before the election allowed CFB auditors to send IDRs to fewer campaigns in the post-election period.

[§] As of June 30, 2018.



| ▼ About the CFB   News & Media   CFB Portal   IEDS   CFB System Notices   CFB Accessibility

# Audit Process

The CFB provides training, resources, and direct assistance from your Candidate Services liaison to help campaigns navigate the audit process.



**Post-Election Audit Timeline**

All notices from the Audit and Legal units will posted to your **CFB Portal** account. It is imperative that you check the Message Center in the **Portal** regularly and keep your email address current so you will receive alerts when notices post.

The post-election audit happens in three stages:

| **POST-ELECTION DOCUMENTATION REQUEST** Requires the campaign to respond to the documentation request within 30 days | → | **DRAFT AUDIT REPORT** Requires the campaign to respond to the Draft Audit Report within 30 days | → | **FINAL AUDIT REPORT** |
| --- | --- | --- | --- | --- |

The first step in the post-election audit process is the **post-election documentation request**. This request for documentation you didn't previously submit will be posted in your CFB Portal account. The notification will include a checklist of all documentation being requested. The campaign must respond within 30 days.

The **draft audit report** is based on CFB staff's review of documents submitted by your campaign throughout the election cycle and in response to the post-election documentation request. The CFB will cite any preliminary findings of non-compliance with the Campaign Finance Act and CFB Rules. The report may also contain potential public funds repayment obligations.

*Note: the draft audit report is not a public document and does not represent any final determinations by the Board.*

Your campaign's response to the post-election documentation request and draft audit report is a critical opportunity to address issues that may lead to penalties or repayment of public funds if left unresolved. Each finding should be fully addressed in the same order it was presented by providing additional information, explanation, or documentation of your campaign's financial activity (even if the documentation was submitted previously). Each piece of documentation should be labeled with the corresponding finding number and applicable C-SMART transaction ID.

Most findings may require you to file amendments to your disclosure statements using C-SMART. After data entry is complete, you should submit amendments to all previously filed disclosure statements. Additionally, run the last statement of the election cycle you have submitted so Final Audit Report, because newly entered transactions will only appear in that statement. Remember, entering or modifying a transaction in C-SMART does not update the information on file with the CFB. You must file the amendments in order for the data to sync.

If your campaign does not respond to the draft audit report within 30 days after it is sent, you will be assessed a substantial financial penalty (see Campaign Finance Act §3-711(2)(b)). In addition, unanswered findings will be referred to the CFB Legal Unit for assessment of separate penalties. If your campaign needs more time, you must request for an extension at least 48 hours prior to the deadline in writing to AuditMail@nyccfb.info. Be sure to include the candidate's name, election cycle, and the additional amount of time you need to respond. Extensions are never guaranteed. A response to your request with a potential new deadline will be posted to your CFB Portal account.

You may receive an *Enforcement Notice* and/or a *Notice of Public Funds Repayment Obligation* after responding to the draft audit report. These notices include findings that remain unaddressed or for which you provided an insufficient response.

For further assistance with the post-election audit process, be sure to attend a Post-Election training and contact your Candidate Services Liaison.

The **final audit report** is sent 14-18 months after submission of the final disclosure statement. It will be posted to your CFB Portal account and published on the CFB's website. It will detail any findings, violations, and penalties determined by the Board. It will also detail any public funds repayments owed to the Public Fund. If a post-election public funds payment is due to the campaign, it will be issued with the final audit.

**Post-Election Audit Deadlines**

The Campaign Finance Act sets the following deadlines for the CFB to complete a campaign's draft audit report and final audit report. The deadline is calculated from submission of the final disclosure statement.

| Office Sought | Deadline for DAR | Campaign Attended Post-Election Audit Training? | Deadline to Complete Audit Process * |
|---|---|---|---|
| Mayor, Public Advocate, Comptroller | 10 months | Yes<br>No | 16 months<br>18 months |
| Borough President, City Council | 8 months | Yes<br>No | 14 months<br>16 months |

*The audit process is completed when the CFB issues your FAR **or** when the CFB notifies your campaign of potential penalties and/or public funds repayment obligations. Per Admin. Code §3-710(1)(b) and Board Rule 10-02, the issuance of your campaign's final audit report may be expedited by two months if the candidate, treasurer or campaign manager completes the CFB's Post-Election training.*

These DAR and FAR completion deadlines do not apply if your audit raises issues of serious violations. These include potential campaign-related fraud, other potential criminal activity, activity that may result in a breach of certification, or potential significant violations of the spending limit.

Additionally, deadlines will be extended (in the Campaign Finance Act, this is called "tolling") if your campaign:

- submits a late response to any request for information;

- submits an inadequate response to any request for information;
- requests an extension to its response deadline; or
- consents in writing to an extended deadline.

You will receive a notice in your CFB Portal account if the deadline to complete the DAR and/or FAR is extended for any reason. If the delay is caused by a late or inadequate response by your campaign, the deadline is extended until an adequate response is received. If the CFB asks for and your campaign grants additional time to complete the audit, the deadline will be extended for the number of days agreed upon. If the CFB grants your request for an extension, the deadline will be extended for the number of days agreed upon.

**SEE ALSO...**

**Campaign Finance Regulations**

**Forms & Guidance**