UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—-----------------------------------------------------x
DEVI NAMPIAPARAMPIL,                                                                                    **LETTER**
                                            *Plaintiff,*
                    –against–                                                                                        No. 23 Civ. 6391 (ER)

THE NEW YORK CITY CAMPAIGN FINANCE
BOARD, AMY LOPREST, DAVID DUHALDE,
HANNAH EGERTON, FREDERICK SCHAFFER,
BETHANY PERSKIE, MATTHEW SOLLARS,
JACLYN WILLIAMS & THE CITY OF NEW YORK
                                            *Defendants*

June 17, 2024

Dear Judge Ramos,

I am a pro se Plaintiff in this matter and I oppose the Defendants' anticipated Motion to Dismiss.

    A. <u>My cause of action is not claim-precluded.</u>

In its Opinion & Order, the Court wrote, "[f]or the purposes of res judicata, the scope of litigation is framed by the complaint at the time it is filed…Nampiaparampil's complaint did not raise a retaliation claim or any claim arising from the post-election audit, and the state court did not indicate anywhere in its opinion that it considered Nampiaparampil to have amended her complaint through her motion papers."

The Defendants misleadingly argue I rely on the "same series of transactions…" as in the past. I took legal action on the Voter Guide and the Mandatory Debates. I described the protected activities to meet a pleading requirement of a Monell retaliation claim. *I am not reasserting claims related to either issue.* The Defendants suggest that I am asserting other people's claims but I am not. I referred to other candidates, Treasurers, and campaigns to show in detail the Defendants' *pattern* of retaliatory behavior.

Tension arises due to two events. First, in April 2019, the Defendants drafted their formal retaliation policy, which the City then codified into law, and enforced and adjudicated. For example, *uncompensated* legal services (to pursue a claim) can be appraised as a contribution based on "fair market value." The attorneys who initially represented me stated that legal fees were exempted, a fact this Court may have relied upon. But the CFB only exempts legal fees for those campaigns to which it awards public funds. For other campaigns, compensated and uncompensated legal fees count towards the spending limit.

Second, in March 2021, Bank of America told me it needed verification from the CFB in order to open a campaign account for me. The CFB emailed me forms where I initialed and signed the following:
    a) I understand that I am responsible for my campaign's compliance with the Charter, the Act, and the Rules. I further understand that I, my treasurer ("the Treasurer"), and the [campaign] Committee, and any of my agents, must comply with the Charter, the Act, and the Rules, including any amendments thereto **adopted after the date of my signature** below…," and

   a) "I understand that the use of **an entity** other than the [campaign] Committee **to aid** or otherwise take part in the election(s) that this Certification covers is a violation of the Act and will trigger the application to such entity of all provisions of the Act and Rules…"

I did not know that I irrevocably waived my constitutional rights, or my ability to speak to an attorney, by signing this form. By the CFB's formula, I now owe up to $910,000 in penalties for speaking to attorneys about the 2021 election and pursuing the current federal case. This is because my campaign is out of money and I already hit the spending limit. The CFB enforced its codified policy and adjudicated cases against other candidates who pursued legal claims.

B. The Retaliatory Audit Claim Should Not Be Dismissed

1. It is not the mere issuance of an audit, but rather, the timing, duration, severity, scrutiny, nature, and other factors associated with the audit that I characterize as retaliation.
2. According to the CFB, draft audit reports are issued when the campaign has ceased all financial activity and the final financial disclosure has been completed.[1] I received a draft audit report in October 2022, and responded on May 8, 2023, but am still required to submit disclosures as of June 17, 2024.
3. The day after Election Day 2021, the CFB determined my campaign had a 0.00% error rate. Nevertheless, the CFB reassigned my file to new auditors who invalidated critical files and found dozens upon dozens of potential violations. For example, I violated USPS abbreviation conventions using "Apt." instead of "APT" and "Street" instead of "ST." so the documents were rendered invalid.
6. Whenever I asked the Defendants for technical assistance with C-SMART, their required proprietary platform, they either ignored me, denied it or used the opportunity to search my campaign (via screenshare) to find new purported violations, which they then tasked me with.
7. I wrote to Defendant Egerton on May 18, 2022, "You have asked me 8 times in 5 weeks to have this [sic] sign a verification form in front of a notary. I have no idea what the risks, benefits or alternatives are to making myself both the Candidate and the Treasurer for my campaign– especially when I am not a lawyer or an accountant myself. As a doctor, I would never pressure patients in this manner to sign consent forms they don't understand… It seems to me I should leave everything as is– and not raise the stakes by signing this verification form. If there is some significant benefit to me of signing the form, please show me evidence of what the benefit is. I understand the CFB wants me to sign it– I don't understand what the benefit is to me." Nevertheless, Egerton, as a final decision-maker, reached into my campaign and determined I should have that role rather than one of my 603 donors.
8. Egerton started out as my candidate liaison, there to assist me in complying with campaign finance rules, based on the CFB's job description. Then the Defendants reassigned her to be my auditor. It is bizarre for a member of the Defense team to join the Prosecution mid-stream in a case.
9. I am forced to attest to statements I know to be false. The disclosures say that my campaign has assets, which it does not. If I don't sign the forms, I will incur violations and penalties for not filing. However, the system bars me from making amendments to the disclosures.

