No. 23 Civ. 6391 (ER)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEVI NAMPIAPARAMPIL,

*Plaintiff*,

- against -

THE NEW YORK CITY CAMPAIGN FINANCE
BOARD, *et al.*,

*Defendants*.

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT AND IN
OPPOSITION TO PLAINTIFFS PROPOSED
MOTION**

**MURIEL GOODE-TRUFANT**
*Acting Corporation Counsel of the City of New York*
Attorney for the Defendants
100 Church Street
New York, NY 10007

Of Counsel: David S. Thayer
Tel: (212) 356-2649
Matter No. 2023-068892

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... IV

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF MATERIAL FACTS AND PROCEDURAL HISTORY ............................. 2

ARGUMENT ............................................................................................................ 6

LEGAL STANDARD.................................................................................................. 6

      POINT I ....................................................................................................... 7

          TO THE EXTENT THAT PLAINTIFF
          REPLEADS HER PRECLUDED CLAIMS IN THE
          GUISE OF RETALIATION, THESE CLAIMS
          REMAIN PRECLUDED AND SHOULD BE
          DISMISSED. .......................................................................... 7

      POINT II ...................................................................................................... 8

          THE COURT SHOULD DISMISS THOSE
          CLAIMS THAT PLAINTIFF WAS NOT GIVEN
          LEAVE TO AMEND. ................................................................ 8

      POINT III ..................................................................................................... 8

          PLAINTIFF'S CLAIMS OF RETALIATION FAIL
          AND SHOULD BE DISMISSED. ............................................... 8

      POINT IV...................................................................................................... 14

          THE BOARD LACKS THE CAPACITY TO BE
          SUED. ................................................................................... 14

      POINT V ...................................................................................................... 14

          PLAINTIFF'S CLAIMS ABOUT HER FREEDOM
          OF INFORMATION LAW REQUEST ARE NOT
          COGNIZABLE IN THIS COURT. ............................................. 14

      POINT VI...................................................................................................... 15

          THE COURT SHOULD DECLINE TO
          EXERCISE SUPPLEMENTAL JURISDICTION. ................................ 15

      POINT VII ..................................................................................................... 15

PLAINTIFFS' MOTION FOR A CORRECTION
SHOULD BE DENIED. ......................................................................... 15

CONCLUSION..................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agosto v. N.Y.C. Dep't of Educ.*,
  982 F.3d 86 (2d Cir. 2020)...........................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................6, 7

*Carr v. N.Y.C. Transit Auth.*,
  76 F.4th 172 (2d Cir. 2023) .........................................................................................11

*Cuellar v. Love*,
  No. 11 Civ. 3632 (NSR), 2014 U.S. Dist. LEXIS 51622 (S.D.N.Y. Apr. 11,
  2014) ..............................................................................................................................10

*DeCarlo v. Fry*,
  141 F.3d 56 (2d Cir. 1998)............................................................................................10

*Dorsett v. County of Nassau*,
  732 F.3d 157 (2d Cir. 2013)..........................................................................................9

*Lyman v. CSX Transp., Inc.*,
  364 F. App'x 699 (2d Cir. 2010) ..................................................................................8

*Montero v. City of Yonkers*,
  890 F.3d 386 (2d Cir. 2018)..........................................................................................10

*Moray v. City of Yonkers*,
  924 F. Supp. 8 (S.D.N.Y. 1996)....................................................................................10

*Ortiz v. City of New York*,
  19 Civ. 7887 (ER), 2021 U.S. Dist. LEXIS 130333 (S.D.N.Y. July 13, 2021)...................10

*Sarkar v. N.Y.C. Dep't of Educ.*,
  19-cv-4040 (MKV), 2024 U.S. Dist. LEXIS 59754 (S.D.N.Y. Mar. 28, 2024).....................14

*Sarus v. Rotundo*,
  831 F.2d 397 (2d Cir. 1987)..........................................................................................10

*Schuloff v. Fields*,
  950 F. Supp. 66 (E.D.N.Y. 1997) .................................................................................14

