

**MURIEL GOODE-TRUFANT**
*Acting Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**DAVID S. THAYER**
*Assistant Corporation Counsel*
t: (212) 356-2649
f: (212) 356-1148
e: dthayer@law.nyc.gov

September 27, 2024

*Via ECF*

The Honorable Edgardo Ramos
United States District Court for the
Southern District of New York
40 Foley Square
New York, NY 10007

      Re: **Nampiaparampil v. N.Y.C. Campaign Fin. Bd.,** *et al.*
           **No. 23 CV 6391 (ER)**

Dear Judge Ramos:

      I am an Assistant Corporation Counsel in the office of the Acting Corporation Counsel of the City of New York, Muriel Goode-Trufant, attorney for Defendants in the above-referenced action. I write in response to Plaintiff's pre-motion letter concerning an application for discovery sanctions based on Defendants' purported failure to preserve certain documents. Defendants oppose Plaintiff's application and respectfully submit that a pre-motion conference is unwarranted. Defendants are committed to their duty to preserve. Plaintiff's accusations to the contrary appear to arise from a misunderstanding as to the nature of Defendants' records and from her dissatisfaction with Defendants' response to a request for documents that Plaintiff previously made and is unconnected to this action.

      At the outset, Plaintiff has failed to comply with Rule 37(a)(1) in making her application. She has not, nor can she certify that she has, "in good faith conferred or attempted to confer with the person or party failing to make disclosure of discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Her application should therefore be denied in advance of a meet and confer.

      Secondly, Plaintiff's application for a discovery sanction is made without her having served any discovery demands in this action. Indeed, discovery was previously stayed by the Court, (ECF No. 35), and a Rule 16 scheduling order has not been issued since then. Plaintiff's

application for discovery sanctions for failure to preserve is thus made untethered to any particular demand of Plaintiff's such that Defendants can adequately evaluate whether they appropriately preserved a document. Instead, Plaintiff's accusation is merely a speculative assertion without evidence.

In truth, Plaintiff appears to be making assumptions about the Defendants' preservation based upon a response made by New York City Campaign Finance Board ("CFB") to a prior request from Plaintiff for documents under the N.Y. Freedom of Information Law ("FOIL"), N.Y. Exec. Law §§ 84-90. Any disagreements Plaintiff may have with the adequacy of CFB's response to her FOIL request are not properly considered in this forum. *Sarkar v. N.Y.C. Dep't of Educ.*, 19-cv-4040 (MKV), 2024 U.S. Dist. LEXIS 59794, at *30 (S.D.N.Y. Mar. 28, 2024) (citing *Schuloff v. Fields*, 950 F. Supp. 66, 67-68 (E.D.N.Y. 1997)).

In particular, Plaintiff's accusations about purported changes to the online Voter Guides are ill-founded. The Board has preserved and maintained a copy of the data comprising the 2021 and 2022 Voter Guides, including the video submissions made by Plaintiff and other candidates. By way of context, Voter Guides prior to the 2021 primary and general elections were archived on the CFB's main website, nyccfb.info. However, in 2021, CFB launched a second website, nycvotes.org, which was designed and built by an external vendor, that provides the public and candidates with information about upcoming elections, including an online interactive Voter Guide application. However, the vendor does not compile and archive each election's voter guide information into a single retrospective 'Voter Guide' document,[1] though as noted, the underlying data that makes up the interactive online Voter Guide application is preserved by CFB. *After* an election, however, the online Voter Guide application is typically not kept 'live' or up-to-date because the election has passed. Furthermore, the coding that underlies the online Voter Guide for a particular election may be changed or altered as information is moved around on the vendor's website in contemplation of, for example, another upcoming election.[2] This results in changes to the information publicly visible on the CFB vendor's website. This is why it may appear that certain candidates' information (notably, from across party lines) disappears from the CFB's vendor's website for past elections. Critically, however, there has not been deletion of the actual data that comprises the 'Voter Guide.'

As for Plaintiffs accusations about the absence of final audit reports for Celisa Dosamantes and Albert Baldeo, this is a red-herring. A candidate's final audit report specifying accounting errors or discrepancies is customarily issued only after any related criminal proceedings have concluded. Upon information and belief, both Dosamantes and Baldeo's criminal proceedings have only recently concluded, and the Board will therefore be issuing their

---

[1] This is why, it can be surmised, CFB could not provide Plaintiff with a 'Voter Guide' document in response to her FOIL request about the online Voter Guide. CFB did provide Plaintiff with .pdf files of the print Voter Guide, however.

[2] Defendants fail to see how the relevant coding (or even the content) of the online Voter Guide application has anything to do with this action. As this Court has held, Plaintiff's complaints about the Voter Guide are claim-precluded. (ECF No. 45, at p. 15.)

final audit reports in due course.[3] In any event, Plaintiff's attempts to compare herself with Dosamantes and Baldeo are unavailing. She is not being criminally prosecuted.

With respect to Plaintiff's assertions that CFB has concealed fundraising information from the 2021 Public Advocate race and destroyed public posts about the matching funds program, concealed and/or destroyed records of internal quality control procedures, and deleted email communications about her video submission for the video Voter Guide, without the benefit of greater specificity, Defendants are unaware of the purported documents to which Plaintiff intends to refer.[4] Again, her complaints on this front appear to be related to her incredulity and dissatisfaction with a response she received to her FOIL request, a matter that is not cognizable in this Court. *Sarkar*, 2024 U.S. Dist. LEXIS 59794, at *30.

For Plaintiff's accusations about the concealment and/or deletion of records of her testimony to the CFB on January 17, 2023, the CFB is again unaware of precisely to what Plaintiff is referring. The CFB met to vote on enforcement actions on that date and did not receive testimony. However, the CFB notes that separate written testimony from Plaintiff is publicly available on the CFB's website here.

At bottom, Defendants seriously question whether much of the information described in Plaintiff's pre-motion letter are germane to this action. To that point, Defendants respectfully submit that their recent motion to dismiss will greatly affect the scope and scale of Plaintiff's action and could provide guidance as to what documents are relevant and must be produced. At the very least, therefore, the Court should decline to hold a conference on Plaintiff's pre-motion letter while Defendants' motion is pending. Notwithstanding Plaintiff's assertion that her opposition to this motion requires the documents described in her pre-motion letter, she does not. The only matters that Defendants relied on outside of the pleadings in making their motion were the parties' filings in the prior, preclusive State court action. (*E.g.*, Thayer Decl., Nov. 10, 2023, ECF No. 25.) The remainder of the motion focuses on legal arguments concerning the sufficiency of Plaintiff's pleadings. Plaintiff may respond to these without discovery. And Plaintiff's allusions to the need for governmental transparency are, again, indicia of her dissatisfaction with the CFB's prior response to her FOIL request. The Court should not permit her to bootstrap that dissatisfaction into a discovery dispute so prematurely in this action.



---

[3] The Final Board Determinations, which concern enforcement and are reviewable in an Article 78 proceeding, for both Dosamantes and Baldeo have been issued.

[4] Plaintiff's FOIL request similarly referred to "[p]olicies and procedures for the CRB's internal controls" for several different items. However, CFB made clear in its response that responsive documents were not identified.

I thank the Court for its consideration of this matter.

Respectfully yours,

/s/ David S. Thayer

David S. Thayer