UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DEVI NAMPIAPARAMPIL,
                     *Plaintiff*,

    –against–

THE NEW YORK CITY CAMPAIGN FINANCE
BOARD, AMY LOPREST, DAVID DUHALDE,
HANNAH EGERTON, FREDERICK SCHAFFER,
BETHANY PERSKIE, MATTHEW SOLLARS,
JACLYN WILLIAMS & THE CITY OF NEW YORK
                     *Defendants*

## MEMO ENDORSED

### SECOND MOTION FOR SANCTIONS

> A conference regarding the pending motions, Docs. 57, 60, 81, 82, and 86, will be held on Thursday, January 16, 2025, at 3:30 PM in Courtroom 619 at the Thurgood Marshall United States Courthouse. City is directed to respond to Nampiaparampil's motion, Doc. 86, by Thursday, January 9, 2025.
>
> It is SO ORDERED.
>
> Edgardo Ramos, U.S.D.J.
> Dated: 1/02/2025
> New York, New York

December 27, 2024

Dear Judge Ramos,

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, I the Plaintiff, Devi Nampiaparampil, respectfully move this Court for sanctions against Defendants and their counsel for their repeated material misrepresentations of law and fact, destruction and alteration of evidence, witness intimidation, and other intentional misconduct that have prejudiced my ability to litigate this case. The cumulative effect of Defendants' actions has undermined the integrity of these proceedings, necessitating this Motion for Sanctions. This case has been submitted to the Judicial Panel on Multidistrict Litigation (JPML). On December 19, 2024, I submitted a Motion to Stay Proceedings until the JPML could render its decision. If the Court decides *not* to stay these proceedings, then I respectfully ask the Court to grant my Motion for Sanctions. My first Letter-Motion for a conference on Sanctions (filed September 19, 2024) is still pending, awaiting the Court's adjudication,

### Introduction

Defendants have engaged in a pattern of misconduct designed to prejudice my case, including submitting contradictory statements regarding their "lawyer ban," destroying critical evidence, and impeding my access to justice. These actions not only obstruct my ability to litigate but also constitute a broader attempt to manipulate the judicial process.

1

Sanctions under Rule 11, judicial estoppel, and findings of fraud upon the court are warranted to address this behavior.

**Legal Standard**

Rule 11 imposes a duty on parties to ensure that their submissions to the Court are accurate, truthful, and not made for improper purposes. Courts may impose sanctions for filings made in bad faith or with reckless disregard for the truth. Judicial estoppel prevents a party from asserting inconsistent positions to gain an unfair advantage, while fraud upon the court encompasses conduct that undermines the integrity of judicial proceedings.

**Factual Background**

As detailed in Plaintiff's Affidavit, Defendants have engaged in the following actions:

1. **Contradictory Representations Regarding the Lawyer Ban[1]:**
    - In this case record, Defendants provided conflicting statements about whether candidates could retain counsel post-election without facing penalties. During the July 25, 2024 hearing, Defendants, through their General Counsel Joseph Gallagher, asserted the existence of a lawyer ban, stating to the Court that, "If you want to spend on a lawyer and your campaign doesn't have the finances to spend on that lawyer, you can't pay for it out-of-pocket unless you stay with the contradiction [sic] limit. So, in this matter, it would have been $6000." During the same hearing, I informed the Court that I had already spent $6000 in 2021. This created the circumstances necessary for the formation of a lawyer ban.
    - The Defendants doubled down on their lawyer ban at various points in this case record, including their Motion to Dismiss (MTD) the First Amended Complaint (FAC), writing, "If a candidate wants to cover the costs of their campaign's legal fees, however, then the candidate is subject to the candidate's contribution limit, here, for Plaintiff, of $6000." They asserted the existence of the lawyer ban I described in my FAC *a third time* in their Reply papers, writing to the Court, ""If a *candidate* wants to cover the costs of their

---

[1] In the Affidavit accompanying this Motion, I have delineated the Defendants' false, misleading and inconsistent statements, with specific references to the court record.

