SUPREME COURT OF THE STTATE OF NEW YORK
COUNTY OF NEW YORK

**INDEX NUMBER**
**101118/2021**

_____X

DEVI NAMPIAPARAMPIL

                           Plaintiff

        ---against---

NEW YORK CITY CAMPAIGN FINANCE BOARD

                       Defendant

**PLAINTIFF'S**
**AFFIDAVIT**
**IN SUPPORT OF**
**MOTION TO**
**VACATE**
**JUDGMENT**

State of New York
County of New York

Devi Nampiaparampil, being duly sworn, deposes and says:

## 1. Caption and Intro

I, Devi Nampiaparampil, am the Plaintiff in the above-captioned matter and submit this

affidavit in support of my motion to vacate the Court's prior judgment under CPLR

5015(a)(1), (a)(3), and (a)(5). I respectfully submit that this Court's finding of mootness

was based on procedural irregularities, ineffective assistance of counsel due to the

Defendant's "Lawyer Ban," my attorney never filed a responsive pleading, the Court's

dismissal rests on incorrect assumptions of mootness, and ongoing constitutional

violations and harm that remain unresolved.

## 2. Preliminary Statement

This case was initially filed on September 29, 2021, along with an Order to Show Cause

(OSC) seeking emergency relief to address viewpoint-based censorship in the 2021 NYC

General Election Voter Guide. The OSC was denied at a hearing on October 22, 2021 and the

case was dismissed on August 8, 2022. I was represented at the time by attorney David M.

Fish.

1

At the October 22, 2021 hearing, <u>Mr. Fish unilaterally converted my case into an Article 78 proceeding, despite my express objection</u> prior to the hearing. I worked on affidavits for a pleading opposing the Defendants' motion to dismiss (MTD). I only discovered and understood on March 22, 2025 that <u>Mr. Fish never filed a formal responsive pleading.</u> I falsely believed that Judge Hagler was reviewing Mr. Fish's filings up through August 31, 2022, when William McKenzie, Judge Hagler's Clerk, told me my case was closed.

### 3. Excusable Neglect Due to Attorney Misconduct

I was unable to challenge Mr. Fish's legal decisions or to seek alternative representation due to a combination of the Campaign Finance Board ("CFB") classification of my communications with attorneys as campaign expenses (whether actual dollar expenses or in-kind contributions) and the restrictions they applied and enforced to spending. My campaign became insolvent as a direct result of the constitutional injury the Defendant-CFB inflicted on my campaign, the subject of the Complaint.

Then after my campaign became insolvent, the Defendant stated that I would be prosecuted if I spent my own money on an attorney to defend myself or my campaign. At numerous times in 2021, I was informed that I could face both civil and criminal penalties for speaking to a lawyer if my campaign did not have the money to support those legal consultations.

<u>Mr. Fish was aware of these restrictions on my ability to communicate with an attorney.</u> I emailed him about these restrictions on multiple occasions (See Motion to Vacate 001 Exhibit A: Emails About "Lawyer Ban"). We also discussed this "Lawyer Ban" on the phone. In reference to my mother, the Treasurer of the campaign, he said something

along the lines of how we wouldn't want my mother to go to Riker's because of my legal fees.

I continue to be subjected to a Lawyer Ban. Its constitutionality is currently being adjudicated in multiple fora. On Thursday March 27, 2025, in Charlotte, North Carolina, the Judicial Panel on Multidistrict Litigation (JPML) will review a Motion for Consolidation and Transfer of numerous First and Fourteenth Amendment claims against the Defendant-CFB. This is a seven-member panel of federal judges from across the country:. The facts in this case are also being reviewed in the SDNY and in the EDNY with three different plaintiffs. There are additional potential tag-along plaintiffs viewing this case.

This ongoing restriction on my ability to consult with counsel has prevented me from retaining another attorney in this matter. I submitted an Order to Show Cause (OSC) to this Court on August 8, 2022 to remove Mr. Fish as my attorney, so I could proceed with my case pro se. At this time, by statute, I already face $910,000 in statutory campaign finance fines solely for speaking to an attorney about my civil rights.

In this case before the Hagler Court, Mr. Fish submitted affidavits on my behalf but failed to file a formal response to the MTD. He never moved to withdraw from the case, nor did he notify the Court of the Lawyer Ban that I was being subjected to. He continued to bill me for case strategy and "debate" issues, depleting me of the $6000 maximum individual donor contribution that I could make to the campaign, while preventing me from asserting core First Amendment claims regarding my exclusion from public fora and voter guide censorship. (See Motion to Vacate 001 Exhibit B: David M. Fish Invoice).

## 4. Mootness Does Not Apply

The Court's conclusion that the case was moot is incorrect as a matter of law. The issues raised—particularly censorship in a publicly funded voter guide and the Lawyer Ban's interference with access to counsel and the courts—are "capable of repetition, yet evading review." See *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). **Cases involving election cycles and political speech are uniquely vulnerable to repetition, yet evading review.** See *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007). I would run for office again but not for these unconstitutional restrictions. If I were to run for office again, I am likely to face similar retaliation again. My speech has been chilled. These claims are not hypothetical, and the Defendants' conduct—then and now—demonstrates a likelihood of repetition. Because the CFB's unconstitutional policies are still in effect, because they continue to harm me, and because they are designed to suppress future political participation from both me and from other like-minded individuals, this case is not moot and should be reopened for adjudication on the merits.

