# MOTION TO VACATE 001:

# EXHIBIT A: EMAILS ABOUT "LAWYER BAN"

 Gmail

**Devi Nampiaparampil <devichechi@gmail.com>**

---

## Follow-up about name in the Voter Guide

---

**Devi Nampiaparampil** <devichechi@gmail.com>
To: "fish@davidmfish.com" <fish@davidmfish.com>

Tue, Sep 21, 2021 at 2:47 AM

Hi Dave,

I'm sorry I've been MIA. Things were so chaotic today. Thank you SO much for the reduced rate offer :) That's so kind of you!!

Do you mind if we remove the language about the reduced rate? If that would pose a problem for other clients, then we can do the regular rate? It's ok.

Since I've been dealing with these people for 7 months, I can sort of anticipate how things will go down. As soon as you've spent a little over 6 hours on the case ($2000/ $325 (the difference in rates))-- they may say that you went over the max $2000 individual contribution to the campaign. That the reduced rate was an in-kind contribution. And therefore, you cannot contribute anymore. So they may try to remove you from the case and fine us both. That's my experience of how they operate. They look for something benign that doesn't fit with some archaic law.

Similarly, I think we have to change the name to the campaign name, which is Dr. Devi For NYC. It's all me, but I think if I pay for it as an individual, they will say I went over my individual contribution limit to the campaign, and I'll get fined-- and possibly jail time because I'm the candidate and I'm supposed to know better.

All of this stuff is bureaucracy intended to stop people from ever running.

Tomorrow, I'm free between 11am and 2pm if you have any time then. If not, I can just forward you the emails.

Thanks, Dave!!
Devi

Devi E. Nampiaparampil, MD, MS
Candidate for NYC Public Advocate
Director, Metropolis Pain Medicine
Clinical Associate Professor, NYU School of Medicine
Office: 347-424-4996
www.DrDeviForNYC.com

[Quoted text hidden]

 **Gmail**

Devi Nampiaparampil <devichechi@gmail.com>

## New Invoice from David M. Fish PC

**Devi Nampiaparampil** <devichechi@gmail.com>
To: "fish@davidmfish.com" <fish@davidmfish.com>

Mon, Nov 1, 2021 at 10:35 AM

Hey Dave,

Will take care of this Wednesday-- right after the election. I just have to call the state to find out if I should pay from my personal account or my campaign account. I can't ask the City because they would love it if I paid with the campaign account and then ran out of money in that account, I'm sure. (You can only spend what you've fundraised). The state is a little more impartial. If I don't get an answer, I'll pay with my personal account and say I'm suing as a voter.

Thanks for your patience!
Devi


Devi E. Nampiaparampil, MD, MS
Candidate for NYC Public Advocate
Director, Metropolis Pain Medicine
Clinical Associate Professor, NYU School of Medicine
Office: 347-424-4996
www.DrDeviForNYC.com


[Quoted text hidden]

📄 **invoice_00267.pdf**
22K

# MOTION TO VACATE 001:

# EXHIBIT B: DAVID M. FISH INVOICE

**David M. Fish PC**
P.O. Box 982
Harriman, NY 10926
United States
212-869-1040

# David M. Fish PC

**Devi Nampiaparampil**

| | |
|---|---|
| **Balance** | $5,845.38 |
| **Invoice #** | 00267 |
| **Invoice Date** | November 1, 2021 |
| **Payment Terms** | Due on Receipt |
| **Due Date** | |

