Proceedings

1       Okay.  So, Mr. Fish, you heard it directly, and I

2  asked her two different ways to make sure that we had a

3  clear recitation of the facts.  And counsel, both in papers

4  as well as documentary evidence submitted to the Court,

5  provide that your client did not submit either the revisions

6  for the on-line voter guide and the voter guide that was

7  distributed via mail to voters at any time.

8       MR. FISH:  Your Honor, obviously, I have to accept

9  the record as it is.  In doing that, what I would add is

10  that if you'd look at what started this, which was the

11  purpose of why this voter guide is sent out, to give full

12  and fair and comprehensive information about the candidates,

13  one.  And the defendant's argument, using the record as it

14  is, that there was this technical thing that wasn't done,

15  even though we were dealing with the plaintiff on these

16  submissions; and something that had not been raised yet,

17  which is submitted as Exhibit 2, the fact that the Board we

18  at least have a little evidence that they had gone out of

19  their way to call candidates to resolve issues, and none of

20  that was done here.  Intentional disregard for the

21  plaintiff.

22       THE COURT:  So, Mr. Fish, I have to stop you again,

23  because that is contradictory to the affirmation of counsel

24  where she stated -- I don't have the paragraph, but I

25  summarized it, I took notes.  There were 84 candidates that

mb

23

Proceedings

1    provided profiles, and there were 13 that did not provide

2    profiles; and, of course, for all intents and purposes they

3    missed the deadline and all were treated the same way.

4    That's what was submitted by counsel, general counsel for

5    the defendant.

6         I don't see any evidence of another candidate that

7    was similarly situated that was treated in a better or in a

8    more favorable manner.

9         MR. FISH:  Well, Exhibit 2 is an example of a

10   candidate for that position that received a telephone call

11   from the Board and assisted in working out submissions with

12   his profile.  But with respect to --

13        THE COURT:  Let me stop you.  Let me stop you.

14   Exhibit 2 is your exhibit?

15        MR. FISH:  Yes, your Honor.

16        THE COURT:  One second.  Let me look at what you're

17   saying.  I received it late last night and I'm looking at it

18   as we speak.  I have no idea what this is.  This obviously

19   is an e-mail that was provided without an affidavit or any

20   supporting individual with personal knowledge that states

21   this is a true and accurate copy, but it's from Theo --

22   Chino Theo to -- it was sent to an individual, apparently,

23   Ms. Loving, at the defendant, regarding statement and

24   script, and it talks about they had a conversation, correct,

25   and says:  As we discussed, we need to make a few minor

mb

24

Proceedings

1    changes in your statement and script in order to comply with

2    the Board rule.

3           You're saying you should have received the same

4    phone call.  Quite frankly, your client knew that there was

5    a problem and never e-mailed the individual to say that here

6    is the changes or revisions that were necessary.

7           So I see what you're saying.  Even though you

8    submitted it, this was not submitted in proper form, and

9    there's no affidavit; but even if so, it would not change

10   the facts that your client knew that it was supposed to be

11   e-mailed, and it looks like Ms. -- strike that -- the

12   candidate, Chino Theo, reached out to the Board, not vice

13   versa, it's from/to, and then they had a call.

14          So we need more information.  That's the answer.  I

15   don't understand what this is, but it doesn't look like it

16   was initiated by the defendant.  It looks like it was

17   initiated by the candidate.

18          Okay.  Mr. Fish, do you want to say anything else?

19   Did I lose you, Mr. Fish?  Are you there?

20          MR. FISH:  Yes, I'm here.

21          THE COURT:  Do you want to say anything else?

22          MR. FISH:  Yes.  This really does come down to the

23   fact that the plaintiff and defendant had an ongoing

24   dialogue about some technical corrections that needed to be

25   made.  They knew there were two things that the plaintiff

mb

25

Proceedings

1   was working on preparing.  They received one by e-mail, they

2   acknowledged, and did nothing for seven to eight weeks to

3   let the plaintiff know that there was something else that

4   had not come through, and that is going to have a major

5   impact on the citywide election.