Context

1. The Court may recall I researched the lobbying activities of family members of candidates and political operatives for my censored video voter guide. In public testimony between Defendants Schaffer, Loprest, Benito Romano (former Acting U.S. Attorney for the SDNY) and Richard Briffault (of the Moreland

---

[1] https://www.nyccfb.info/candidate-services/post-election/audit-process/

Anti-Corruption Commission),[2] the CFB was tasked with disclosing the identity of lobbyists to the public (p45-51). According to the NYC Administrative Code § 3-211, the spouse of the officer of a lobbyist organization is also considered a lobbyist. In 2021, Defendant Schaffer's wife sat on the Board of Directors and executive committee of a lobbyist firm.[3],[4],[5] that registered lobbying activities with dozens of City Council members.[6] According to former CFB Executive Director Beth Rotman's testimony, the Defendants distributed approximately $300 million in matching funds to 2021 candidates and each of the City Council members had been part of the CFB's "program." Therefore, they were subject to CFB audits starting 16 months after their elections i.e. one month after the statute of limitations expires for claims they could potentially bring against the CFB. The CFB exerts tremendous influence over all candidates.

2. Defendant Schaffer was also the subject of an investigation, followed by a scathing report (p3-4 & p19-20) by the State Inspector General[7] and the Acting U.S. Attorney for the SDNY,[8] for his management at CUNY: lack of oversight, failure to institute proper controls, non-transparent practices, and failure to report misconduct, among other issues. After Schaffer resigned as General Counsel and Vice-Chancellor at CUNY, the City made him Chair of the CFB. These reports were initially difficult to find since Schaffer was identified by his title and not his actual name.

3. Schaffer and Loprest were also cited in 2021 by the City Comptroller for 13 separate deficiencies in finance and oversight.[9] This report supports my contention that each Defendant was able to serve as a final decision-maker. Despite Loprest's response about how the CFB would address its failures, according to a subsequent Gotham Gazette investigation, rampant fraud, waste and abuse persisted at the CFB.[10]

4. In 1986, allegations surfaced that elected officials, City agency heads, and lobbyists used the Parking Violations Bureau to intimidate political opponents and extort money out of them. This was foreshadowing for the CFB's prosecution of my mother for purportedly posting signs. In 1986, the SDNY Public Corruption Unit investigated and prosecuted these offenders for RICO violations. See *U.S. v. Friedman*, 854 F.2d 535 (2d Cir. 1988).[11] In my case, however, the City chooses to defend the CFB's Retaliation Policy, further demonstrating its deliberate indifference to my plight. I ask this Court to free me from this bizarre reenactment of the Stanford prison experiment.

If the Court schedules a hearing, I respectfully ask that it be scheduled on or after July 5th. My two children are graduating in the next two weeks from 3K and kindergarten. I am also giving talks at The Orthobiologic Institute Meeting in Las Vegas[12] and at the Becker's Spine, Orthopedic and Pain Conference in Chicago.[13],[14] As a layperson, it will be difficult to prepare for a formal hearing in the middle of these activities and travel. I think the Court for considering my request.

---

[2] https://www.nyc.gov/assets/charter/downloads/pdf/transcript_0616.pdf
[3] https://www.law.columbia.edu/faculty/barbara-schatz
[4] https://www.pilnet.org/profiles/barbara-schatz-2/
[5] https://www.nonprofitnewyork.org/wp-content/uploads/2021/03/npny_2020AR_fin_single_pgs.pdf  (p8/8)
[6] https://www.cityclerk.nyc.gov/content/lobbyist-search-public-database
[7] https://ig.ny.gov/sites/g/files/oee571/files/2016-12/CUNYInterim.pdf
[8] https://ig.ny.gov/news/former-top-cuny-finance-official-charged-embezzling-tens-thousands-dollars-university-creating
[9] https://comptroller.nyc.gov/wp-content/uploads/documents/MJ20_059A.pdf
[10] https://gothamist.com/news/nyc-campaign-finance-board-demands-transparency-from-everyone-but-itself
[11] https://www.nytimes.com/1986/01/24/nyregion/collection-executive-said-to-link-manes-to-parking-bureau-payoffs.html?smid=url-share
[12] https://www.tobiconference.com/speakers-2024
[13] https://conferences.beckershospitalreview.com/spine-ortho-asc-2024?reg_type_id=599056
[14] https://conferences.beckershospitalreview.com/spine-ortho-asc-2024/speaker/975152/devi-nampiaparampil?utm_source=email&utm_content=dropdown

I affirm this 17th day of June, 2024, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document is being filed in an action or proceeding in a court of law.

Respectfully,

Devi Nampiaparampil

Pro Se (Unrepresented) Litigant, The Plaintiff

Metropolis Pain Medicine PLLC

111 John Street Suite 2509

New York, NY 10038

Cell: 312-523-5935

Email: devichechi@gmail.com