*Sharikov v. Philips Med. Sys. MR, Inc.*,
    103 F.4th 159 (2d Cir. 2024) ............................................................... 11

*Sharkey v. Quarantillo*,
    541 F.3d 75 (2d Cir. 2008)..................................................................... 7

*Torres v. City of New York*,
    19 Civ. 6332 (ER), 2023 U.S. Dist. LEXIS 8079 (S.D.N.Y. Jan. 17, 2023) ........................... 10

**Statutes**

42 U.S.C. § 1983 ......................................................................................... 1

**Other Authorities**

52 R.C.N.Y. § 6-01 ................................................................................... 15

52 R.C.N.Y. § 10-01 ........................................................................... 10, 15

Fed. R. Civ. P. 12 .................................................................................. 2, 7

N.Y.C. Admin. Code § 3-703 ................................................................... 15

N.Y.C. Admin. Code § 3-709.5 ................................................................. 3

N.Y.C. Admin. Code § 3-710.5 ............................................................... 12

N.Y.C. Charter § 396 .............................................................................. 14

N.Y.C. Charter § 1053 .............................................................................. 3

N.Y. C.P.L.R. art. 78 ......................................................................... 4, 5, 14

N.Y. C.P.L.R. § 3211 ................................................................................ 5

Rule 12(b)(6) ............................................................................................. 6

U.S. Const. amend. I ........................................................................... 9, 10

## PRELIMINARY STATEMENT

Plaintiff Devi Nampiaparampil brings this action under 42 U.S.C. § 1983 and New York law, alleging that the Defendants New York City Campaign Finance Board, David Duhalde, Hannah Egerton, Amy Loprest, Bethany Perskie, Frederick Schaffer, Matthew Sollars, Jaclyn Williams, and the City of New York (collectively, the "Board" or "Defendants") infringed her rights under the U.S. and N.Y. Constitutions before, during, and after the 2021 election for the citywide office of Public Advocate, for which Plaintiff was the Republican Party's candidate. Specifically, Plaintiff contends that the Board's application of certain rules upon Plaintiff, who participated in the Board's public campaign financing programs, and the Board's conduct of a post-election audit constitute unconstitutional retaliation against her.

However, Plaintiff's prior Complaint was dismissed in this action in an Opinion and Order dated May 8, 2024. In that Opinion, the Court made clear that Plaintiff's claims in that Complaint concerning the application of the Board's campaign finance rules to her during the election, namely, those claims about "the print and online Voter Guide, the debate, and the [Board's public campaign finance] Program" were claim-precluded under the application of *res judicata* principles of New York law. The Court further held that Plaintiff did not have leave to amend these claims, as an amendment would be futile. The Court did, however, permit Plaintiff to amend her claims of retaliation in the form of "auditing her . . . for her post-election litigation."

In an attempt to skirt the Court's Opinion and Order, however, Plaintiff has repackaged her previously claim-precluded claims about the print and online Voter Guide, the election, and the Board's public campaign finance program in the language of retaliation. These claims must nevertheless be dismissed because they are, as the Court has held, claim-precluded. Her post-election audit claims of retaliation must also fail because the allegedly retaliatory audit

of the Board was not, in fact, retaliatory. An audit is required by City law, undermining Plaintiff's attempts to establish *Monell* liability. Next, her new claims of retaliation should be dismissed as having been pleaded without leave, and they fail to state a claim upon which relief may be granted in any event. Moreover, the Board itself lacks the capacity to be sued. And the Court should decline to exercise supplemental jurisdiction.

Separately, Plaintiff's recent "Proposed Motion," (ECF No. 57), should be dismissed. Any attorney that she hires for this action or in connection with the post-election audit of her campaign in the 2021 primary election for the Republican candidate for Public Advocate will not be the subject of the Board's audit.

Defendants therefore respectfully request an order dismissing this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and denial of Plaintiff's "Proposed Motion."