2

- campaign's legal fees, however, then the candidate is subject to the candidate's contribution limit, here, for Plaintiff, of $6,000. N.Y.C. Admin. Code §§ 3-703 (l)(f),(h)."
  - In their Reply papers, the Defendants acknowledged **their statutory policy of retaliation**, making an unconvincing argument, ""[A]lthough in theory a candidate's financing of their campaign's post-election legal fees could be permissibly the subject of the Board's audit, such a scenario is extremely unlikely because an audit must necessarily have a point certain from which it looks back, otherwise it would never end." Any insolvent campaign that retains counsel to discuss its civil rights can—by statute—be penalized with triple the attorneys' fees, an action that can incapacitate the campaign's officers, automatically retaliates against the campaign's officers, and deters the campaign's officers and others from ever running for office.
  - The Defendants invoke the lawyer ban at numerous other points in the case record, which I have detailed in my Affidavit. They appear to cite preclusion—implying that since I was barred from speaking to any lawyers in my earlier NYS Supreme Court case, I should be permanently barred.
  - They also assert that I voluntarily agreed to these lifetime limits on free speech, due process, and access to the courts.
  - This Motion for Sanctions, however, specifically has to do with their inconsistent statements in their Reply papers. They characterized their earlier statements—which effectively chilled my First Amendment activity-- as **"typographical errors**," and recognizing that I could not submit a Sur-Reply, concluded for the Court, "[T]he only person continuing to hold Plaintiff to a non-existent lawyer ban is Plaintiff herself."
  - These misrepresentations, along with other misconduct, have created confusion, chilled my ability to retain counsel, chilled my mother's ability to retain counsel in her E.D.N.Y. case, intimidated at least one witness (2015 City Council candidate, Celia Dosamantes), and directly affected my litigation strategy.

3

- o The Defendants' misrepresentations about the lawyer ban, presented during hearings and in subsequent filings, amount to a deliberate attempt to interfere with this Court's ability to adjudicate impartially. As the Second Circuit has held, fraud upon the court involves actions that 'defile the court itself,' undermining the judicial process entirely. (*Kupferman v. Consolidated Res. Mfg. Corp.,* 459 F.2d 1072).

2. **Destruction and Tampering with Evidence:**
    - o The Defendants destroyed critical electronically stored information (ESI), including past Voter Guides and audit reports for similarly situated candidates. Despite having a duty to preserve this evidence, Defendants altered and deleted records after this litigation commenced. "The obligation to preserve evidence arises when a party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." (*Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).
    - o The Defendants falsely claimed to the Court that I had access to these materials, further obstructing my ability to present my case, and perhaps impacting the Court's decision to grant their Motion to Stay Discovery.
    - o By destroying critical evidence and later providing false explanations for its unavailability, the Defendants engaged in conduct that 'sentiently set in motion some unconscionable scheme' to hamper my ability to present my claims. (Passlogix, Inc. v. 2FA Tech., LLC at al., No. 1:2008-cv-10986 in the S.D.N.Y).
3. **Misleading Statements Regarding Key Evidence:**
    - o Defendants falsely **denied the existence** of a January 17, 2023 public hearing where I testified to them about the unconstitutional nature of their Rules. Furthermore, they destroyed all social media posts regarding this hearing, effectively removing any trace of it on the public-facing government websites. It was only after I rebutted their false statements by presenting time-stamped screenshots of our joint participation in the hearing did

4

   Defendants introduce new, contradictory justifications for their actions. Of note, my request to enter the full time-stamped screen-recorded video into evidence is still pending before the Court.

4. **Procedural Abuses:**
    - Defendants have abused procedural rules, using the Stay of Discovery to evade accountability while continuing their own improper Discovery under the guise of regulatory compliance. "Where one party gains an unfair advantage through asymmetrical access to information, the integrity of the judicial process is compromised." (*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 112 (2d Cir. 2002)). This one-sided application of Discovery rules has placed me at a severe disadvantage. As I described in my Affidavit, I have been repeatedly pressured to sign false confessions under threat of economic injury in the form of campaign finance penalties. "Discovery should be a two-way street, with neither party unfairly withholding relevant evidence nor exploiting procedural mechanisms to gain an undue advantage." (*In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003)). The Defendants' ongoing audit serves as an impermissible substitute for reciprocal discovery while they shield themselves behind a Court-ordered Stay. See also, "The purpose of discovery is to level the playing field and ensure that both parties can present their cases fully and fairly." (*MacNamara v. City of New York*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008)).
    - 