In its original Memorandum of Law (October 20, 2021), Defendant relied on *Hearst Corp. v. Clyne*, 50 N.Y.2d 707, 714 (1980), to argue that this case should be dismissed as moot. But under the very standard they cite, the exception to mootness is satisfied. The issues raised—voter guide censorship and political retaliation by a government entity—are not only likely to recur but have already recurred. The nature of New York City's election cycles and rapid enforcement deadlines make these harms difficult, if not impossible, to fully litigate before they are repeated or escalated. And no New York court has meaningfully reviewed the suppression of political speech via the voter guide process. These are novel and substantial legal questions that strike at the core of First Amendment protections in the

context of municipal elections. The Court's dismissal on mootness grounds should therefore be vacated.

## 5. Continued Harm and Collateral Consequences

The Defendants' retaliatory enforcement of the Lawyer Ban and selective application of their campaign finance policies have imposed severe financial and reputational damage. My campaign was rendered insolvent, I was denied representation, and I continue to face procedural denials in other fora. As the U.S. Supreme Court made clear in *Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998), and as reiterated in *Carafas v. LaVallee*, 391 U.S. 234 (1968), a case is not moot when the challenged action continues to produce legal or reputational harm, even after the core event has passed. Here, **the City and CFB continue to use this Court's original judgment as the basis for asserting res judicata and collateral estoppel in other proceedings even though the decision was issued without a full hearing on the merits, and without access to new and material facts now on the record**. The fact that this judgment is being actively used to bar litigation in other forums demonstrates that its legal impact has not ended. It continues to injure my ability to seek redress elsewhere.

In January 2023, the Defendants held a Rules Review & Update Meeting, during which I testified that the Voter Guide Rules were unconstitutional. This public testimony was supposed to be relayed to legislators and the Mayor before any changes were adopted into law. Instead, then-CFB General Counsel Bethany Perskie and the CFB responded by issuing what amounted to a prior restraint: they deleted the meeting video from the CFB's website and erased all references to it from social media and other public platforms, as though the meeting never occurred.

In my First Amended Complaint in SDNY (1:23-cv-6391), I identified this deletion as a content-based restriction on speech and a violation of my right to petition the government. In response, in official court records, the Defendants denied that the meeting ever took place, an intentional misrepresentation. I produced time-stamped screenshots and requested permission to submit the full video. The Court never ruled, but the Defendants ultimately conceded the meeting occurred.

At a separate public meeting in December 2021, I again warned the CFB that their actions were unconstitutional. The Defendants selectively deleted that testimony as well—further evidence of suppression and viewpoint discrimination.

On February 27, 2025, I served a Safe Harbor Notice requesting that the Defendants correct their misrepresentations and address evidence destruction. They acknowledged receipt but refused to respond, citing a Stay pending JPML review. On March 21, 2025, I filed a Notice preserving my right to seek sanctions for perjury and obstruction.

At present, this case is being re-examined in multiple venues:

- A <u>Motion for Vacatur in New York County Supreme Court</u> in *Devi Nampiaparampil and Metropolis Pain Medicine PLLC v. CFB*, 159019/2022 (Ramseur, J.), with related First Amendment and due process claims.

- A <u>pending federal action in the Southern District of New York</u> in Devi *Nampiaparampil v. CFB et al.*, 1:23-cv-6391 (SDNY), which remains stayed but includes a supplemental complaint covering the same constitutional violations.

- A <u>pending case in the Eastern District of New York</u> brought by Plaintiff's family member, and Campaign Treasurer, raising overlapping claims and First Amendment Retaliation in the form of over $100,000 in potential fines (1:24-cv-05605 (EDNY))

- A <u>pending case in the Southern District of New York</u> brought by another one of Plaintiff's family members, and campaign supporters, raising overlapping claims and First Amendment Retaliation in the form of over $20,000 in potential fines (1:25-cv-01346 (SDNY))

- A <u>pending case before the Judicial Panel on Multidistrict Litigation</u>, where these matters may be consolidated for pretrial proceedings in a venue outside of New York (See MDL #3146, which is scheduled for oral argument in Charlotte, North Carolina on March 27, 2025).

- 

## FACTS IN GREATER DETAIL

## <u>Content-Based Censorship (in Violation of the First Amendment)</u>

On September 29, 2021, I filed this pro se action, Case 101118/ 2021, in the New York County Supreme Court, alleging violations of my First and Fourteenth Amendment rights. I alleged that I was denied "fair and equal access" to the voters, that I was censored and excluded from the NYC Voter Guide-- a government-funded publication distributed to voters in advance of public elections with information on candidates for office-- and that I was treated differently than similarly situated candidates. Note pro se Complaint p3/23: "WHEREFORE, plaintiff demands the print + online voter guide NOT be distributed until Dr.

Nampiaparampil is granted **fair and equal access** to publish her information in it similar to the other candidates."