---

## Nampiaparampil BOE issues

**Securely pay online with your credit card**
https://david-m-fish-pc.mycase.com/xv4xshdy



## Time Entries

| Date | EE | Activity | Description | Rate | Hours | Line Total |
|---|---|---|---|---|---|---|
| 09/28/2021 | DF | Advice | Advice re OSC procedure | $325.00 | 1.0 | $325.00 |
| 10/05/2021 | DF | Review | Review 101118/2021 Nampiaparampil v New York City Campaign Finance Board documents | $325.00 | 0.4 | $130.00 |
| 10/05/2021 | DF | Telephone discussion with client | Telephone discussion with client re litigation strategy | $325.00 | 0.3 | $97.50 |
| 10/06/2021 | DF | Draft | Prepare Notice of Appearance, file Affidavit of Service, contact counsel; discussion with client re debate criteria, filing of documents with county clerk | $325.00 | 1.7 | $552.50 |
| 10/14/2021 | DF | Telephone discussion with client | Telephone discussion re standing issues, debate. | $325.00 | 0.5 | $162.50 |
| 10/20/2021 | DF | Review | Review NYC CFB order to show cause opposition papers | $325.00 | 1.7 | $552.50 |
| 10/21/2021 | DF | Legal research | Research NYC Voter Education and Engagement rules | $325.00 | 1.2 | $390.00 |
| 10/21/2021 | DF | Preparation for conference/hearing | Preparation for OSC hearing | $325.00 | 4.1 | $1,332.50 |
| 10/22/2021 | DF | Court appearance | Preparation for and appearance at OSC | $325.00 | 3.7 | $1,202.50 |
| 10/25/2021 | DF | Preparation of pleadings | Assist in preparation of Affidavit in Opposition to Motion to Dismiss | $325.00 | 3.3 | $1,072.50 |
| | | | | Totals: | 17.9 | $5,817.50 |

## Expenses

| Date | EE | Activity | Description | Cost | Quantity | Line Total |
|---|---|---|---|---|---|---|
| 10/27/2021 | DF | Postage | Service/delivery to judge's chambers | $27.88 | 1.0 | $27.88 |

|  |  |
|---|---|
| Expense Total: | **$27.88** |

| | |
|---|---|
| Time Entry Sub-Total: | $5,817.50 |
| Expense Sub-Total: | $27.88 |
| **Sub-Total:** | $5,845.38 |
| **Total:** | $5,845.38 |
| **Amount Paid:** | $0.00 |
| **Balance Due:** | **$5,845.38** |

# MOTION TO VACATE 001:

# EXHIBIT C:

# OCTOBER 22, 2021 HEARING TRANSCRIPT

1

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK : CIVIL TERM : PART 17
 2   ---------------------------------------X Index No. 101118/2021

 3   DEVI NAMPIAPARAMPIL,

 4                    Plaintiff,

 5             -against-              PROCEEDINGS

 6   NEW YORK CITY CAMPAIGN FINANCE BOARD,

 7                    Defendant.

 8   ---------------------------------------X

 9                        Microsoft Teams Videoconference
                          October 22, 2021
10

11   B E F O R E:
                        HONORABLE SHLOMO S. HAGLER
12                        Supreme Court Justice

13
     A P P E A R A N C E S:
14
         DAVID M. FISH, ESQ.
15         Attorney for Plaintiff
             400 Garden City Plaza - Suite 432
16           Garden City, New York   11530

17

18       NEW YORK CITY CAMPAIGN FINANCE BOARD
           Attorneys for Defendant
19             100 Church Street - 12th Floor
               New York, New York   10007
20       By:  BETHANY PERSKIE, ESQ.
               TIMOTHY JUTTE, ESQ.
21