6          THE COURT:  Okay.  I just have to ask a procedural

7   question.  And we started off and Mr. Fish acknowledged that

8   the order to show cause and the summons and complaint is not

9   technically correct.  It should have been filed as an order

10  to show cause with an Article 78 for the relief that was

11  requested, a petition for Article 78 for the relief

12  requested, and it was not filed in the proper form.

13          Is there any objection for this Court to convert

14  the papers to the proper Article 78 proceeding?

15          MS. PERSKIE:  No objection.

16          THE COURT:  Mr. Fish, do you consent?

17          MR. FISH:  I do consent.  I think we have

18  established that the decision of the Board was arbitrary and

19  capricious.

20          THE COURT:  Okay.  So now that takes me to -- so

21  let me just make the ruling that this Court on consent is

22  converting the papers to the proper vehicle, which would be

23  an Article 78 proceeding.

24          So now, Mr. Fish, let's get to the standard.

25  Arbitrary and capricious, you hit it right on the head,

mb

Proceedings

1    that's the standard.  How was the defendant arbitrary and

2    capricious when your client was notified that the plaintiff,

3    the petitioner now, should have e-mailed the revisions, and

4    you heard general counsel that any submissions through the

5    portal was not accepted because it was already past the

6    deadline.  How is that arbitrary and capricious when your

7    client failed to comply with the clear instructions to

8    e-mail?  Quite frankly, she e-mailed the script, so she knew

9    she could e-mail the profile as well.

10        And at no time have you presented any documentary

11    evidence, nor an affidavit saying that you provided it

12    pursuant to the instructions by the defendant, as all other

13    candidates have complied with.

14        In fact, you're asking for special treatment.  It's

15    the opposite.  You're asking for better treatment than

16    anyone else received, notwithstanding this Exhibit 2,

17    because the conversation started with the e-mail, as this

18    confirms that the proper vehicle is the e-mail to make

19    revisions.  So you are only confirming it.  Was there a

20    follow-up phone call?  It looks like there was.  But it

21    doesn't show favoritism.  It just shows that that person

22    followed the request and then there was a follow-up

23    conversation needed to clarify the e-mail; but nonetheless,

24    the correct communication was through the e-mail in order to

25    effectuate the revisions that were requested by defendant.

*mb*

27

Proceedings

1      MR. FISH:  I think the conduct exceeds arbitrary

2  and capricious and really rises to the level of intentional.

3      THE COURT:  Intentional?

4      MR. FISH:  In that this is really kind of like a

5  gotcha.  That's what this is.  If you look at it again, it

6  started with what the purpose of the New York City Charter

7  states that this guide is.  In the back and forth and

8  communication between plaintiff and defendant, this really

9  was a game; it seems like the defendant was playing with the

10  plaintiff.

11      And there's history here.  The plaintiff tried to

12  have "Dr." before her name on the ballot -- on the guide,

13  which is consistent with her name on the ballot.  So we can

14  go into other things that sort of show that there is

15  background here, but we don't even need that.

16      Any reasonable person and a reasonable defendant

17  could have worked with the plaintiff here to fix this very

18  simple problem.  But they allowed seven to eight weeks to

19  pass, and then you've got your gotcha moment, you're not in

20  the guide; it looks like you don't care, and it's already

21  past the period of impact.

22      So, you know, I believe there are times when

23  fairness and equity and reason can overcome a technical

24  argument, which is, you sent one by e-mail, where is the

25  other?  I understand it's not in the record, but you

mb

28

Proceedings

1    submitted it through another means that we could have

2    received.  Not good enough.  Those arguments are superseding

3    the importance of a fair election, I think, by the

4    defendant's argument.

5         THE COURT:  Okay.  So I have many issues with the

6    manner and the request that was put in by the plaintiff.