### STATEMENT OF MATERIAL FACTS AND PROCEDURAL HISTORY

Plaintiff ran as the Republican candidate for the citywide office of the Public Advocate in the 2021 election. (Compl. ¶ 2; First Amended Complaint ("FAC") ¶ 1.)[1] During that time, Plaintiff was a participant in a Board program that allows eligible candidates to receive, from the City of New York, matching funds at a predetermined ratio for their campaign. (*See* Compl. ¶¶ 37, 39.) In exchange for their participation in this program, and the potential for receipt of public funds, candidates like Plaintiff must "agree to comply with, and demonstrate continued compliance with," the relevant rules of the Board. (Compl. ¶ 39.) Relatedly, the Board also permits candidates to submit campaign statements for inclusion in a voter guide, both in

---

[1] The FAC is written primarily in an argumentative manner, rather than setting out a narrative that can be easily followed. For ease of understanding, Defendants have relied on the original Complaint where possible to provide a readable accounting of this action's assertions.

print and in an electronic video statement, for dissemination by the Board to the voting public. (Compl. ¶ 31); *see also* N.Y.C. Charter § 1053 (setting forth obligations for the Board to disseminate voter guide).[2] The Board also regularly coordinates debates between candidates. (*See* Compl. ¶¶ 75–83); *see also* N.Y.C. Admin. Code § 3-709.5 (setting forth requirements for mandatory debates).

In advance of the 2021 election, Plaintiff attended a training administered by the Board at which certain representations were allegedly made to her about the substance of the Board's rules for participants in its campaign finance program. (*E.g.*, Compl. ¶ 54; FAC ¶¶ 20–21.) In particular, Plaintiff alleges that she was told that, as a candidate participating in the public funding program, she herself was subject to a cap on the amount of funds that she could contribute to her own campaign. (*See* Compl. ¶¶ 54, 67; *see also* FAC ¶ 21.) For the 2021 election of Public Advocate, this capped amount was $6,000.00. (Compl. ¶ 67; *see also* FAC ¶ 24.) Furthermore, Plaintiff alleges that she was told that she was not allowed to pay a third-party service provider herself to provide services to her campaign, as this itself would be considered an in-kind contribution subject to the contribution cap. (Compl. ¶ 54.)

Later in 2021, Plaintiff submitted a draft statement for inclusion in the in-print and video Voter Guide distributed by the Board. (Compl. ¶ 56; *see* FAC ¶ 9.) The Board responded to Plaintiff and informed her that, under the Board's rules, she was not permitted to use the name of the incumbent Public Advocate in her Voter Guide submissions. (Compl. ¶ 56; *see* FAC ¶ 9.) The Board's Voter Guide was ultimately published without a statement from Plaintiff. (*See* Compl. ¶ 60.) In October 2021, Plaintiff sought a temporary restraining order in

---

[2] Copies of the Charter, Administrative Code, and Rules of the City of New York are available through American Legal Publishing at https://codelibrary.amlegal.com/codes/newyorkcity/latest/overview.

the Supreme Court of the State of New York, County of New York, through what was eventually converted into an Article 78 proceeding, enjoining the publication of the Voter Guide without a statement from Plaintiff. (*Id.* ¶¶ 80–81; FAC ¶ 12; *see also* Thayer Decl., Ex. E (containing transcript of hearing at which the proceeding was converted into an Article 78 proceeding), ECF No. 25.)[3]

In October of 2021, the Board also hosted a debate between the candidates for the office of Public Advocate in which Plaintiff participated. (*See* Compl. ¶¶ 75–77; FAC ¶ 11.) The Board allegedly intended to circulate a press release in advance of this debate that described the candidates by appearance for blind or visually impaired voters. (Compl. ¶ 77.) Plaintiff purportedly did not want to provide this information because she felt it was inconsistent with her campaign platform, but after a follow-up request for this information from Board staff, Plaintiff claims she "was forced to provide a description" of her height, heritage, gender, age, and hair/eye color. (*Id.* ¶ 78; *see also* FAC ¶ 11.)