**Argument**

**1. The Defendants' Misrepresentations Warrant Sanctions Under Rule 11**

Defendants knowingly submitted false statements regarding the lawyer ban, including their contradictory and misleading assertions during the July 25, 2024 hearing and subsequent filings. These strategically-timed misstatements of fact and law have prejudiced my case by creating procedural ambiguity and deterring me from seeking legal representation. Their pattern of contradictory statements about material facts—now framed as "typographical errors"—demonstrates reckless disregard for the truth and bad faith conduct. At a minimum, these individuals are not coordinating truthfully. These behaviors suggest the

Defendants have been complicit in the perpetuation of this deceit. They failed to correct their lawyers' misstatements (as occurred in our July 25, 2024 hearing). Alternatively, they may have provided false information to their counsel.

**2. Judicial Estoppel Should Preclude Defendants' Contradictory Positions**

Defendants' shifting narratives about the lawyer ban—from denying its existence to invoking it to justify penalties—constitute the type of inconsistent behavior judicial estoppel is designed to prevent. Allowing Defendants to adopt contradictory positions undermines the integrity of these proceedings.

**3. The Defendants' Conduct Constitutes Fraud Upon the Court**

The destruction of evidence, intimidation of a witness who experienced the lawyer ban herself, coupled with their false statements about the availability of critical records, amounts to fraud upon the court. By deleting numerous records relevant to my claims and obstructing my access to evidence, the Defendants have deliberately impeded the truth-finding process.

**4. Cumulative Prejudice Requires Immediate Relief**

The Defendants' actions have caused me cumulative prejudice by delaying the resolution of my claims, increasing my litigation costs (by interfering with my ability to earn income practicing medicine and by decreasing the valuation of my medical practice), impaired my ability to seek legal representation, and caused me additional stress. The Court's intervention is necessary to prevent further harm and restore fairness to these proceedings.

**Relief Requested**

I respectfully request that the Court:

1. **Impose Sanctions Under Rule 11 and the Court's Inherent Power:**
   Sanction the Defendants and their Counsel for submitting false statements and engaging in bad faith conduct. In *Chambers v NASCO, Inc.,* 501 U.S. 32 (1991)), the Supreme Court imposed severe sanctions on the bad actor, holding, "[T]he alleged sanctionable conduct was that Chambers had (1) attempted to deprive the court of jurisdiction by acts of fraud, nearly all of which were performed outside the confines of the court, (2) filed false and frivolous pleadings, and (3) "attempted, by other tactics of delay, oppression, harassment and massive expense to reduce [NASCO] to

6

exhausted compliance." The court deemed Federal Rule of Civil Procedure 11 -- which provides for the imposition of attorney's fees as a sanction for the improper filing of papers with a court -- insufficient to support the sanction against Chambers, since the Rule does not reach conduct in the foregoing first and third categories, and since it would have been impossible to assess sanctions at the time the papers in the second category were filed, because their falsity did not become apparent until after the trial on the merits." See also *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010) where the Court held, "Sanctions for discovery abuses are intended to ensure that the judicial process is not undermined by misconduct that disadvantages the opposing party."

2. **Invoke Judicial Estoppel:**

    Preclude Defendants from asserting inconsistent positions regarding the lawyer ban. The Second Circuit has consistently held that judicial estoppel serves to protect the integrity of the judicial process by preventing parties from asserting contradictory positions to suit the exigencies of the moment. In this case, Defendants' conflicting statements regarding the lawyer ban—first denying its existence, then affirming it to justify penalties, and later dismissing it as a typographical error—constitute precisely the type of inconsistent behavior judicial estoppel is designed to prevent. (*Adelphia Recovery Trust v. Goldman, Sachs & Co.* 748 F.3d 110 (2d Cir. 2014)). See also: "Judicial estoppel is not a mere technical defense but a safeguard against the improper use of judicial machinery. Defendants' shifting narratives on the lawyer ban not only prejudice Plaintiff but also erode confidence in the fairness and consistency of judicial proceedings." (*Bates v. Long Island R.R. Co.* 997 F.2d 1028).