In their emails, responsive pleadings, in the hearing that ensued before this Court on October 22, 2021, and in a hearing that ensued before the SDNY on October 18, 2023, the CFB stated that my submission was censored because of its content. However, the case was presented as though I had failed to meet a deadline. This **content-based viewpoint-based discrimination of the core political speech of a candidate for office**, is impermissible on multiple levels. Here are the facts as presented by the *Defendants:*

*Email*

In the September 28, 2021 email, attached to the pro se <u>September 29, 2021 Complaint</u> as Exhibit C, CFB employee, Hannah Egerton, writing on behalf of CFB Executive Director, Amy Loprest, writes, "On August 4, 2021, we informed your campaign that you needed to resubmit your Voter Guide profile and Video Voter Guide script because the original violated Board rules mentioning opposing candidates by name... Because we did not receive an updated Voter Guide submission, we were unable to publish any other information in the print Voter Guide. Your online Voter Guide profile will contain [only] your name..."

<u>*Defendant's Responsive Pleading Before the Hagler Court:*</u>

On October 21, 2021, CFB General Counsel submitted "Affirmation of Bethany Perskie in Opposition to the OSC and In Support of the Cross-MTD," which explained in Point 7, "[C]andidates must submit a statement, which is reviewed and approved by CFB staff... [I]n their statements, candidates may not refer to other candidates by name... *See* 52 R.C.N.Y.

16-02(b)(i)(D). Candidate statements that fail to comply with applicable requirements, as determined by the CFB in its sole discretion, are not included in the voter guide. *See* 52 R.C.N.Y. 16-02(b)(i)(E)," Point 17, quoting from the Defendant's candidate submission instructions, which I included as an exhibit with the original Complaint.

The Defendants wrote, ""NOTE: Discuss only your own qualifications; do not [mention/ criticize] other candidates" See Exhibit A attached to the pro se Complaint at 4,5," Point 20, "Plaintiff successfully submitted a voter guide profile," Point 21, "[T]he CFB informed Plaintiff by email that her PVG [print voter guide] statement and  VVG [video voter guide] were not in compliance with Board Rules 16-02(b)(i)(D)(1) and 16-02(b)(ii)(A)(1), prohibiting candidates from naming opposing candidates," and Point 23, "On September 28, CFB sent Plaintiff an email informing her that due to her failure to correct her voter guide statement, no profile would appear in the PVG [print voter guide]." Defendant submitted various exhibits supporting the affirmation.

In their Memorandum of Law, Perskie adds on p2 (a.k.a. p29/46), "The statement was rejected for legal noncompliance." Perskie, a self-proclaimed civil rights attorney who has made over 100 political contributions to one political party, then moved to have my First Amendment case converted to an Article 78 proceeding, writing on p3 (a.k.a. p30/46), "[E]ven assuming all of the factual allegations in Plaintiff's affidavit are true, they do not fit any cognizable legal theory" and then on p8 (a.k.a. p35/46), "Plaintiff's affidavit and complaint are unclear... [D]ue to the logistical impracticability of accepting a submission at this late date, Plaintiff's complaint should be dismissed as moot."

In reference to this content-based censorship of my *negative* critique of the government's actions, Defendant adds on p11 (a.k.a. p38/46), "[C]andidate voter guide submissions are subject to certain content restrictions [to] encourage positive, substantive discussion," continuing on the next page, "The Board Rules clearly state that profiles for the PVG [print voter guide] must be submitted for approval."

In summary, the voter guide is intended to educate voters on candidates' political platforms. **I criticized the government as part of my political platform.** I was censored from the publication because of my core political speech, which lies at the heart of the First Amendment. This was content-based censorship of a political candidate for a major citywide office: the NYC Public Advocate, which stands second in-line to the Mayor.

*The October 21, 2021 Hearing Before the Hagler Court:*

I filed a pro se Complaint-- constitutional claims-- alleging First and Fourteenth Amendment violations. On October 6, 2021, David M. Fish, filed a Notice of Appearance. He represented me at the October 22, 2021 hearing (See Motion to Vacate 001 Exhibit C: October 22, 2021 Hearing Transcript). Counsel opened, "[P]laintiff is the first woman of South Asian descent running for a citywide office, public advocate. So I think there's public importance," creating the **false impression that my case was symbolic rather than substantive**. Mr. Fish then agreed to the Defendant's demand to convert the case to an Article 78 administrative proceeding, which I had expressly told him not to do, when we had spoken earlier. In speaking about the constitutional claim, Mr. Fish stated to the Court, "[T]o put a procedural issue aside, I accept the defendant's position that this is likely something that should have been looked at as an Article 78 proceeding; I think that's fair.

You know, this was filed pro se, and those procedures and nuances are not always typically known by a nonlawyer, even sometimes by lawyers."

The Court also noted its Conflict of Interest in the matter, as an election law Judge for the opposing political party, although Plaintiff had no opportunity to ask questions or to be heard as she was kept on forced-Mute during the proceeding. The Court stated on p15/24, "I'm sitting as a judge for early voting as well, I think on the 27th. So I'm one of the judges that will be at the Board of Elections Downtown in Manhattan... So do you really want to adjourn this so we can have an argument on this past the election date?" I had no opportunity to respond.