22       ALSO PRESENT:  Devi Nampiaparampil

23

24
                          MARY BENCI, RPR
25                        Official Court Reporter
```

mb

Proceedings

1          THE CLERK:  Ms. Benci, good morning.  Thank you

2    very much.

3          Counsel, Bill McKenzie, for Justice Hagler.  Thank

4    you very much for your participation.

5          I direct your attention to the court reporter,

6    Ms. Benci, who will take appearances, starting with counsel

7    for the plaintiff.

8          MR. FISH:  Yes.  For the plaintiff, David Fish,

9    400 Garden City Plaza, suite 432, Garden City, New York.

10         Good morning, everybody.

11         MS. PERSKIE:  Good morning.

12         For the defendant, Bethany Perskie, 100 Church

13    Street, 12th floor, New York, New York.

14         MR. JUTTE:  For the defendant, Timothy Jutte,

15    100 Church Street, New York, New York, 12th floor.

16         THE COURT:  Good morning.

17         Today we have an order to show cause that was filed

18    by the plaintiff in a self-represented manner which included

19    a summons and complaint.  On the 20th there was a

20    cross-motion as well as opposition that was filed.  I don't

21    believe there has been any opposition to the cross-motion,

22    presumably due to the late filing of the cross-motion.

23         However, we can proceed, I hope, upon the order to

24    show cause, and there is opposition to the order to show

25    cause.

                                                          mb

3

Proceedings

1      So counsel for the plaintiff, are you here?

2      MR. FISH:  Yes, I am.  Good morning, your Honor.

3      THE COURT:  Good morning.  How are you doing?

4      So do you mind if we deal with the order to show

5  cause and the opposition; and eventually, I assume, you're

6  going to put in opposition to the cross-motion to dismiss

7  the complaint?

8      MR. FISH:  Yes, your Honor.  And those matters may

9  overlap to some degree, and we can discuss them as well.

10     THE COURT:  Okay.  I agree with that assessment.

11     For all intents and purposes the order to show

12 cause really encapsulates the relief that the plaintiff is

13 seeking in the summons and complaint.

14     Okay.  So, Mr. Fish, you may proceed with the order

15 to show cause.

16     MR. FISH:  Okay.  Thank you, your Honor.

17     So certainly I think everybody that brings a case

18 thinks it's important, but I think this case really is

19 important to the City as a whole and not just the plaintiff.

20 You know, during a time when there's a lot of social

21 fracture, you know, plaintiff is the first woman of

22 South Asian descent running for a citywide office during a

23 pandemic.  She's an accomplished physician that's running

24 for a citywide office, public advocate.  So I think there's

25 public importance to this as well, not just the plaintiff.

*mb*

4

Proceedings

1        And to begin with, I guess, to put a procedural

2    issue aside, I accept the defendant's position that this is

3    likely something that should have been looked at as an

4    Article 78 proceeding; I think that's fair.  You know, this

5    was filed pro se, and those procedures and nuances are not

6    always typically known by a nonlawyer, even sometimes by

7    lawyers.

8        So to get to the substance of it, the plaintiff is

9    stating a violation of the rules of the City of New York and

10   specifically 52 Section 16, and I think both plaintiff and

11   defendant are sort of on the same page with that.  And the

12   New York City Charter mandates that this guide, this printed

13   voter guide be produced; and defendant's memorandum of law

14   at page 2 acknowledges that.  And I think what we'll find is

15   that there actually is a lot of agreement on the rules that

16   apply and actually what happened.  The interpretation of how

17   it should be handled I think is where there is a great

18   difference.

19        And Section A of 52 Rule 16 talks about the

20   importance of this voter guide, that it spreads voter

21   awareness and educates the public.  And the charter itself

22   also, and again I refer to paragraph 8 of the defendant's

23   affirmation, says that this printed voter guide its

24   importance is its distribution will fully, fairly and

25   impartially inform the public about the candidates.  So we

mb

Proceedings

1   agree on that too, but we're arguing that the defendant

2   really failed dramatically in this regard.

3          And, you know, defendant's affirmation, I think

4   paragraph 7, also talks about the fact that the defendant

5   has discretion as to how to handle this, how to handle these

6   candidate statements, and I think their handling was

7   arbitrary and capricious, to say the least, and if we look