7    Let me read you the relief that was requested.  I know that

8    it was not done by you, Mr. Fish, but let me just read it:

9         "Please stop the voter guide from being mailed" in

10   all the eligible -- I'm sorry -- "to all eligible voters in

11   New York City."  Obviously, I can't do that.  That's the

12   relief that has been requested.  That goes beyond this

13   Article 78 proceeding.

14        Let me continue: "The CFB," which is the

15   defendant, "has deleted all of the work I have done in my

16   career with" -- I can't read the word next to it --

17   "veterans from Iraq and Afghanistan and treated patients

18   throughout the COVID pandemic, and given me a blank voter

19   profile instead."  It asked me in the -- "It casts me in a

20   negative light compared to the other candidates and causes

21   me irreparable harm.  It would cause voters irreparable

22   harm.  The purpose of the CFB and the voter guide is to

23   provide impartial information on candidates.  I am

24   requesting service by e-mail during COVID.  I would likely

25   win this case on the merits because the CFB was aware that I

mb

Proceedings

1    tried to submit my materials many times but was thwarted by

2    technical difficulties with their website.  They did not

3    take minimal steps to correct alleged technical difficulties

4    with their website.  I am being treated differently than

5    other candidates have been during this election cycle itself

6    who had similar issues.  CFB is in violation of the New York

7    City Charter Chapter 46 Section 1052 subsection (12)

8    subsection (b)."

9        Mr. Fish, I'm not sure what your client wants me to

10   do.  It looks like you want me -- the only relief via the

11   order to show cause seems that this Court stop the voter

12   guide from being mailed to all eligible voters in New York

13   City.  All the other relief is basically arguments for why

14   the defendant allegedly treated the plaintiff differently,

15   and she is complaining about the technical difficulty she

16   had with the defendant's website.

17       Obviously, the voter guide has gone out.  We know

18   that because I've received one; you probably have received

19   one.  The defendant stated that the voter guide went to the

20   printer on September 16th and was subsequently mailed out

21   prior to the commencement of this action, which was on

22   September 29th.  I soon thereafter signed the order to show

23   cause.  But for all intents and purposes it was at the

24   printer and mailed already by the time the order to show

25   cause was signed.

mb

Proceedings

1        So if the relief is for this Court to issue an

2   injunction to stop the voter guide from being mailed, that

3   cannot be provided; it's already out there.  There is no

4   relief that's been requested by order to show cause to --

5        MR. FISH:  Well, because -- your Honor, because of

6   the time that passed, the information that was not in the

7   plaintiff's hands at the time of filing, that the voter

8   guides were already mailed, I mean, I think that request for

9   a preliminary injunction can be converted to a request for

10  specific performance, which was --

11       THE COURT:  No, no.  Counsel, I'm not doing that.

12  That you have to -- you have to put in papers.  You knew

13  about this.  You had in your possession the order to show

14  cause.  You knew the relief that was requested.  And as a

15  matter of fact, I think that in the affidavit in support I

16  think she requested that the CFB immediately update the

17  voter guide.

18       MR. FISH:  Correct.

19       THE COURT:  So I don't know how that's possible

20  too.  We start voting already tomorrow and it's just too

21  late.

22       So at this juncture, the order to show cause, which

23  I'm only addressing now, must be denied.  In order to have

24  an injunction you must have success -- likelihood of success

25  on the merits.  There must be irreparable harm.  Here there

mb

Proceedings

1    is no chance of likelihood of success on the merits.

2    There's nothing in the record now that would show that the

3    defendant was arbitrary and capricious.

4         In fact, the compelling evidence is that the

5    plaintiff failed to comply with the clear instructions of

6    the defendant and failed, even to this day, to e-mail the

7    Board that they -- that she wishes them to update the

8    on-line profile and the written profile.  There's nothing in

9    the record via documents nor an affidavit that showed that

10   there was a request with the revisions so that the defendant

11   could comply with the plaintiff's request.

12        In addition, quite frankly, it's moot.  The voter

13   guide has been distributed and mailed citywide to millions

14   of people.  To take that back is a virtual impossibility.