The 2021 election was held on November 2, 2021, and Plaintiff did not receive enough votes to win the citywide office of Public Advocate. (*See* Compl. ¶ 84.) Plaintiff claims that she "exited the election" without any "flagged campaign finance obligations and zero penalties." (Compl. ¶ 88; *see also* FAC ¶ 12.) Yet she alleges that the Board subsequently has engaged in a retaliatory post-election audit of her campaign, purportedly as recompense for a proceeding in New York County Supreme Court that she claims to have commenced against the

---

[3] Defendants rely on their counsel's prior Declaration in making this motion to dismiss the FAC.

Board.[4] (Compl. ¶ 89; *see also* FAC ¶¶ 13, 55.) Plaintiff alleges that the timing of a letter identifying a number of purported campaign finance violations came shortly after she claims to have commenced this proceeding in State court. (Compl. ¶¶ 92–93; *see also* FAC ¶ 14.)

In October 2022, Plaintiff commenced yet another proceeding in New York County Supreme Court, in which she asserted causes of action including negligence, actual malice, libel, disparagement of a commercial entity, negligent entrustment, agency, breach of contract, and negligent hiring/retention. (Thayer Decl., Ex. G, at pp. G002-G003 ¶¶ 4–5.) On or about November 15, 2022, the Board moved to dismiss in this State-court action. (Thayer Decl., Ex. I (containing the Board's initial moving papers).) On April 14, 2022, New York County Supreme Court (Ramseur, J.) issued a Decision and Order dismissing the Complaint pursuant to N.Y. C.P.L.R. § 3211(a)(7). (Thayer Decl., Ex. M.)

Plaintiff filed this action on July 24, 2023. (Compl.) The Defendants moved to dismiss on November 10, 2023, and this motion was granted on May 8, 2024. (ECF No. 45.) In its Opinion & Order ("O&O"), the Court dismissed the vast majority of Plaintiff's claims on claim preclusion grounds, in light of Justice Ramseur's April 14, 2022 Decision and Order in New York County Supreme Court. The Court also dismissed Plaintiff's claims of retaliation in connection with the Board's post-election audit, but ultimately gave Plaintiff leave to replead these claims to cure certain deficiencies in her allegations with respect to *Monell* liability.

On May 30, 2024, Plaintiff filed the First Amended Complaint ("FAC") purporting to amend her retaliation claims. However, beyond the retaliation claims that were set

---

[4] Plaintiff did not actually commence a new proceeding in State court in August 2022. Instead, so far as can be discerned, she filed a second proposed order to show cause in the Article 78 proceeding, which had been before Justice Hagler in New York County Supreme Court. Justice Hagler, however, declined to endorse Plaintiff's proposed order to show cause. (Thayer Decl., Ex. F.)

forth in her original Complaint, Plaintiff newly made a scattershot set of allegations that, from Defendants' perspective, are not obviously related or connected to her post-election audit by the Board. In doing so, Plaintiff points to judicial decisions reviewing the merits of the Board's audits of other candidates, (FAC ¶¶ 38–42, 46), as well as claims of ambiguity, inconsistencies, or inequities in connection with the Board's rules for audits and the public campaign financing program, (FAC ¶¶ 44–45).[5] She also contends that the Board has since amended its rules without saving her comments on those amendments, (FAC ¶¶ 81–83, 93); that the Board retaliated against her friends and supporters, (FAC ¶¶ 68–80); that the Board deleted information about her on its website, (FAC ¶¶ 83, 95); that the Board was somehow a participant in a breach of Plaintiff's cybersecurity, (FAC ¶¶ 85–87); and that the Board has not properly responded to a request under the Freedom of Information Law, (FAC ¶ 87).

## ARGUMENT

### LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "[f]actual allegations" that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Sufficient facts must be provided to "state a claim to relief that is plausible on its face[,]" *id.* at 570, which only occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint is deficient if it does not contain "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the alleged violation. *Twombly*, 550 U.S. at 556. Though courts must accept as true all of the factual allegations contained in a

---

[5] Plaintiff spends several pages in the FAC talking about candidates who were "canceled." (*E.g.*, FAC at pp. 34-39.) Defendants cannot make sense of this portion of the FAC.

complaint when evaluating a motion to dismiss under of Rule 12, *Iqbal*, 556 U.S. at 678, this requirement is "inapplicable to legal conclusions" — a court should not give credence to "[t]hreadbare recitals of the elements of a cause of action" or "mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008).