3. **Find Fraud Upon the Court:**

    Make a determination of fraud upon the court based on Defendants' misleading statements, destruction of evidence and procedural misconduct. In Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), the Supreme Court ruled, "[T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud

exhausted compliance." The court deemed Federal Rule of Civil Procedure 11 -- which provides for the imposition of attorney's fees as a sanction for the improper filing of papers with a court -- insufficient to support the sanction against Chambers, since the Rule does not reach conduct in the foregoing first and third categories, and since it would have been impossible to assess sanctions at the time the papers in the second category were filed, because their falsity did not become apparent until after the trial on the merits." See also *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010) where the Court held, "Sanctions for discovery abuses are intended to ensure that the judicial process is not undermined by misconduct that disadvantages the opposing party."

2. **Invoke Judicial Estoppel:**

    Preclude Defendants from asserting inconsistent positions regarding the lawyer ban. The Second Circuit has consistently held that judicial estoppel serves to protect the integrity of the judicial process by preventing parties from asserting contradictory positions to suit the exigencies of the moment. In this case, Defendants' conflicting statements regarding the lawyer ban—first denying its existence, then affirming it to justify penalties, and later dismissing it as a typographical error—constitute precisely the type of inconsistent behavior judicial estoppel is designed to prevent. (*Adelphia Recovery Trust v. Goldman, Sachs & Co.* 748 F.3d 110 (2d Cir. 2014)). See also: "Judicial estoppel is not a mere technical defense but a safeguard against the improper use of judicial machinery. Defendants' shifting narratives on the lawyer ban not only prejudice Plaintiff but also erode confidence in the fairness and consistency of judicial proceedings." (*Bates v. Long Island R.R. Co.* 997 F.2d 1028).

3. **Find Fraud Upon the Court:**

    Make a determination of fraud upon the court based on Defendants' misleading statements, destruction of evidence and procedural misconduct. In Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), the Supreme Court ruled, "[T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud

cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud."

4. **Refer Defendants for Disciplinary Action:**

    Refer Defendants' counsel to the appropriate disciplinary authorities for their role in perpetuating this misconduct.

5. **Issue an Injunction on the Knowledge Ban:**

    My Motion before the Court has been pending since September 20, 2024.

6. **Issue an Order that the Defendants Clarify their Multifaceted Knowledge Ban On the Record.**

    *Denied the ability to spend money, I remain defenseless against the Defendants' ongoing abuses of power.*

    a) Am I allowed to speak to a lawyer about my civil rights?

    b) Can I retain a lawyer to represent my professional medical practice "Metropolis Pain Medicine PLLC d/b/a Devi Nampiaparampil, M.D." or my campaign "Dr. Devi For NYC" without fear of campaign finance violations or penalties?

    c) Are the Defendants issuing a reprieve on their statutory policy for me alone—or for **anyone and everyone** that might come forward with litigation against the NYC Campaign Finance Board in this election cycle and any other election cycle? If they are issuing a reprieve of their lawyer ban, is the reprieve universal or selective? (Of note, my First Amended Complaint has already asserted that their lawyer ban is currently selectively enforced against political dissidents, particularly those from ethnic minorities). This necessarily impacts the Multidistrict Litigation. Furthermore, it directly impacts *my* well-being since—if my mother is not allowed to retain counsel in her ongoing E.D.N.Y. case-- then I can still be penalized for any penalties she accrues. We are jointly and severally responsible for any campaign finance penalties that *either of us* may incur.

    **d)** Are any and all campaign officers allowed to consult accountants, political consultants, and other educational resources to address potential audit findings, both during the campaign and after the campaign? Since the *statutory* audit is foreseeable, it would make more sense for campaign officers to speak with consultants during the campaign to avoid breaking the law and potentially being sent to prison like Dosamantes.

**Conclusion**

The Defendants' conduct in this case, and in our prior litigation, demonstrates a pattern of misrepresentation, evidence tampering, and procedural abuse that has undermined the integrity of these proceedings and prejudiced me. The Court's intervention is necessary to hold Defendants accountable and to ensure a fair and just resolution of my claims.

I affirm this 27th day of December, 2024, under the penalties of perjury under the laws of New York, which may include a fine of imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Respectfully submitted,


/s/ Devi Nampiaparampil

Devi Nampiaparampil

Pro Se Plaintiff

111 John Street, Suite 2509

New York, NY 10038

Cell: 312-523-5935

Email: devichechi@gmail.com