Throughout the proceeding, CFB General Counsel Bethany Perskie, switched between **acting as an attorney and as a witness**, presenting so-called facts that are not contained anywhere else in the record. I could not question her on these purported facts and Mr. Fish chose not to object to any of these transformations or any of these statements. For example, on p21/34, Perskie noted, "[W]hen the substituted statement was submitted by e-mail, it was the staff's impression that that was the entirety of the submission." There was no mention of who these anonymous "staff" might be that determined I did not want to be included in the Voter Guide that is distributed to millions of registered voters.

On p25/34 of the hearing transcript, the Court, the CFB, and my attorney decide to convert the case from a pro se constitutional claim to an Article 78 administrative proceeding—in spite of my specific instructions to my attorney to deny the CFB's request.

The Court then reprimanded me directly, while **I remained on Mute and could not be heard** or to respond as to why I believed I had a constitutional claim. Starting on

p26/34, the Court stated, "You're asking for special treatment. It's the opposite. You're asking for better treatment than anyone else received," continuing through to p28/34, "I have many issues with the manner and the request that was put in by the plaintiff…. I know that was not done by you, Mr. Fish, but let me just read it. "The CFB," which is the defendant, "has deleted all of the work I have done in my career… and given me a blank voter profile instead… It casts me in a negative light compared to the other candidates and causes me irreparable harm. It would cause voters irreparable harm. The purpose of the CFB and the voter guide is to provide impartial information on candidates… I am being treated differently than other candidates have been during this election cycle itself." Mr. Fish, I'm not sure what your client wants me to do… the other relief is basically arguments for why the defendant allegedly treated the plaintiff differently, and she is complaining… [T]he compelling evidence is that the plaintiff failed to comply with the clear instructions of the defendant and failed, even to this day… [W]e know that voting is occurring starting tomorrow. It just would not work. It would be a futile effort and would cause unnecessary expense and effort due to the failure of the plaintiff to comply with clear instructions."

Of note, the Court also reprimanded my attorney for not updating my pro se filing, stating on p30/34, "[Y]ou have to put in papers. You knew about this. You had in your possession the order to show cause. You knew the relief that was requested." Separating the OSC from the Complaint, the Court added, "[T]his Court will not address the cross-motion because there's not been opposition to the cross-motion. So I will allow Mr. Fish to put in opposition or properly move again for any relief that the plaintiff, or now the petitioner, sees fit… If you're going to do something, obviously you must act in a diligent manner…. And I would need papers in a very expedited manner… I will try to expedite it, but you have to

work with the Court and with counsel so that the paperwork, the proper paperwork, can be put in,.. I heard a lot about what you wanted to put in... I was quite shocked and surprised at what you stated, as there's nothing in the record to support the arguments... I'm sure that eventually, I hope it's by Monday, you can put that in to the Court; therefore, this Court be able to properly address the cross-motion and obviously the petition that is before the Court." I spoke to Mr. Fish immediately after the hearing and told him we must submit the Opposition papers and I was under the impression they had been filed.

## The October 18, 2023 Hearing Before the Ramos Court:

In the SDNY October 18, 2023 Hearing Transcript, starting on p4/16, the Defendants acknowledged their Voter Guide Rules shielded incumbent politicians from public criticism and that these Rules had never been challenged before. Defendant's Counsel stated, "I'm not aware of any cases directly challenging the various rules... The CFB does have a particular regulation that prohibits candidates in the CFB's voter guide from identifying other candidates by name... the genesis of this rule was partly out of concerns for decorum in documents that were going to be distributed to all residents by the CFB... [T]he voter guide is a place where candidates who have submitted a statement to the Campaign Finance Board, that statement is included. It usually hits on key campaign platform issues... [I]n this particular case, the plaintiff's written statement for the voter guide was not included... because she had named the incumbent public advocate by name... [T]he notion was decorum and it was meant for candidates to talk about their own campaign and not the campaign of others."

### Excusable Neglect: Attorney Misconduct and Plaintiff's Inability to Act

At the hearing, the Court granted permission for me to submit a response to Defendant's MTD. I then gathered affidavits for Mr. Fish to respond. I hand-delivered them to him in the midst of Tropical Storm Wanda-- to support an Opposition to the MTD and offered to hand-deliver the filing to the Court the same day. Mr. Fish declined. He subsequently billed me for numerous strategy meetings, for preparing the opposition, and for "postage" even though he told me he would hand-deliver the papers to the Judge's Chambers himself to meet the Court's deadline. I paid his full bill within days. **Unbeknownst to me, Mr. Fish did not file any responsive pleadings, only perhaps the affidavits I had gathered. I am not even sure of that.**

Mr. Fish filed a Notice of Attorney Representation on October 6, 2021, and again on October 27, 2021. He represented to the Court, on October 27, 2021, that he submitted affidavits from me and from others—but failed to file any formal responsive pleading (Motion to Vacate 001 Exhibit D: Notice of Representation and Affidavits for Response to MTD). Despite engaging in strategy meetings with me (as detailed in his invoice) and billing for extensive preparation of filings, no Verified Answer, opposition to the MTD, or cross-motion was filed. The case was ultimately dismissed on grounds that were not fully briefed or opposed.