8   at the facts a little carefully, almost crossing the line of

9   being sort of intentional and malicious.

10          So looking at the facts, and I think in a way most

11   favorable to the defendant, the defendants talk about the

12   fact that on July 20th an e-mail went out talking about how

13   a candidate is to submit their profiles; and on August 2nd,

14   when the deadline for submissions came up, there were some

15   technical difficulties, and we seem to all kind of agree

16   that there were some difficulties.  With that, there was an

17   extension of a day given, and the plaintiff submitted her

18   profile a little before 10 p.m. on the 3rd, which was

19   permitted.

20          The next day the Board said that her statement

21   needed to be revised, and it was a very, very small and

22   specific revision that really anyone could have done, which

23   was that the name of the current public advocate,

24   Jumaane Williams, needed to be removed, and simply she could

25   have stated "public advocate," all right.

mb

6

Proceedings

1          Now, I think anyone could have done that.  The

2     Board itself could have done that, but they asked that

3     plaintiff do that, and she did.  She submitted that

4     correction within 48 hours.

5          The argument from the defendants is that this was

6     submitted by the on-line portal, which was an active portal

7     being used during the campaign by candidates as well as the

8     Campaign Finance Board, and that by virtue of the fact that

9     she submitted it by the portal, rather than e-mail, that it

10    was rejected.  But it's more than it was just rejected.

11    This was August 5th.  She did not learn that this was not

12    included until September --

13          THE COURT:  Mr. Fish, you broke up.  Slow down.  I

14    need everyone just to slow down.  Mr. Fish, I missed a very

15    major part of what you were saying.

16          Ms. Benci, where did you end off at?

17          (Whereupon, the requested portion of the record was

18    read back.)

19          MR. FISH:  The 28th.

20          THE COURT:  Mr. Fish, we're having difficulties

21    with your feed; you're breaking up.  You're like in slow

22    motion when you're talking and speaking.

23          MR. FISH:  Might I try using my phone which might

24    have a better signal; would that be all right?

25          THE COURT:  Or you can call chambers, either way.

mb

Proceedings

1          MR. FISH:  Let me try doing that right now.  It's
2     simply allowing me to call in, which I can do right now.
3     Maybe you can at least hear me.
4          THE COURT:  Here is my number:  646-386-5691.
5     Thank you.
6          MR. FISH:  I'll do that right now.
7          THE COURT:  Hello, Mr. Fish.
8          MR. FISH:  Hello, your Honor.
9          THE COURT:  Yes.  Can you close the -- can you mute
10     your microphone on the conference that we have, so we don't
11     have an echo, because you'll hear yourself twice.
12          MR. FISH:  Yes, I think I did that.
13          THE COURT:  Yes, yes.  One second.  Let me make it
14     a little higher, okay.  Why don't you speak and just state
15     your name and address for the record.
16          MR. FISH:  Absolutely.  Again, this is David Fish
17     for the plaintiff calling in, 400 Garden City Plaza,
18     suite 432, Garden City, New York.
19          I apologize, everybody, for this glitch.
20          THE COURT:  Right.  So I think that's better now,
21     right?  Can everyone hear?  Okay.  Let's continue.
22          So, start again, because the truth is that you
23     broke up and your point was lost, and I want you to start
24     again.  Because what I heard was -- what I heard was a
25     recitation of the facts that on August 3rd, at about

*mb*

8

Proceedings

1    9:53 p.m., you said about 10, your client submitted a

2    profile.

3            On August 4th, a day later, the defendant,

4    New York City Campaign Finance Board, communicated that

5    there was a problem, and you mentioned that it referred to

6    the public advocate's name.  I thought also the wife's name;

7    I think it was both names, but okay.  And then there needed

8    to make a revision by August 5th.

9            And the last thing I heard was your client was

10   notified on September 28th that the profile was not

11   submitted and the -- was not submitted, period.  That's what

12   I heard.

13           MR. FISH:  All right.  I think we're fairly

14   up-to-date then.

15           The glitch happened very later on.  So she did not

16   learn that until September 28th, immediately responding,

17   claiming that the --

18           THE COURT:  One second, one second.  Mr. Fish, can

19   you stop for a second.  Mr. Fish, the reporter is having