15        The request to send a new voter guide for the

16   plaintiff's lack of compliance would be futile in two ways.

17   One, it would not get there on time; and two, you have to

18   have time for it to go to the printer.  And just

19   technically, if you go through the process, remember that

20   September 16th was the deadline, and we know that voting is

21   occurring starting tomorrow.  It just would not work.  It

22   would be a futile effort and would cause unnecessary expense

23   and effort due to the failure of the plaintiff to comply

24   with clear instructions to e-mail the profile to the

25   defendant.  Therefore, this Court denies the order to show

mb

32

Proceedings

1    cause.

2            However, this Court will not address the

3    cross-motion because there's not been opposition to the

4    cross-motion.  So I will allow Mr. Fish to put in opposition

5    or properly move again for any relief that the plaintiff, or

6    now the petitioner, sees fit, as this Court has converted

7    the matter to an Article 78 proceeding.

8            If you're going to do something, obviously you must

9    act in a diligent manner, because for all intents and

10   purposes voting starts tomorrow and will conclude by

11   November 2nd, and I would need papers in in a very expedited

12   manner so that you can get a decision before the election is

13   concluded on November 2nd.  And today, as you know, is the

14   22nd, so there are very few days between now and

15   November 2nd.  So I don't know how you're going to do this

16   and receive a decision, and I have to give opportunity to be

17   heard for defendant as well.

18           So if you're going to make an application, it must

19   be done by Monday, and then we have to work out a briefing

20   schedule so that I can have argument before -- at the

21   earliest possible time.

22           MR. FISH:  Understood, your Honor.  I will have a

23   conversation with my client about that, but I understand the

24   Monday deadline for the opposition.

25           THE COURT:  Yeah, it has to be because, otherwise,

                                                              mb

Proceedings

1  you know, if I give you longer, then it's going to

2  completely moot out the issue.  Right now I think it's moot.

3  But you can't go back.  There will not be another election.

4  The time for voting is tomorrow through the 2nd of November.

5  And that would disadvantage your client if there was not

6  expedited treatment of this case.  And I will try to

7  expedite it, but you have to work with the Court and with

8  counsel so that the paperwork, the proper paperwork, can be

9  put in.

10       I heard a lot about what you wanted to put in, but

11  the statements you made dehors the record, and the documents

12  you referred to are not within the record that I have seen,

13  and I've spent hours reviewing all the records and the

14  documents, and I was quite shocked and surprised at what you

15  stated, as there's nothing in the record to support the

16  arguments.  I'm sure that eventually, I hope it's by Monday,

17  you can put that in to the Court, therefore this Court will

18  be able to properly address the cross-motion and obviously

19  the petition that is before the Court.

20       Please order the transcript.  I wish you all the

21  best.  Take care.

22                 (Continued on the following page.)

23

24

25

mb

Proceedings

1          MR. FISH:  Thank you.

2          MS. PERSKIE:  Thank you, your Honor.

3          ***********************************************

4          Certified that the foregoing is a true and

5          accurate transcript of the original

6          stenographic minutes in this case.

7

8          *Mary Benci*

9          _____

           MARY BENCI, RPR
10         Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# MOTION TO VACATE 001:

# EXHIBIT D:

# NOTICE OF REPRESENTATION AND AFFIDAVITS FOR RESPONSE TO MTD



**DAVID M. FISH**
Counselor and Attorney at Law
WWW.DAVIDMFISH.COM

400 Garden City Plaza, Suite 432
Garden City, New York 11530
Telephone 212.869.1040
Facsimile 646.964.6538

October 27, 2021

**By Overnight Delivery**
Honorable Shlomo S. Hagler
Justice, Supreme Court
New York Supreme Court – Part 17
60 Centre Street, Room 335
New York, New York 10007

      Re:    **DEVI NAMPIAPARAMPIL V. NEW YORK CITY
             CAMPAIGN FINANCE BOARD
             NEW YORK COUNTY INDEX NO. 101118/2021**

Dear Justice Hagler:

      This firm represents the plaintiff, Devi Nampiaparampil, in the referenced matter.