## POINT I

### TO THE EXTENT THAT PLAINTIFF REPLEADS HER PRECLUDED CLAIMS IN THE GUISE OF RETALIATION, THESE CLAIMS REMAIN PRECLUDED AND SHOULD BE DISMISSED.

As the Court is aware, it previously dismissed the vast majority of the original Complaint in this action on claim-preclusion grounds. (*See generally* O&O, ECF No. 45.) However, the Court gave Plaintiff leave to replead certain claims of retaliation. (*Id.* at pp. 19-20.) In drafting the First Amended Complaint, Plaintiff has clearly repackaged her precluded claims into the language of retaliation. Throughout the FAC, Plaintiff references the Voter Guide, the debates, and her fundamental disagreements with the rules for candidates participating in the public funding campaign finance program and their application to her. However, as the Court has already determined, these claims are precluded and must be dismissed. (O&O, at p. 15.) As such, any claims arising out of Plaintiff's qualms about her inclusion in the print or online Voter Guide, the debate, or the Board's public campaign finance program, including those claims seemingly set forth on pages 25 through 27 of the FAC, must be dismissed.

**POINT II**

**THE COURT SHOULD DISMISS THOSE CLAIMS THAT PLAINTIFF WAS NOT GIVEN LEAVE TO AMEND.**

In its May 8, 2024 Opinion & Order, the Court described Plaintiff's retaliation claim as one about "retaliatory audits against candidates." (O&O, at p. 15.) The Court dismissed it on the grounds that Plaintiff had failed to establish *Monell* liability. (*Id.* at p. 17.) However, the Court gave Plaintiff leave to amend her dismissed retaliation claim. (*Id.* at pp. 19–20.) In the FAC, however, Plaintiff has taken the opportunity to seemingly expand her claims of retaliation beyond those of a retaliatory audit and raise new theories of retaliation. Under the Federal Rules of Civil Procedure, Plaintiff has no basis as of right to amend her original Complaint in such a fashion, nor has the Court afforded her leave to do so. *Cf. Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 702 (2d Cir. 2010) (holding there was no abuse of discretion when district court refused to consider new theories of liability set forth at summary judgment when plaintiff had not sought leave to amend). As such, Plaintiff's new claims of retaliation not relating to the post-election audit, most of which predate the original Complaint and thus Plaintiff cannot claim she newly discovered, should be dismissed.

**POINT III**

**PLAINTIFF'S CLAIMS OF RETALIATION FAIL AND SHOULD BE DISMISSED.**

The FAC is written in a primarily argumentative, rather than narrative, fashion and, notwithstanding its fifty-seven pages, is inscrutable. So far as Defendants can discern, Plaintiff's primary argument is (i) that, as also set forth in Plaintiff's original Complaint, the Board's commencement of the post-election audit constituted retaliation against her. (*See* FAC ¶¶ 13, 49.) She further contends (ii) that several generally applicable regulations of the Board are

actually "retaliation polic[ies]" of the Board. (*E.g.*, *id.* ¶¶ 30–31, 34.) However, at alternate points in the FAC, Plaintiff appears to contend (iii) that she will be subject to future retaliation in the form of campaign finance violation penalties, (*e.g.*, *id.* ¶ 29), as well as (iv) that the Board's publication of the complete 2022 Voter Guide was retaliatory and meant to "*pressure* the Republican party into threatening [her] and ostracizing [her]," (*id.* ¶ 67); (v) that the Board "deleted information about [her] fundraising from its website and altered public information about [her] fundraising" in a retaliatory fashion," (*id.* ¶ 83); (vi) that the Board failed to investigate breaches of her cybersecurity out of retaliation, (*see id.* at p. 47); and (vii) that the Board somehow edited a video to exclude her from its contents, (*see id.*, at p. 52).