**Because Mr. Fish had entered a Notice of Appearance, the Clerk's Office and the Court would not permit me to file additional materials pro se**—even when I attempted to do so several months later. As the Court will recall, on August 8, 2022, I filed an ex parte OSC to have Mr. Fish removed from the case, and to allow me to proceed.

**I was not only procedurally blocked from continuing my own case, I was also structurally prevented from seeking alternate counsel due to the "Lawyer Ban" imposed and enforced by the CFB**. I reasonably believed that Mr. Fish had filed all necessary materials to keep the case procedurally viable. Therefore, any procedural default should be excused under CPLR § 5015(a)(1), as it was not due to my negligence or disinterest, but rather the extraordinary combination of attorney misconduct and a state-imposed restriction on my right to consult legal counsel. These are exceptional circumstances warranting relief.

Of note, I remain constrained by the Defendant CFB's Lawyer Ban. This is the primary subject of the proceeding before the JPML, a panel of seven federal judges who review matters of national significance, and consider consolidation and transfer of claims to a new venue.

### Defendants' Misconduct in the Form of an Unconstitutional Lawyer Ban

For the past four years, I have been limited by my campaign's ability to spend money. Most attorneys had a threshold retainer amount or a minimum amount for a "Memorandum," neither of which the campaign could afford. **I had a statutory personal contribution cap of $6000.** This was a cap applied to me as an individual donor. Therefore, the legal fees had to be paid by the campaign.

The Defendant's intentional omission of my platform from the Voter Guide publication, and the associated false statement about me in the Voter Guide, caused a 98% drop in campaign fundraising. Moreover, multiple donors called the campaign for refunds of their contributions, rapidly draining the campaign coffers. With one fatal economic injury,

the Defendant incapacitated the campaign and simultaneously rendered it illegal for me to try to save the campaign by retaining a lawyer. The amount of legal advice the campaign could afford was rapidly deteriorating.

As CFB General Counsel explained in his January 16, 2025 Declaration (SDNY 1:23-cv-6391 Docket #97), "I have prosecutorial discretion to determine what violations will be alleged in an Enforcement Notice. Plaintiff contends that she will be penalized during the post-election enforcement process for hiring an attorney to represent her in this federal court proceeding. But this federal court proceeding is not a campaign activity under the Act. It is not in furtherance of plaintiff's 2021 campaign for Public Advocate."

While CFB General Counsel may have intended to deny the existence of a Lawyer Ban in the federal court proceedings, his words substantiate the existence of a Lawyer Ban in the state court proceeding before the Hagler Court, as this case before the Hagler Court did take place before the election. I was running for office and trying to further the campaign.

As CFB General Counsel explained to the SDNY Court (a different forum) at a July 25, 2024 hearing (1:23-cv-6391 Docket #55 on page 13), "If you want to spend on a lawyer and your campaign doesn't have the finances to spend on that lawyer, you can't pay for it out-of-pocket unless you stay with the contradiction [sic] limit. So, in this matter, it would have been $6000." During the same hearing, I informed the Court that I had already spent $6000 in 2021. This created the circumstances necessary for the formation of a Lawyer Ban.

**The Defendants doubled down on their Lawyer Ban** at various points in the SDNY court record, including their Memorandum of Law on the MTD the FAC writing (p15

(aka p20/22) 1:23-cv-6391 Docket #62) and again in their Reply Memorandum on the MTD the FAC, this time with emphasis added, (p8 (aka p12/14) 1:23-cv-6391 Docket #84), "If a *candidate* wants to cover the costs of their campaign's legal fees, however, then the candidate is subject to the candidate's contribution limit, here, for Plaintiff, of $6000.00 N.Y.C. Admin Code $$ 3-703 (l)(f)(h)."

Any insolvent campaign, or any candidate who has reached the personal political contribution limit, who retains counsel to discuss their civil rights or any tort claims can – by statute—be penalized with triple the attorneys' fees, an action that can incapacitate the campaign's officers, that automatically retaliates against the campaign's officers, and that deters the campaign's officers and others from ever running for office.

Even in the same Reply papers to their MTD the FAC in the SDNY (p9 (aka p13/14) 1:23-cv-6391 Docket #84), the Defendants acknowledged their statutory policy of economic retaliation, making an unconvincing and circular argument. "[A]lthough in theory a candidate's financing of their campaign's post-election legal fees could be permissibly the subject of the Board's audit, such a scenario is extremely unlikely because an audit must necessarily have a point certain from which it looks back, otherwise it would never end." I also demonstrated in numerous pleadings in the SDNY case, including for example, my Proposed Motion to Amend/ Correct Facts Presented at the Hearing (1:23-cv-6391 Docket #57) that the CFB enforces its Lawyer Ban.