20   trouble.  Is it too loud?  Let me make it a little lower.

21   But just slow down, Mr. Fish.  I think if you slow down a

22   little bit, and I'll make it a little lower because it's

23   coming in very loud.  Mr. Fish, let's try one more time.

24           MR. FISH:  Okay, okay.

25           THE COURT:  Slow it down, at least 50 percent

*mb*

Proceedings

1    slower, and then maybe we'll be able to hear it.  I was able

2    to hear it because I almost speak the way you do, so I speak

3    fast as well, so I'm accustomed to it.  But I don't have to

4    take it down in a transcript.  I can listen to it, but it's

5    very hard to -- you're probably talking three, four hundred

6    words a minute.

7              MR. FISH:  Agreed, yes.  It's the New Yorker in me.

8    I'm going to try to slow it down.

9              THE COURT:  Me too.  I talk the same way, but let's

10   try to slow it down because I want to have a good record.

11   And we have some time.  I'm not going to -- it's Friday and

12   I don't have too many motions on, even though I have to get

13   to a couple of appeals.  But let's go back on the record.

14   Mr. Fish, let's try again.

15             MR. FISH:  All right.  So it wasn't until

16   September 28th that the plaintiff learned that her

17   submission was in 24 hours of the request to make the

18   correction; this was not included in the printed voter

19   guide.

20             And I did send to the parties and your Honor three

21   exhibits, very simple exhibits.  Exhibit 1 and 1-A showed

22   the printed voter guide that was actually distributed, and

23   what you'll see is that there are four candidates for the

24   office of public advocate, and it is only plaintiff whose

25   profile is not included.  And, you know, beyond the fact

mb

Proceedings

1    that it's sort of a stark thing to see that there are four

2    candidates, and one profile is not included, the document

3    itself sort of points out with a red dot, you know,

4    "Candidate did not submit a complete profile in time for

5    inclusion in this printed voter guide," which really can

6    have and in fact had a real detrimental impact on her

7    campaign already.

8          Put aside I think the obvious impact it would have

9    on a voter, it's already having a demonstrated impact on her

10   ability to fundraise.  For example, the week before she

11   raised approximately $80,000 in her campaign, and the week

12   after this guide was released she raised approximately

13   $1,000.  So the impact on donors and her volunteers was felt

14   pretty clearly as a result of it.  So I think it is rather

15   clear.

16         The troubling part of this is this was a simple

17   ministerial act that the defendant could have taken

18   responsibility for very, very simply.  Put aside if they say

19   they will dedicate themselves to treating the given name to

20   the name of the office, that could have been done, it was

21   done.  But to then say that you submitted something through

22   the portal, which was an active portal that the Campaign

23   Finance Board is using, instead of e-mail where you

24   submitted something else, then when receiving something else

25   by e-mail not just simply respond and say where is the other

mb

Proceedings

1    item.  I mean, these are very basic simple things.

2          THE COURT:  Mr. Fish, let me stop you.  I'm losing

3    something in translation, maybe because of the glitches that

4    we have with your audio.  I have to understand, because I've

5    read your client's papers and, quite frankly, none of what

6    you're saying is in the papers.  That's one.

7          I've read the opposition.  I need to clarify a

8    point because this is very important.  I have read all the

9    papers.  It took me quite a long time to read it.

10         The affirmation of the general counsel,

11   Bethany Perskie, does not mention that there was a

12   submission after the request on August 5th.  Where is there

13   proof that your client complied with the New York City

14   Campaign Finance Board request that you remove the offending

15   language from the profile?  That's the part where I'm

16   missing.

17         MR. FISH:  I can't testify as a witness.  The

18   plaintiff is present on this call.

19         THE COURT:  No, no, no, I'm not asking you to be a

20   witness.  Obviously, you're prohibited from being a witness

21   in this matter if you're going to represent the plaintiff in

22   this case.  So I'm not asking for that.

23         I'm asking where within the record can you show the

24   Court that there was compliance with the request of the

25   defendant in a timely manner.  That's the part that I don't

mb

Proceedings