      Enclosed is the original Affidavit in Opposition to Motion to Dismiss (with Exhibit A), served and sent to Chambers by email on October 25, 2021.

                       Respectfully submitted,

                       David Fish

                       David M. Fish

DMF:
Enclosure
cc:    Bethany Perskie (w/enclosure)

NEW YORK STATE SUPREME COURT
COUNTY OF NEW YORK

DEVI NAMPIAPARAMPIL,

                Plaintiff,

    - against -

NEW YORK CITY CAMPAIGN FINANCE BOARD,

                Defendant.

101118-2021

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS

    **DEVI NAMPIAPARAMPIL**, affirms the following under penalties of perjury:

1.    I am the plaintiff in this lawsuit.

2.    I offer this affidavit in opposition to defendant New York City Campaign Finance Board's (the CFB) motion to dismiss.

3.    I have stated a violation of the Rules of the City of New York, 52 RCNY 16.

4.    The New York City Charter mandates that a printed voter guide be produced for public awareness of candidates for city office; 52 RCNY 16(a) discusses the importance of the voter guide.

5.    Defendant itself admitted that the printed voter guide and "its distribution will fully, fairly, and impartiality inform, the public about the candidates."

6.    The Defendant breached its obligations to do this.

7.    The CFB offered an unsound technical argument over the principle of unbiased voter education and a fair election.

8.    In the entire history of New York City, 1 am both the first person of South Asian descent, and the first physician and

scientist, running in a general election (not special election) for citywide office from a major party. I am also the only woman running for citywide office from a major party in this general election. It should concern all minorities - and all voters- that I could be so easily erased by the government.

9.  As a candidate for Public Advocate, I have run on a platform of fairness, transparency, and predictability. In my career as a pain physician, I have served combat veterans returning from Iraq and Afghanistan with catastrophic injuries. I have treated prisoners of war and refugees raped, electrocuted, and tortured by the Communist Khmer Rouge and other tyrannical entities. I have traveled across the globe, with a red passport in addition to my blue one, on behalf of our own Department of State, to educate and train healthcare providers and government officials.

10. The only reason I am in this race is because our current City administration has repeatedly placed bureaucracy and tedious protocols above fairness, reason and the public good. This case proves my point.

11. After my unborn baby and I risked our health and safety to protect 2,000 patients during the COVID pandemic, after we were assaulted riding the subway to work and after we were infected and hospitalized with COVID ourselves, I noticed that our story was similar to those I had heard from

2

veterans, wounded in Vietnam, who were spit on when they returned home.

12.    As a candidate for New York City Public Advocate, I submitted an in-depth timely voter profile to the New York City Campaign Finance Board. The Campaign Finance Board, plagued with technical issues with its own website, created circumstances that made it impossible to submit profiles on the day of the deadline in the manner in which they demanded. They recognized that. Therefore, they altered their demands in order to excuse their own failings. But when I supposedly failed to meet their new criteria, they refused to grant me any latitude or consideration despite knowing the tremendous harm it would cause me and the voters. (Notably, he CFB extended the deadline twice. From 5pm to 11:59pm the first time because of its technical problems. And then from August 2nd to August 3rd because of continued technical problems. The deadlines are obviously very soft when the CFB makes mistakes.)

13.    On August 4, 2021, David Duhalde-Wine emailed me that, in order to be included in the voter guide, I must make one change. I had to change the name "Jumaane Williams" to the general term, "the current Public Advocate." I submitted my revision through the CFB's apparently faulty portal. My Treasurer and I had several email conversations and extensive Microsoft Zoom meetings with the CFB over the next 8 weeks. We did not hear of any problems with the

3

voter guide submission. Then approximately 8 weeks after David Duhalde-Wine's initial email, I was informed that the CFB did not receive the change on time, and therefore, I was entirely excluded from the voter guide.