To start, in order for a plaintiff to plead a First Amendment retaliation claim, she must allege that she (1) "has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [her] exercise of that right; and (3) the defendant's actions caused [her] some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). Often this injury is in the form of chilled speech or another concrete injury. *See id.* To plead such a claim against a municipality, or a government official in their official capacity, a plaintiff must also plead the existence of so-called *Monell* liability. "The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020).

To sufficiently plead the existence of a policy or custom, Plaintiff must "allege the existence of" one of the following:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a

9

> practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Ortiz v. City of New York*, 19 Civ. 7887 (ER), 2021 U.S. Dist. LEXIS 130333, at *6–7 (S.D.N.Y. July 13, 2021) (quoting *Cuellar v. Love*, No. 11 Civ. 3632 (NSR), 2014 U.S. Dist. LEXIS 51622, 2014 WL 1486458, at *10 (S.D.N.Y. Apr. 11, 2014) (quoting *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996))). Moreover, "case law is clear that 'a single incident of errant behavior is an insufficient basis for finding that a municipal policy caused plaintiff's injury.'" *Torres v. City of New York*, 19 Civ. 6332 (ER), 2023 U.S. Dist. LEXIS 8079, at *13–14 (S.D.N.Y. Jan. 17, 2023) (quoting *Sarus v. Rotundo*, 831 F.2d 397, 402–03 (2d Cir. 1987)); *see also DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998).

Plaintiff fails to adequately plead any retaliation claim. First, with respect to her allegations that Defendants' conduct of a post-election audit against her constitutes retaliation, Plaintiff does not — and cannot — plausibly claim that this was "motivated or substantially caused" by any exercise of her First Amendment rights. As Defendants have previously pointed out to Plaintiff and the Court, the Board is required to perform audits of *all* candidates in elections for City offices. 52 R.C.N.Y. § 10-01(a) ("The Board shall conduct desk and field audits of participants and non-participants [in the Board's public financing program], regardless of whether the candidates receive public funds."); *see also* Opinion & Order, at p. 16 (citing *Montero v. City of Yonkers*, 890 F.3d 386, 403 (2d Cir. 2018)) ("The mere fact that an audit took place as required by law is insufficient to support the claim that a policy of retaliation existed."). In other words, regardless of any exercise by Plaintiff of her First Amendment rights, the Board would still be required to audit her. Plaintiff therefore fails to plead the existence of a standing

policy of retaliation on the part of the Board against her or other candidates. Thus, Plaintiff cannot plead the necessary elements to state this claim.

Relatedly, Plaintiff cannot plausibly claim that the application of the Board's generally applicable regulations concerning the public campaign financing program to her is retaliation. *See Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 171 (2d Cir. 2024) (citing *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023)) (noting, in employment context, that employer's adverse action vis-à-vis an employee that is consistent with generally applicable workplace policies is insufficient to constitute retaliation against the employee). Here, Plaintiff, who herself enrolled in the public funding campaign financing program, is clearly subject to the rules of that program. Her disagreement with the appropriateness or wisdom of those rules as applied to her does not amount to retaliation against her specifically. In any event, these claims are also claim-precluded, as previously discussed. As such Plaintiff's claims to this effect should be dismissed.

To the extent that Plaintiff takes issue with the duration and/or nature of the audit, she has not pleaded facts permitting a reasonable inference that this is, again, causally connected to an exercise of her rights. The Draft Audit Report, which sets out the complete scope of findings upon initial review of the campaigns finance by the Board, was issued in late 2022. (FAC ¶ 13.) That Plaintiff may disagree with the particulars of the Board's report does not transform her accounting grievances into a federal civil rights action. Moreover, as the interim General Counsel of the Campaign Finance Board stated at the pre-motion conference, other candidates from the same election are still undergoing their audits alongside Plaintiff, making any claims that the duration of the audit is somehow discriminatory against *her* implausible.