The Defendant-CFB acknowledged (on p15 (aka p20/22) under Point VII), "[O]nce the Board issues its Draft Audit report, a necessarily retrospective document, a candidate's financing of their campaign's post-election legal fees going forward is rarely, if ever, the

subject of the Board's retrospective audit." The Defendant did not offer any explanation of when, how or why these "rare" prosecutions occur. My FAC describes how the CFB's enforcement is based on political stance, and then further subdivided by race (1:23-cv-6391 Docket #46).

In the various federal court pleadings, the Defendants have used the Hagler Court decision. The Defendants cite preclusion as a procedural defense for their Lawyer Ban. They imply that, since I was restricted to $6000 in spending on my own campaign—inclusive of legal fees-- and since Mr. Fish did not raise this as a claim before this Court-- that I have waived this First and Fourteenth Amendment claim. Moreover, the Defendants have postured to the JPML in their Opposition to the Motion for Consolidation and Transfer (MDL #3146) that all potential Plaintiffs-- who never had the opportunity to litigate their claims against the CFB—should also be subject to res judicata. **The Defendant has submitted as its sole exhibit, the Hagler Court's dismissal, as evidence for barring constitutional claims from other NYC political challengers.**

In their Reply papers for their MTD the FAC in the SDNY (p3 aka (p7/14)), they write, "[Regarding] her disagreements with the rules for candidates participating in the public funding campaign finance program and their application to her, the Court should... dismiss her claims." At the time this case was litigated before the Hagler Court, I remained unaware that these Lawyer Ban restrictions were constitutional violations, as Defendants obfuscated their full existence and full scope, and restricted me from consulting with counsel.

## Defendants' Misleading Conduct

Perhaps realizing it could argue preclusion, in a hearing before Judge Ramos in the SDNY Court on October 18, 2023 (1:23-cv-6391 Docket #22), the CFB acknowledged it received my 2021 Candidate submission in a timely manner. It stated to the Court it issued **a prior restraint on my Candidate profile and platform because my statements—critical of the administration-- violated "decorum."** This is content-based restriction and viewpoint-based discrimination.

Two years earlier, on October 22, 2021, in the hearing before this Court, however, the Defendant had a different story, which included contradictory statements. Then-CFB General Counsel Defendant Perskie misleadingly told the Court (Exhibit 127 p20/24 of the Hearing Transcript), "We never received any statement for the print or online guide. I can't speak to whether that was attempted to upload to the portal... There was no reference of any attempt to submit a print statement by e-mail or by the portal or otherwise; and so from the perspective of the CFB staff, plaintiff had submitted a statement—excuse me—a script for the video Voter Guide, and had not submitted and we did not receive any statement for the print Voter Guide. The deadline elapsed; we did not receive a submission pursuant to the rules. And how every other candidate in the general election was treated and how these rules were applied to candidates in the general election, that meant that the Voter Guide was distributed without her statement being included." The Defendants completely reversed course between the Hagler State Court and the Ramos Federal Court proceedings believing res judicata was in effect.

**This Court converted my "First Amendment" claim (as characterized by the Defendant's SDNY Counsel David Thayer) to an Article 78 proceeding** and said to me

19

(Exhibit 127 on p26/34), "[A]t no time have you presented any documentary evidence, nor an affidavit saying you provided [the candidate profile] pursuant to the instructions by the defendant, as all other candidates have complied with." I attempted to explain the censorship issue, but was on forced-Mute during the virtual hearing. I wrote my objection on my palm which I held in front of my webcam, so the Court could read it. Judge Hagler responded, "I know that your client wants to show me something, but at the end of the day, I don't have it in front of me, and you know that the Supreme Court is a paper record. We need to have a record of what you're saying."

At the conclusion of the hearing before the Hagler Court, Judge Hagler stated (Exhibit 127: p31-32/ 34), "The Voter Guide has been distributed and mailed citywide to millions of people. To take that back is a virtual impossibility... I will allow [Plaintiff's attorney] to put in opposition or properly move again for any relief that the plaintiff, or now the petitioner, sees fit." Although I believed that Mr. Fish had filed Opposition Papers to the MTD, in the summer of 2022, I became suspicious.

In July 2022. The County Clerk informed me that, because I was listed as "Represented," the Court's procedures would not allow me to file pleadings on my own. The Bursar would not accept payment from me for the Complaint. The Help Desk would not advise me because I was not "Pro Se." I explained that **it was illegal for me to speak to my attorney** to ask him to recuse himself. If he charged me for his time, I would be liable for an over-the-limit contribution. If he did not charge me, I would still be liable for the discounted work: the "in-kind contribution." Ultimately, I was referred to the Ex Parte office. At that time, I believed that we were waiting for a decision from the Court, but that I would not be

able to receive updates, add claims, or take any action because I had reached the statutory spending limit. I wanted to address the Defendants' conduct and pursue my case.