1    see within your papers, and it actually is contrary to the

2    general counsel's affirmation.

3            MR. FISH:  So there's an acknowledgement, I

4    believe, by the defendant that the script that accompanied

5    the video was received in a timely manner.  So what I'm

6    stating is there's an acknowledgement that something else

7    that needed to be corrected was received by e-mail.  The

8    other document was submitted to the portal, not by e-mail;

9    we acknowledge that.

10           THE COURT:  Okay.  Let me stop you, Mr. Fish.

11           What was the direction of the Campaign Finance

12   Board in order to correct the profile?  Was it through the

13   portal or was it supposed to be e-mailed to a certain

14   individual at the defendant New York City Campaign Finance

15   Board?

16           MR. FISH:  It was to be e-mailed.

17           THE COURT:  Okay.  And was there a time limit for

18   it to be e-mailed?  I thought it was the next day.

19           MR. FISH:  It was July 5th.

20           THE COURT:  No, August 5th, not July 5th.  August

21   5th.

22           MR. FISH:  Excuse me.  August 5th, correct.

23           THE COURT:  I know this record very well.

24           MR. FISH:  Thank you.

25           THE COURT:  So August 5th.  So I need to show -- I

*mb*

Proceedings

1    need you to show me where there was an e-mail or even a

2    submission to the portal that would correct the offending

3    language, or the revisions.  Where is that within the

4    record?

5           MR. FISH:  I don't have that document in the

6    record.

7           THE COURT:  So I didn't see it.  So you're stating

8    information that's not part of the record.  I understand

9    that you are not the attorney that commenced this action via

10   order to show cause and summons and complaint, so I'm not

11   blaming you.  I know that your client wants to show me

12   something, but at the end of the day, I don't have it in

13   front of me, and you know that the Supreme Court is a paper

14   record.  We need to have record of what you're saying.

15          I have the opposite.  I have an affirmation, and

16   let me get the actual paragraph which refutes what you just

17   said.

18          MR. FISH:  I think it's counsel's paragraph 22.

19          THE COURT:  22, so let me look.  Thank you.  I read

20   this very carefully, I thought.

21          Right.  So paragraph 22 is exactly what you

22   referred to.  They received the revised script, but failed

23   to submit -- but the plaintiff failed to submit an updated

24   profile.  In her e-mail, actually, she stated that she tried

25   to submit her script through the on-line portal despite

                                                        mb

Proceedings

1    clear instructions to do so by e-mail.  Plaintiff made no

2    mention of her revised statement.  So it's the opposite of

3    what you're saying.

4         The general counsel avers that they did not receive

5    anything other than the script and states that your client

6    could not do so because there were problems with the portal.

7    It's the opposite of what you just said, and there's no

8    supporting affidavit from your client, nor any documentary

9    evidence that was submitted with the papers or even a

10   request to put in the documentary evidence.  So you're

11   stating information that's contrary to what's in the record.

12   And when I heard that, that was the first time I heard it,

13   and I said to myself, did I read this carefully and

14   correctly?  Because this is a fact that I did not see in any

15   of the papers until you just mentioned it for the first

16   time.

17        MR. FISH:  There clearly are facts in dispute.  I

18   said earlier that there may have not been a lot of facts in

19   dispute.  This is a fact in dispute.

20        I would ask, to the extent your Honor needs

21   something, whether it be a document showing the submission

22   or an affidavit from my client, that we would have leave to

23   submit that by the close of business today.

24        THE COURT:  It's, quite frankly, too late.  Today

25   is the 23rd -- strike that.  Today is October 22nd, and I

mb

Proceedings

1    believe this Sunday or Saturday, the first early voting --

2    is it Saturday or Sunday?  I don't recall.

3              MR. FISH:  I believe it is tomorrow, your Honor.

4              THE COURT:  It is tomorrow, that's my recollection.

5    Because I know I am -- just to let you know, there's no

6    conflict of interest, but I'm sitting as a judge for early

7    voting as well, I think on the 27th.  So I'm one of the

8    judges that will be at the Board of Elections Downtown in

9    Manhattan.  So I didn't look at the early schedule.  I know