14. In that same August 4, 2021 email, Mr. Duhalde-Wine informed me that I had to make changes to my voter script. I emailed Mr. Duhalde-Wine that the CFB portal would not allow me to modify the voter script and that therefore, I was emailing him the changes. He did not email me back.

15. I filed this lawsuit against the CFB, challenging the arbitrary and capricious -- and evidently intentional exclusion -- of my profile from the online and printed voter guide that was mailed to every eligible voter in New York City.

16. Also worth noting, after this Court's October 22 hearing, and a day before early voting began, I immediately requested in writing that the CFB updated my online voter profile - an easy fix. As of the time of this affidavit, the CFB has yet to do so. There is no excuse for that.

17. I am running on the Republican ticket. On October 22, 2021, after learning what the CFB and the Judge said in my case, Theo Bruce Chino Tavarez "Theo Chino," a lifetime member of the Democratic Socialists of America, volunteered to testify on my behalf.

18. Mr. Tavarez said that the CFB offices were closed due to COVID at the time he submitted his candidate profile.

4

Therefore, he could not initiate contact with the CFB employees by phone or in-person. This was my experience as well. When he committed the same alleged "error" that I did, the CFB attorney contacted him by phone and by email and co-authored his voter profile with him and for him. His Affidavit is attached as **Exhibit A**.

19.  The CFB general counsel included unsupported misstatements in her affirmation. This Court accepted her comments without allowing me to testify that they were completely false. This placed us in a no-win situation.

20.  The real impact of the CFB's actions is clear. I fundraised approximately $80,000 the week before the voter guide was mailed. I fundraised only approximately $1,000 the week after the voter guide was mailed. Donors and supporters of mine questioned my commitment as a candidate because the CFB stated -- to every eligible voter in New York City -- that I didn't submit my profile in time. There was no further explanation. This led to a domino effect. Since the matching funds determination is directly related to fundraising, I could not meet the threshold for matching funds after the voter guide was sent. Meanwhile, the CFB awarded my opponent almost $1 million in taxpayer funds because he met the threshold. This is irrespective of the fact that I had fundraised more than double what he did in the disclosure prior to the voter guide being sent.

21.  The CFB already has had a substantial influence on this

5

election.

22.  Soon after I had a C-section, when I went around the City collecting petitions in a polar vortex in the midst of COVID and a lockdown, I thought I was running against other candidates. Now I understand that I am actively competing against the City itself.

23.  I ask that the Court allow us to conduct discovery and then be heard on the issues in this case.  Thank you for your consideration.

Devi Nampiaparampil

Sworn to before me on
October 25, 2021

Notary Public

DAVID M. FISH
Notary Public - State of New York
No. 02FI6370395
Qualified in New York County
My Comm. Expires Jan. 29, 2022

6

Exhibit A

I, Theo Bruce Chino Tavarez, was a candidate for New York City Public Advocate in the 2021 election year. I am a lifetime member of the Democratic Socialists of America.

I submitted an entry for the New York City Campaign Finance Board's (CFB) printed and online voter guide.

In that submission, I referred to the incumbent for that position, Jumaane Williams, by name. I made various other statements that were considered non-compliant according to the CFB policies.

The CFB called me and emailed me to notify me that what I had done was not compliant with its policies.

I was given approximately one week to make revisions and resubmit my profile.

Ms. Loving, an attorney at the CFB initiated a phone call to me. We spoke on the phone for over 10 minutes. She offered me several options as to how to rewrite my statement so that it could be included in the voter guide that is distributed to the millions of eligible voters in New York City.

Ultimately, the CFB rewrote the voter profile for me. Then the CFB attorney emailed me my statement for my review to make sure I agreed with what she had written. The CFB attorney submitted my profile to the appropriate individuals on my behalf.