As for Plaintiff's other claims of retaliation, they may be easily disregarded as incredible on their face. Plaintiff's allegations that she will be subject to future retaliation is both speculative and unripe. Should she receive any campaign finance penalties after a multilevel administrative hearing process (during which time she will have the opportunity to appear either before the Board or OATH, N.Y.C. Admin. Code § 3-710.5(ii)(a)), Plaintiff will, if she chooses, be able to contest those penalties through judicial review, *see id.* § 3-710.5(ii)(b)(i).

Next, her claims that the Board's publication of the complete 2022 Voter Guide was meant to "*pressure* the Republican party into threatening [her] and ostracizing [her]," (FAC ¶ 67); that the Board "deleted information about [her] fundraising from its website and altered public information about [her] fundraising" in a retaliatory fashion," (*id.* ¶ 83); that the Board failed to investigate cybersecurity breaches out of retaliation, (*see id.* at p. 47); and that the Board somehow edited a video to exclude her from its contents, (*see id.*, at p. 52), strain credulity. First, Plaintiff does not allege any facts upon which the Court may plausibly infer that the Board's publication of that Guide was for the retaliatory purpose of setting the Republican party against her as opposed to, for example, making publicly available a document that it had already published. Next, the FAC does not plead facts beyond rank speculation permitting a plausible inference that the Board had anything to do with any breach of Plaintiff's cybersecurity, nor that the Board had a duty to investigate any such breach. Last, her claims that the Board edited her comments from a Board video likewise fail to allege a plausible connection between this editing, if true, and retaliatory intent on the Board's part. Indeed, across all of these allegations, it is unclear what the protected activity for which the Board is allegedly retaliating against Plaintiff or what concrete harm(s) Plaintiff suffered as a result. Instead, these and

Plaintiff's other allegations read as though Plaintiff believes that every interaction she has had with the Board constitutes retaliation against her. The Court should dismiss such fanciful claims.

In any event, Plaintiff has failed to establish that any of these non-audit-related acts of purported retaliation were the result of policy, practices, or customs of the Board. She fails to plausibly establish that the Board had a policy, practice, or custom of doing any aforementioned acts as a form of retaliation — or that any of the individual defendants had policymaking authority sufficient to elevate their conduct to a Board policy, practice, or custom. Even where Plaintiff asserts that Defendants Perskie and Sollars participated in the exclusion of her recorded comments on a proposed amendment to the Board's rules, (*e.g.*, FAC at p. 44; ¶ 93), Plaintiff does not plausibly allege that this conduct was retaliatory, as she acknowledges that the Board is only required to post objections it has received "in full *or* in summary." (*Id.* at p. 44 (emphasis added).) The alleged absence of her recorded statement is thus not retaliatory by Plaintiff's acknowledgement.

Lastly, it is black letter law that Plaintiff may not make claims on others' behalf while acting *pro se*. Accordingly, her allegations that the Board retaliated against her friends and supporters, (FAC ¶¶ 68–80), should be disregarded.

In sum, Plaintiff's scattershot approach in which she appears to see retaliation in every aspect of her interactions with the Board ultimately does not make her grievances cognizable under federal law. The Board, consistent with its mandated duties, has not retaliated against Plaintiff, and her retaliation claims must therefore fail.

## POINT IV

### THE BOARD LACKS THE CAPACITY TO BE SUED.

Plaintiff again purports to sue the Board in its own right, notwithstanding the fact that she has joined the City of New York. However, the Charter of the City of New York provides that "[a]ll actions shall be brought in the name of the city of New York and *not* in that of any agency, except where otherwise provided by law." N.Y.C. Charter § 396 (emphasis added). As the Court has previously held, the Board lacks the capacity to be sued. (O&O, at p. 17-18.) As such, the claims against it should be dismissed.

## POINT V

### PLAINTIFF'S CLAIMS ABOUT HER FREEDOM OF INFORMATION LAW REQUEST ARE NOT COGNIZABLE IN THIS COURT.

Plaintiff takes issue with the Board's response to a Freedom of Information Law ("FOIL") request that she made. (FAC ¶ 87). "However, 'the appropriate vehicle for challenging denials of access guaranteed by the New York Freedom of Information law is a state court proceeding pursuant to . . . Article 78 upon exhaustion of administrative remedies.'" *Sarkar v. N.Y.C. Dep't of Educ.*, 19-cv-4040 (MKV), 2024 U.S. Dist. LEXIS 59754, at *30 (S.D.N.Y. Mar. 28, 2024) (quoting *Schuloff v. Fields*, 950 F. Supp. 66, 67–68 (E.D.N.Y. 1997)). Thus, Plaintiff's claims about any purported inadequate FOIL responses should be directed to the New York Supreme Court; they are not cognizable in this Court and should be dismissed.

## POINT VI

### THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION.

Given that Plaintiff has no viable federal claims in this action, just as it did so in its May 8, 2024 Opinion & Order, this Court should decline to exercise supplemental jurisdiction.

## POINT VII

### PLAINTIFFS' MOTION FOR A CORRECTION SHOULD BE DENIED.

On September 12, 2024, Plaintiff filed a document entitled "To Clarify" and that is listed on the ECF docket as a "Proposed Motion to Amend/Correct Facts Presented at Hearing 7/25/24." (ECF No. 57.) The Court should deny this proposed motion. In it, Plaintiff continues to raise a strawman argument that does not exist in reality.

As stated above, the Board is required to audit the campaigns of all candidates who participate in the Board's public campaign financing program. 52 R.C.N.Y. § 10-01(a). Expenditures by a *campaign* for legal fees are exempt from expenditure limits. 52 R.C.N.Y. § 6-01(i)(i)(A), (C). If a *candidate* wants to cover the costs of their campaign's legal fees, however, then the candidate is subject to the candidate's contribution limit, here, for Plaintiff, of $6,000.00. N.Y.C. Admin. Code §§ 3-703(1)(f), (h).[6]

However, once the Board issues its Draft Audit Report, a necessarily retrospective document, a candidate's financing of their campaign's post-election legal fees going forward is rarely, if ever, the subject of the Board's retrospective audit. This was alluded to by Defendants'

---

[6] The contribution limits set forth in N.Y.C. Admin. Code §3-703(1)(f) have been altered since the election in which Plaintiff participated, as is apparent from the regulation as it currently reads.

counsel at the July 25, 2024 conference – an audit must necessarily have a point certain from which it looks back, otherwise it would never end. And in any event, the Board's interim General Counsel confirmed on the record in this action that Plaintiff's legal fees for this action (and for any other proceeding she may bring concerning her post-election audit) will not be the subject of the Board's auditing in connection with the 2021 primary election for the Republican candidate for Public Advocate. Plaintiff's allegations that there were misleading statements at the July 24, 2024 conference are therefore misplaced.

Plaintiff's reference to the Dosamantes matter is also a red-herring. As is evident from the documents appended to Plaintiff's proposed motion, Dosamantes was alleged to have paid, below market-rate, the legal services vendor referenced in that document, and Dosamantes's campaign seemingly failed to recognize that the savings garnered by this below-market-rate payment could constitute a contribution subject to applicable limits. Plaintiff is not in a comparable position, however, and thus the Court should disregard her reference to the Dosamantes matter. Accordingly, the Court should deny Plaintiff's proposed motion.

## <u>CONCLUSION</u>

For the foregoing reasons, the Defendants respectfully request that the Court grant their motion to dismiss, dismiss the First Amended Complaint and the claims therein in their entirety, deny Plaintiff's proposed motion, award judgment in Defendants' favor, and grant to Defendants such other and further relief that the Court may deem just and proper.

Dated:        September 20, 2024
               New York, New York

                     **MURIEL GOODE-TRUFANT**
                     *Acting Corporation Counsel of the City of New York*
                     Attorney for the Defendants
                     100 Church Street
                     New York, NY 10007
                     t: (212) 356-2649
                     f: (212) 356-1148
                     e: dthayer@law.nyc.gov


             By:     */s/ David S. Thayer*
                     DAVID S. THAYER
                     *Assistant Corporation Counsel*