On August 8, 2022, I was able to file an OSC with the Ex Parte office, asking Judge Hagler to remove my attorney because of the spending limit. I enclosed a copy of my updated Complaint with the OSC, and explained I wanted to pursue my case. Although Judge Hagler declined to sign my OSC, I believe the Court understood I was trying to pursue my case. The NYS/ New York County Supreme Court Docket was updated on August 28, 2022 to reflect that. A new case "Nampiaparampil vs. NYC Campaign Finance Board" appeared on the case docket. On August 31, 2022, Justice Hagler's Clerk, William McKenzie, also emailed me  "[Y]our research may discover various ways an attorney may be substituted out of a case without running up expense." With the Lawyer Ban in effect, I could not figure out what Mr. McKenzie meant. He also stated, "It appears there is a disconnect (between what you were attempting to do and the manner in which your application was presented)." The Defendants' Lawyer Ban effectively prevented me from accessing the courts (Motion to Vacate 001 Exhibit E: Decisions from OSC and From Case)

## Misconduct: Witness Intimidation & Spoliation of Evidence:

Theo Bruce Chino Tavarez's affidavit, submitted during the prior proceedings demonstrates that Defendants selectively provided him with extensive assistance, including the opportunity to revise and resubmit his Voter Guide profile (Motion to Vacate Exhibit C; also labeled as Exhibit A attached to Plaintiff's Prior Affidavit). Tavarez, a lifetime member of the Democratic Socialists of America, served as another 2021 NYC Public Advocate candidate. In stark contrast, I was excluded from the Voter Guide without meaningful recourse,

evidencing unequal treatment and discrimination. Ironically, "Theo Chino" was also subject to First Amendment retaliation by CFB investigation and audit shortly after he offered his affidavit supporting me.

Additional evidence, including FOIL records concerning another 2021 candidate, Paperboy Love Prince, demonstrates that the Defendant similarly censored—not only their Voter Guide profile—but their campaign and non-profit websites. Paperboy Love Prince's campaign was subjected to retaliatory audit practices shortly after they contacted me to support my case of content-based discrimination.

Additionally, the 2022 General Election Voter Guide, parts of which have been entered into the SDNY case is emblematic of **Defendants' pattern and practice of viewpoint-based and racially discriminatory censorship.** The Defendants destroyed this electronically stored information (ESI) shortly after I described all these instances of content-based censorship of political challengers. The CFB acknowledged the destruction of this ESI, although it preferred to use the term "altered." This pattern of behavior reflects a systematic effort to suppress dissenting viewpoints and rewrite candidate statements, undermining the electoral process.

**The Defendant also denied the existence of a January 17, 2023 public hearing where I testified as to the unconstitutional nature of their Rules.** This hearing was slated for review by the City Council and the Mayor's Office, an alternative means of redressing my grievances. Defendant issued a prior restraint on the hearing, censoring it from the view of elected officials, the press and the public. Furthermore, the Defendant erased all social media posts regarding this hearing, effectively removing any trace of it on

its public-facing government websites—including its website, YouTube page, Facebook page, Twitter account, and Instagram account. It was only after **I rebutted the Defendant's false statements by presenting time-stamped screenshots of our joint participation in the hearing** did the Defendant introduce new, contradictory justifications for their prior restraint on speech and their destruction of protected ESI, writing in the SDNY Court (Dkt #84 p4 aka p8/14), "Plaintiff has not pointed to a case in which a court has concluded the at the government must perpetuate her or another candidate's speech indefinitely- on its website or elsewhere."

The Defendant also added, (on p6 (aka p10/14)), "Plaintiff's arguments about the deletion of information about her and of her testimony—websites change, and there is no First Amendment requirement that the Board maintain video testimony inviolate..."

6. **Relief Requested**

For the foregoing reasons, I respectfully request that the Court vacate its prior judgment, restore this action to the active calendar, and grant such other and further relief as the Court deems just and proper.

I attest under the penalties of perjury, under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Respectfully submitted,

Devi Nampiaparampil
Pro Se Plaintiff
111 John Street Suite 2509
New York, NY 10038
Cell: 312-523-5935
Email: devichechi@gmail.com

State of New York, County of New York
Sworn and Subscribed to
Before Me This

MAR 2 4 2025

Clemy Bowen
Commissioner of Deeds, City of New York
No. 2-14535
Cert. Filed in New York County
Commission Expires Nov 1, 2025
The UPS Store 82 Nassau St NY, NY 10038
212.406.9010

23

SUPREME COURT OF THE STTATE OF NEW YORK
COUNTY OF NEW YORK

                                      X

DEVI NAMPIAPARAMPIL

                          Plaintiff

          ---against---

NEW YORK CITY CAMPAIGN FINANCE BOARD

                         Defendant

State of New York
County of New York

**INDEX NUMBER**
**101118/2021**

**PLAINTIFF'S**
**MEMORANDUM**
**OF LAW**
**IN SUPPORT OF**
**MOTION TO**
**VACATE**
**JUDGMENT**

**PRELIMINARY STATEMENT**

This motion seeks to vacate the dismissal of Plaintiff's case under CPLR 5015(a)(1), (a)(3), and (a)(5), based on excusable neglect, attorney misconduct, misrepresentation by the opposing party, and newly discovered evidence of ongoing constitutional violations. The original dismissal was neither based on the merits nor supported by a full factual record. It occurred under circumstances that deprived the Plaintiff of her right to be heard and her right to meaningful legal representation.

This Court's prior determination of "mootness" is no longer tenable. The challenged government actions—particularly content-based voter guide censorship and enforcement of an unconstitutional "Lawyer Ban"—continue to impact the Plaintiff and are now under review in multiple courts, including the New York County Supreme Court (under Justice Dakota Ramseur), the Eastern District of New York, the Southern District of New York, and the Judicial Panel on Multidistrict Litigation (JPML).

1

## ARGUMENT

## I. VACATUR IS WARRANTED UNDER CPLR § 5015(a)(1): EXCUSABLE NEGLECT

Relief is appropriate where a default or failure was caused by mistake, inadvertence, surprise, or excusable neglect. Here, Plaintiff was represented by counsel (David M. Fish) who failed to file a responsive pleading to the Defendant's Motion to Dismiss. Plaintiff reasonably believed her case remained under review.

Mr. Fish submitted affidavits but never filed a formal answer or cross-motion. Because he had entered a Notice of Appearance, Plaintiff was barred from filing pro se—even when she attempted to resume the case. Her effort to substitute counsel through an ex parte Order to Show Cause was unsuccessful due to lack of formal withdrawal.

This was compounded by the Plaintiff's inability to retain new counsel due to a unique and unconstitutional restriction: the "Lawyer Ban." Under this policy, the NYC Campaign Finance Board (CFB) deemed Plaintiff's legal consultations a violation of contribution limits. By statute, she currently faces $910,000 in potential penalties *solely* for consulting with lawyers about her civil rights. This created a chilling effect that effectively blocked her from continuing the case.

Given that the procedural breakdown was caused by attorney abandonment and a structural bar to legal access, vacatur is warranted.

## II. VACATUR IS WARRANTED UNDER CPLR § 5015(a)(3): MISCONDUCT AND MISREPRESENTATION

2

Both opposing counsel and Plaintiff's attorney misrepresented facts material to the adjudication of this case. The CFB repeatedly and misleadingly told the Court that Plaintiff failed to submit a Voter Guide statement—yet later admitted in federal court that the statement was received and rejected for content-based reasons, namely its criticism of government actors.

This is a textbook example of viewpoint discrimination, and the government's misleading concealment of these facts constitutes misrepresentation under CPLR § 5015(a)(3). Moreover, suppression of public meeting records, selective deletion of testimony, and intentional omission of evidence—including a January 2023 public hearing on Voter Guide Rules—further demonstrate misconduct and spoliation.

In addition, attorney David M. Fish misrepresented the posture of the case and continued to bill Plaintiff while failing to file responsive pleadings. Additionally, he unilaterally converted the constitutional claim into an Article 78 proceeding against Plaintiff's explicit instruction and he failed to withdraw, depriving her of the ability to litigate the case herself.

## III. VACATUR IS WARRANTED UNDER CPLR § 5015(a)(5): DEPRIVATION OF RIGHTS

A judgment may be vacated if it was affected by a substantial violation of a party's rights. In this case, the Plaintiff was denied the opportunity to fully litigate her First and Fourteenth Amendment claims due to the combined effect of attorney abandonment, court access restrictions, and misrepresentation.

At the hearing before Judge Hagler, Plaintiff was placed on mute, denied the opportunity to speak, and reprimanded despite her inability to respond. The Court offered Plaintiff the

3

opportunity to return with a different remedy, but she was unable to do so due to the economic and legal stranglehold imposed by the Lawyer Ban.

## IV. THE ISSUES RAISED ARE NOT MOOT—THEY ARE "CAPABLE OF REPETITION, YET EVADING REVIEW"

A claim is not moot when: (1) the issue is likely to recur; (2) it typically evades review; or (3) it raises substantial and novel issues. See *Hearst Corp. v. Clyne*, 50 N.Y.2d 707, 714 (1980). Federal case law further supports this: in *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911), and *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007), the U.S. Supreme Court held that election-related claims are rarely moot because of their recurring and fleeting nature.

The censorship of Plaintiff's candidate profile and imposition of a Lawyer Ban are ongoing and have already recurred in other forums. The constitutional issues raised are still live and are now under active consideration by the JPML and multiple federal courts. These harms are not hypothetical—they are part of a sustained government campaign to suppress political dissent.

## V. THE COURT'S PRIOR JUDGMENT IS BEING USED TO PRECLUDE REVIEW IN OTHER FORUMS

Defendants are using the Hagler Court's dismissal to invoke res judicata in federal court and in the JPML. Yet the judgment they rely on was procedurally defective and issued without full briefing, discovery, or adjudication. The Court has both the authority and the responsibility to vacate such a judgment, especially when it is being weaponized to deny access to justice in other venues to multiple plaintiffs, and potential tag-along plaintiffs.

4

**CONCLUSION**

For the reasons stated above, this Court should vacate the prior judgment under CPLR §

5015(a)(1), (a)(3), and (a)(5), and restore this case for adjudication on the merits. Doing so

is essential not only to protect Plaintiff's rights, but to ensure judicial integrity and prevent

continued harm.


Dated: March 24, 2025

New York, New York



Respectfully submitted,

Devi Nampiaparampil
Pro Se Plaintiff
111 John Street Suite 2509
New York, NY 10038
Cell: 312-523-5935
Email: devichechi@gmail.com