10   when I'm scheduled to be there.  But I knew it was either

11   the 23rd or the 24th was the first day.

12             So do you really want to adjourn this so we can

13   have argument on this past the election date?  How would it

14   help your client?  For all intents and purposes it's moot.

15             MR. FISH:  Well, the reason I don't think it's moot

16   is the defendant -- the reason this is not moot is that the

17   defendant can take some prompt action to correct these

18   things.  For example, they could correct the on-line profile

19   as we sit here today; that still remains empty for the

20   plaintiff.  At a very minimum, putting aside the ballot

21   issue, which by their dropping the ball required them to

22   have all hands on deck and have a fair election with respect

23   to the public advocate.

24             THE COURT:  Okay.  So let me -- Mr. Fish, let me

25   understand what you're asking for and maybe that can be

mb

Proceedings

1      accommodated.  Is there a request that was in writing to

2      modify the on-line profile?  I thought we were talking about

3      the profile that went out to -- the written profile that was

4      mailed to voters; and as a matter of fact, I received one

5      myself.

6               MR. FISH:  Yes.  The plaintiff intends to correct

7      her profile on all platforms available to voters.

8               THE COURT:  Okay.  So can you point into the record

9      where there is a revision that was e-mailed, and there was a

10     request by the defendant to both revise the profile on-line

11     as well as the written profile that is mailed to voters.

12     Where is that within the record?  I don't see that as well.

13     And it's not -- and, quite frankly, it contradicts again the

14     affirmation of the general counsel.

15               MR. FISH:  If you'd look at the document that was

16     submitted by the defendant, which is a September 28th

17     e-mail.

18               THE COURT:  You have to do better.  Where is that

19     located?  Because I have a lot of e-mails and a lot of

20     exhibits.  There's F, G, that was provided with it.  If you

21     could tell me which one.

22               MR. FISH:  It's Exhibit F.

23               THE COURT:  F.  Okay, I have F.

24               MR. FISH:  In the second paragraph they explain to

25     plaintiff that her profile on-line and the printed voter

mb

Proceedings

1    guide will only state her name; and her objection, you know,

2    to that I think there's a very fair implication that she

3    wanted both of those corrected.  She wasn't asking for just

4    the printed guide to be corrected and for the on-line, or

5    vice versa.

6           THE COURT:  No, so that's not my question.

7           My question is where did you provide the revisions

8    to the script so that the defendant can properly revise the

9    profile, both the on-line voter guide and the one that was

10   mailed to voters?  Where is that within F?  I don't see it.

11   And I have it open, and I have two screens.  I have you on

12   one screen on the right, and I have the exhibits and all of

13   the documents in this case on the other screen.  So I have

14   two screens.  I can see it in front of me right now.

15          MR. FISH:  We agree that the only one that was

16   submitted by e-mail was the script.

17          THE COURT:  Okay.  And that was accepted?

18          MR. FISH:  Yes.

19          THE COURT:  So let's go back to the profile.

20          I'll repeat the question.  Where is there a request

21   -- strike that.  Let's go backwards.

22          Where did your client submit the revised script and

23   request that the defendant provide a profile both on-line

24   and the one that was mailed to the voters?  I still don't

25   see that.  I assume that it's not part of the record, and I

*mb*

Proceedings

1    think that's what you wanted leave to submit; is that

2    correct?

3         MR. FISH:  Correct, a submission through the portal

4    is what I was asking leave for, yes, your Honor.

5         THE COURT:  Okay.  So let's see what happens after

6    this is over.  So I understand your argument now.  It's very

7    clear to me.  At the beginning it was not, and it was partly

8    because of the audio feed between us; and, secondly, because

9    I didn't recognize it in your papers and in the defendant's

10   papers.

11        Okay.  Let's move on.  Anything else you want to

12   add?  Because we've been doing this now for about a half

13   hour.

14        MR. FISH:  Nothing other than I'm happy to respond

15   to any points that are raised or any questions that

16   your Honor has.

17        THE COURT:  Okay.  So counsel in opposition.

18        MS. PERSKIE:  Yes.  Good morning, your Honor.

19        So, first I would say we agree with the Court's

20   characterization that the opposition to the order to show

21   cause and the cross-motion to dismiss are inextricably

22   linked and are essentially, you know, substantively

23   identical.  So we're asking for the order to show cause to

24   be denied on the grounds of failure to state a claim, as

25   well as mootness.

mb

Proceedings

1          The series of allegations, even if true, everything

2     listed in the order to show cause and the complaint do not

3     fit any cognizable legal theory.  And even if relief were

4     warranted, frankly, the relief sought at this point -- and

5     your Honor alluded to this -- it would be impossible to

6     grant.  The election is in a week and a half.  Early voting

7     begins tomorrow, as your Honor noted.  Even if we received a

8     legally compliant statement today, the CFB would not be able

9     to create and distribute a mailer that arrived at voters'

10    homes prior to the election.

11          I think, as counsel noted, the facts are mostly not

12    in dispute.  I would like to just clarify a couple of things

13    in terms of the CFB's ability to simply make a correction to

14    statements that we received.  There were, and I believe

15    your Honor can see this in the record, substantive

16    differences between the original video script that was

17    submitted and the revised video script.  Plaintiff did note,

18    and this is in Exhibit F in her e-mail, that she thought it

19    would be better in hindsight to focus on what she herself

20    had to offer, and so not only replaced the references to her

21    candidate -- to her opponent by name, but removed all

22    references to him altogether.

23          And there were also other substantive edits made to

24    the updated video script that had nothing to do with

25    removing the opposing candidate's name.  So it was not as

*mb*

Proceedings

1    simple as just subbing out, you know, the current public

2    advocate for the name of the candidate.

3         There were other substantive changes that we would

4    not have known to make, and it's not -- it's frankly beyond

5    our purview to make any substantive changes to any

6    candidate's statement.

7         We never received any statement for the print or

8    on-line guide.  I can't speak to whether that was attempted

9    to upload to the portal.  I will say that in Exhibit F in

10   the e-mail that was referenced earlier, plaintiff did say

11   that she tried to upload to the portal and was not able to

12   and so was submitting her submission for the video voter

13   guide, that video script, by e-mail.

14        There was no reference of any attempt to submit a

15   print statement by e-mail or by the portal or otherwise; and

16   so from the perspective of the CFB staff, plaintiff had

17   submitted a statement -- excuse me -- a script for the video

18   voter guide, and had not submitted and we did not receive

19   any statement for the print voter guide.

20        The deadline elapsed; we did not receive a

21   submission pursuant to the rules.  And how every other

22   candidate in the general election was treated and how these

23   rules were applied to candidates in the general election,

24   that meant that the voter guide was distributed without her

25   statement being included.

mb

Proceedings

1    Your Honor, you're muted.

2    THE COURT:  Can I ask you to clarify that your

3    office, the defendant herein, received a request through the

4    portal that revised both -- I'm sorry, not both -- either

5    the print or on-line voter guide.

6    MS. PERSKIE:  To my knowledge, the CFB did not

7    receive anything through the portal because at that point

8    the portal was unable to receive submissions.  That's why

9    there was a specific instruction to submit any corrections

10    by e-mail.  And when the substituted statement was submitted

11    by e-mail, it was the staff's impression that that was the

12    entirety of the submission because there was no reference to

13    any other submission that was attempted to be made.

14    THE COURT:  So let me just clarify, and I think I

15    understand the conclusion, but let's just make it very

16    crystal clear.  At any point in time did the defendant

17    New York City Campaign Finance Board receive the revisions

18    requested by the Board, whether timely or untimely, to

19    revise the on-line and/or written voter guide?

20    MS. PERSKIE:  No, they did not.

21    THE COURT:  Okay.  That's what I saw in your

22    affirmation; it's consistent.

23    And, Mr. Fish, for the first time today, without

24    proof or an affidavit from the plaintiff, states that it was

25    done.

mb