Because of the COVID pandemic, the CFB employees were working remotely throughout my race. Because of the CFB COVID policies, I was unable to initiate contact with employees of the CFB by telephone or in-person. I am certain that the CFB initiated all contact with me.

Sincerely,

Theo Bruce Chino Tavarez

Teresa Jimenez
Notary Public, State of New York
No. 01JI6320899
Qualified in New York County
Commission Expires March 9, 2023

State of New York          )
                           ) ss
County of NY               )

On the twenty fifth day of October in the year two thousand twenty one before me, the undersigned, personally appeared Theo Bruce Chino Tavarez personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.



## *AFFIRMATION OF SERVICE*

David M. Fish, an attorney duly licensed to practice law before all courts of the State of New York, affirms the following under penalties of perjury:

I am not a party to the action, I am over 18 years of age and reside in New York, New York.

On October 25, 2021, I caused to be served a true copy of the annexed **AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS, with Exhibit A** by email (bperskie@nyccfb.info) and, on October 27, 2021, by first-class mail to the address below:

Bethany M. Perskie
General Counsel
New York City Campaign Finance Board
100 Church Street, 12th Floor
New York, NY 10007

David Fish
David Fish

# MOTION TO VACATE 001:

# EXHIBIT E: DECISIONS ON OSC AND CASE

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

**PRESENT:**   **HON. SHLOMO HAGLER**      **PART**      **17**

*Justice*

---------------------------------------------------------------------X

NAMPIAPARAMPIL, DEVI

            Plaintiff,

       - v -

NEW YORK CITY CAMPAIGN FINANCE BOARD

            Defendant

---------------------------------------------------------------------X

**INDEX NO.**      101118/2021

**MOTION DATE**     

**MOTION SEQ. NO.**      001

**DECISION + ORDER ON MOTION**

The following papers, numbered 1 _____ , were read on this application to/for _____

| | |
|---|---|
| Notice of Motion/ Petition/ OSC - Affidavits - Exhibits | No(s) _____ |
| Answering Affidavits - Exhibits | No(s) _____ |
| Replying | No(s) _____ |

Upon the foregoing documents, it is

     ORDERED, that the Order to Show Cause is denied as stated on the record today.

**FILED**

**FEB 17 2022**

COUNTY CLERK'S OFFICE NEW YORK

_10/22/2021_
**DATE**

SHLOMO HAGLER, J.S.C.

**CHECK ONE:**    ☐ CASE DISPOSED    ☒ NON-FINAL DISPOSITION

     ☐ GRANTED    ☐ GRANTED IN PART    ☐ OTHER

**APPLICATION:**    ☐ SETTLE ORDER    ☐ SUBMIT ORDER

**CHECK IF APPROPRIATE:**    ☐ INCLUDES TRANSFER/REASSIGN    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

**PRESENT:**  **HON. SHLOMO HAGLER**  **PART** 17

*Justice*

------------------------------------------------------------------X

NAMPIAPARAMPIL, DEVI

|  | **INDEX NO.** | 101118/2021 |
| --- | --- | --- |

Plaintiff,

**MOTION DATE**

- v -

**MOTION SEQ. NO.**

NEW YORK CITY CAMPAIGN FINANCE BOARD
                            Defendant

**DECISION + ORDER ON MOTION**

------------------------------------------------------------------X

The following papers, numbered 1 _____ , were read on this application to/for

Notice of Motion/ Petition/ OSC - Affidavits - Exhibits .................................... No(s) _____

Answering Affidavits - Exhibits .................................... No(s) _____

Replying .................................... No(s) _____

This Court refuses to sign the proposed Order to Show Cause filed on August 8, 2022.

The issues in this matter are moot and no further causes of action are asserted in the subject complaint.

| 8/9/2022 | |
| --- | --- |
| **DATE** | **SHLOMO HAGLER, J.S.C.** |

| **CHECK ONE:** | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | | DENIED | GRANTED IN PART | X | OTHER |
| **APPLICATION:** | | SETTLE ORDER | | | SUBMIT ORDER | | |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |