No. 23 Civ. 6391 (ER)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEVI NAMPIAPARAMPIL,

*Plaintiff*,

-against-

THE NEW YORK CITY CAMPAIGN FINANCE
BOARD, *et al.*,

*Defendants*.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE SECONDED AMENDED COMPLAINT

**STEVEN BANKS**
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street
New York, NY 10007

Of Counsel: David S. Thayer
Tel:  (212) 356-2649
Matter #: 2023-068892

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. IV

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF MATERIAL FACTS AND PROCEDURAL HISTORY .............................. 3

ARGUMENT ...................................................................................................................... 10

LEGAL STANDARD.......................................................................................................... 10

POINT I ............................................................................................................................. 10

THE COMPLAINT FAILS TO COMPLY WITH
RULE 8 OF THE FEDERAL RULES OF CIVIL
PROCEDURE AND IS AT TIMES SUGGESTIVE
OF DELUSION OR FANTASY. .............................................................. 10

POINT II ............................................................................................................................ 13

TO THE EXTENT THAT PLAINTIFF
CONTINUES TO ASSERT CLAIMS ABOUT
THE DEFENDANTS' CONDUCT vis-à-vis THE
VOTER GUIDE, DEBATES, AND/OR THE
APPLICATION OF CAMPAIGN FINANCE
RULES TO HER, THESE SHOULD BE
DISMISSEDAS PRECLUDED. ............................................................... 13

POINT III........................................................................................................................... 14

ANY CLAIMS OF A RETALIATORY AUDIT
FAIL AND SHOULD BE DISMISSED.................................................... 14

POINT IV........................................................................................................................... 19

PLAINTIFFS ALLEGATIONS THAT SHE HAS
BEEN DENIED ACCESS TO THE COURTS
SHOULD BE DISMISSED. ..................................................................... 19

POINT V ............................................................................................................................ 20

PLAINTIFF FAILS TO PLEAD *MONELL*
LIABILITY ON HER OTHER CLAIMS, MANY
OF WHICH ALSO FAIL INDEPENDENTLY. ...................................... 20

POINT VI........................................................................................................................... 22

TO THE EXTENT ANY OF THE INDIVIDUAL DEFENDANTS HAVE BEEN SUED IN THEIR INDIVIDUAL CAPACITIES, THEY ARE PROTECTED BY QUALIFIED IMMUNITY........................................ 22

POINT VII ................................................................................................. 23

THE CFB LACKS THE CAPACITY TO BE SUED. ........................................................................................ 23

CONCLUSION................................................................................................. 24

CERTIFICATION OF COMPLIANCE ........................................................................ 25

III

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agosto v. N.Y.C. Dep't of Educ.*,
982 F.3d 86 (2d Cir. 2020)..................................................................................................20

*Annuity Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15 v. Tightseal Constr., Inc.*,
17 Civ. 3670 (KPF), 2018 U.S. Dist. LEXIS 138041 (S.D.N.Y. Aug. 14, 2018) ......................................................................................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................10

*Buckley v. Valeo*,
424 U.S. 1 (1976)........................................................................................................16, 17

*Burroughs v. Mitchell*,
325 F. Supp. 3d 249 (N.D.N.Y. 2018).............................................................................11

*Carr v. N.Y.C. Transit Auth.*,
76 F.4th 172 (2d Cir. 2023) ..............................................................................................15

*Cheung v. Youth Orchestra Found. of Buffalo, Inc.*,
906 F.2d 59 (2d Cir. 1990)................................................................................................18

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010)..........................................................................................................17

*Corren v. Condos*,
898 F.3d 209 (2d Cir. 2018)..............................................................................................16

*Cuellar v. Love*,
No. 11 Civ. 3632 (NSR), 2014 U.S. Dist. LEXIS 51622, 2014 WL 1486458 (S.D.N.Y. Apr. 11, 2014)..................................................................................................21

*Daniel v. T&M Prot. Res., LLC*,
844 F. App'x 4533 (2d Cir. 2021) ....................................................................................19

*DeCarlo v. Fry*,
141 F.3d 56 (2d Cir. 1998)................................................................................................21

IV

*Denton v. Hernandez*,
    504 U.S. 25 (1992) ................................................................................................12

*Dorsett v. County of Nassau*,
    732 F.3d 157 (2d Cir. 2013) ...............................................................................15

*Gallop v. Cheney*,
    642 F.3d 364 (2d Cir. 2011) ...............................................................................12

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ............................................................................................22

*Iannaccone v. Law*,
    142 F.3d 553 (2d Cir. 1998) ...............................................................................19

*Kraft v. City of New York*,
    823 F. App'x 62 (2d Cir. 2020) ..........................................................................12

*Lewis v. Casey*,
    518 U.S. 343 (1996) ............................................................................................20

*Montero v. City of Yonkers*,
    890 F.3d 386 (2d Cir. 2018) ...............................................................................15

*Montgomery v. Cuomo*,
    291 F. Supp. 3d 303 (W.D.N.Y. 2018) ...............................................................11

*Moray v. City of Yonkers*,
    924 F. Supp. 8 (S.D.N.Y. 1996) .........................................................................21

*In re Nampiaparampil Litig.*,
    776 F Supp 3d 1360 (J.P.M.L. 2025) ...................................................................8

*Nampiaparampil v. N.Y.C. Campaign Fin. Bd.*,
    25-CV-1346 (JPO), 2026 U.S. Dist. LEXIS 122071 (S.D.N.Y. June 1, 2026) ........................7

*Nampiaparampil v. N.Y.C. Campaign Fin. Bd.*,
    26-CV-1745 (JAV), 2026 U.S. Dist. LEXIS 83078 (S.D.N.Y. Apr. 14, 2026) ........................9

*Nampiaparampil v. N.Y.C. Campaign Fin. Bd.*,
    No. 3:25CV894 (W.D.N.C.) ..................................................................................8

*Nampiaparampil v. N.Y.C. Dep't of Sanitation Enf't Div.*,
    24-cv-5605-LDH-JRC, 2026 U.S. Dist. LEXIS 70145 (E.D.N.Y. Mar. 31,
    2026) ................................................................................................................7, 14

*Nat'l Rifle Ass'n of America v. Vullo*,
    144 F.4th 376 (2d Cir. 2025) ...............................................................................22

V

*Nixon v. Shrink Mo. Gov't PAC*,
  528 U.S. 377 (2000)..................................................................................................16

*Ognibene v. Parkes*,
  671 F.3d 174 (2d Cir. 2011)......................................................................................17

*Ortiz v. City of New York*,
  19 Civ. 7887 (ER), 2021 U.S. Dist. LEXIS 130333 (S.D.N.Y. July 13, 2021).......21

*Pearson v. Callahan*,
  555 U.S. 223 (2009)..................................................................................................22

*Rubin v. Bd. of Educ.*,
  20 Civ. 10208 (LGS), 2023 U.S. Dist. LEXIS 36082 (S.D.N.Y. Mar. 3, 2023) .....11

*Russell v. Scott*,
  170 F.4th 83 (2d Cir. 2026) .................................................................................22, 23

*Salahuddin v. Cuomo*,
  861 F.2d 40 (2d Cir. 1988)........................................................................................11

*Sarus v. Rotundo*,
  831 F.2d 397 (2d Cir. 1987).......................................................................................21

*Sharikov v. Philips Med. Sys. MR, Inc.*,
  103 F.4th 159 (2d Cir. 2024) .....................................................................................15

*Sharkey v. Quarantillo*,
  541 F.3d 75 (2d Cir. 2008)........................................................................................10

*Tanvir v. Tanzin*,
  120 F.4th 1049 (2d Cir. 2024) ...................................................................................22

*Torres v. City of New York*,
  19 Civ. 6332 (ER), 2023 U.S. Dist. LEXIS 8079 (S.D.N.Y. Jan. 17, 2023) ...........21

*Turner v. Rogers*,
  564 U.S. 431 (2011)...................................................................................................19

*Weinstein v. City of New York*,
  No. 16-CV-6034-LTS-DCF, 2019 U.S. Dist. LEXIS 53099 (S.D.N.Y. Mar.
  28, 2019) ....................................................................................................................23

*Whitfield v. Imperatrice*,
  477 F. App'x 806 (2d Cir. 2012) ...............................................................................20

**Statutes**

42 U.S.C. § 1983.................................................................................................1, 20

**Other Authorities**

52 R.C.N.Y. § 10-01 ...............................................................................................15, 23

Thirteenth Amendment ...................................................................................................21

Fed. R. Civ. P. 8.........................................................................................10, 11, 12

Fed. R. Civ. P. 12........................................................................................................3, 10

Fed. R. Civ. P. 17............................................................................................................18

N.Y.C. Admin. Code § 3-709.5 ........................................................................................3

N.Y.C. Charter § 396 .....................................................................................................23

N.Y.C. Charter § 1053 ......................................................................................................3

N.Y. C.P.L.R. art. 78........................................................................................................4, 5

N.Y. C.P.L.R. § 3211.........................................................................................................6

U.S. Const. amend. I ................................................................................14, 15, 16

U.S. Const. amend. XIII....................................................................................................20

**PRELIMINARY STATEMENT**

Plaintiff Devi Nampiaparampil brings this action under 42 U.S.C. § 1983 alleging that the Defendants New York City Campaign Finance Board ("CFB" or the "Board"), David Duhalde, Hannah Egerton, Amy Loprest, Bethany Perskie, Frederick Schaffer, Matthew Sollars, Jaclyn Williams, and the City of New York (collectively, the "Board" or "Defendants") infringed her rights under the U.S. Constitution before, during, and after the 2021 election for the citywide office of Public Advocate, for which Plaintiff was the Republican Party's candidate. Specifically, Plaintiff contends that the Board's application of certain rules upon Plaintiff, who participated in the Board's public campaign financing programs, and the Board's conduct of a post-election audit, constitute unconstitutional retaliation against her, especially insofar as those rules inhibited (in Plaintiff's opinion) her ability to retain counsel in several State and federal cases.

Plaintiff's prior Complaint was dismissed in this action in an Opinion and Order ("O&O") dated May 8, 2024. In that O&O, the Court made clear that Plaintiff's claims in the Complaint concerning the application of the Board's campaign finance rules to her during the election, namely, those claims about "the print and online Voter Guide, the debate, and the [Board's public campaign finance] Program" were claim-precluded under the application of *res judicata* principles of New York law. The Court further held that Plaintiff did not have leave to amend these claims, as an amendment would be futile. The Court did, however, permit Plaintiff to amend her claims of retaliation in the form of "auditing her . . . for her post-election litigation."

After Plaintiff filed a First Amended Complaint ("FAC"), against which the Defendants also moved to dismiss, the Court permitted (after an intervening period in which this case was stayed) the submission of an omnibus complaint that contained all of Plaintiff's perceived claims in one document.

1

Thereafter, in a Second Amended Complaint ("SAC") that exceeds 300 pages, Plaintiff sets forth an expansive, albeit wandering, narrative of a panoply of interactions with City governmental officials, as well as persons and entities totally unaffiliated with the City, in which Plaintiff contends that the Defendants have wronged her. It is not entirely clear what the common theme through Plaintiff's narrative is, besides Plaintiff herself. However, the core of her allegations at this juncture appears to be a contention that the Defendants (or, more specifically, the CFB) have conducted a retaliatory audit against her campaign and that, as part of the CFB's scrutiny of her campaign, the CFB's imposition of a direct campaign contribution limit (as set out in the rules of the CFB) has prevented Plaintiff from hiring counsel in a slew of cases.

Plaintiff's SAC should be dismissed. It is prolix, inscrutable, and fails to meaningfully advise the Defendants of the nature of the claims against them. At times, it is also is irrational and wholly incredible. Moreover, many of the claims that it sets forth are claim-precluded, a conclusion previously reached by this Court in its O&O and to which the Court should adhere. Additionally, Plaintiff's claim of a retaliatory audit fails because, as a matter of law, the CFB was required to undertake such an audit, and the audit itself resulted in no adverse action against her. To the extent that Plaintiff believes the CFB's contribution limit affected her ability to access the courts, this is also flatly wrong. It is plainly evident that Plaintiff has accessed the courts with exceptional vim. And in any event, the Board's campaign contribution limits are constitutional. Next, Plaintiff has failed to plead *Monell* liability on any of her claims, and her other, less emphatic claims fail on their face. As for the individual Defendants, to the extent that they are sued in their personal capacities, they are protected by qualified immunity. And lastly, the CFB, as the Court has already held, lacks the capacity to be sued.

Defendants therefore respectfully request an order dismissing this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF MATERIAL FACTS AND PROCEDURAL HISTORY

### A.    The Origin of This Action.

Plaintiff ran as the Republican candidate for the citywide office of the Public Advocate in the 2021 election. (Compl. ¶ 2; FAC ¶ 1; *see* SAC, at ECF No. 149 p. 36.)[1] During that time, Plaintiff was a participant in a Board program that allows eligible candidates to receive, from the City of New York, matching funds at a predetermined ratio for their campaign. (*See* Compl. ¶¶ 37, 39; *see also* SAC, at ECF No. 149 p. 34.) In exchange for their participation in this program, and the potential for receipt of public funds, candidates like Plaintiff must "agree to comply with, and demonstrate continued compliance with," the relevant rules of the Board. (Compl. ¶ 39; *see also* SAC, at ECF No. 149 p. 34.) Relatedly, the Board also permits candidates to submit campaign statements for inclusion in a voter guide, both in print and in an electronic video statement, for dissemination by the Board to the voting public. (Compl. ¶ 31); *see also* N.Y.C. Charter § 1053 (setting forth obligations for the Board to disseminate voter guide).[2] The Board also regularly coordinates debates between candidates. (*See* Compl. ¶¶ 75–83); *see also* N.Y.C. Admin. Code § 3-709.5 (setting forth requirements for mandatory debates).

---

[1] The Second Amended Complaint is written in a non-linear, narrative fashion from which it can be difficult to discern context and a timeline. For ease of understanding, Defendants have relied on the prior complaints where possible to provide a better understanding of the history and nature of this action.

[2] Copies of the Charter, Administrative Code, and Rules of the City of New York are available through American Legal Publishing at https://codelibrary.amlegal.com/codes/newyorkcity/latest/overview.

In advance of the 2021 election, Plaintiff attended a training administered by the Board at which certain representations were allegedly made to her about the substance of the Board's rules for participants in its campaign finance program. (*E.g.*, Compl. ¶ 54; FAC ¶¶ 20–21; SAC, ECF No. 149 p. 37.) In particular, Plaintiff alleges that she was told that, as a candidate participating in the public funding program, she herself was subject to a cap on the amount of funds that she could contribute to her own campaign. (*See* Compl. ¶¶ 54, 67; *see also* FAC ¶ 21; SAC, ECF No. 149 p. 34.) For the 2021 election of Public Advocate, this capped amount was $6,000.00. (Compl. ¶ 67; *see also* FAC ¶ 24; SAC, ECF No. 149 p. 35.) Furthermore, Plaintiff alleges that she was told that she was not allowed to pay a third-party service provider herself to provide services to her campaign, as this itself would be considered an in-kind contribution subject to the contribution cap. (Compl. ¶ 54; SAC, EF No. 149 p. 37.)

Later in 2021, Plaintiff submitted a draft statement for inclusion in the in-print and video Voter Guide distributed by the Board. (Compl. ¶ 56; *see* FAC ¶ 9.) The Board responded to Plaintiff and informed her that, under the Board's rules, she was not permitted to use the name of the incumbent Public Advocate in her Voter Guide submissions. (Compl. ¶ 56; *see* FAC ¶ 9.) The Board's Voter Guide was ultimately published without a statement from Plaintiff. (*See* Compl. ¶ 60; *see also* SAC, ECF No. 149-1 p. 1.) In October 2021, Plaintiff sought a temporary restraining order in the Supreme Court of the State of New York, County of New York, through what was eventually converted into an Article 78 proceeding, enjoining the publication of the Voter Guide without a statement from Plaintiff. (*Id.* ¶¶ 80–81; FAC ¶ 12; *see also* SAC, ECF No. 149-1 p. 1; Thayer Decl., Ex. E (containing transcript of hearing at which the proceeding was converted into an Article 78 proceeding), ECF No. 25.)[3]

---

[3] Defendants rely on their counsel's prior Declaration in making this motion to dismiss the SAC.

In October of 2021, the Board also hosted a debate between the candidates for the office of Public Advocate in which Plaintiff participated. (*See* Compl. ¶¶ 75-77; FAC ¶ 11; SAC, ECF No. 149-1 p. 4.) The Board allegedly intended to circulate a press release in advance of this debate that described the candidates by appearance for blind or visually impaired voters. (Compl. ¶ 77.) Plaintiff purportedly did not want to provide this information because she felt it was inconsistent with her campaign platform, but after a follow-up request for this information from Board staff, Plaintiff claims she "was forced to provide a description" of her height, heritage, gender, age, and hair/eye color. (*Id.* ¶ 78; *see also* FAC ¶ 11.)

The 2021 election was held on November 2, 2021, and Plaintiff did not receive enough votes to win the citywide office of Public Advocate. (*See* Compl. ¶ 84.) Plaintiff claims that she "exited the election" without any "flagged campaign finance obligations and zero penalties." (Compl. ¶ 88; *see also* FAC ¶ 12.) Yet she alleges that the Board subsequently has engaged in a retaliatory post-election audit of her campaign, purportedly as recompense for a proceeding in New York County Supreme Court that she claims to have commenced against the Board,[4] as well as for her litigation against the CFB and/or others in other fora.[5] (Compl. ¶ 89; *see also* FAC ¶¶ 13, 55.)

In October 2022, Plaintiff commenced yet another proceeding in New York County Supreme Court, in which she asserted causes of action including negligence, actual

---

[4] Plaintiff did not actually commence a new proceeding in State court in August 2022. Instead, so far as can be discerned, she filed a second proposed order to show cause in the Article 78 proceeding, which had been before Justice Hagler in New York County Supreme Court. Justice Hagler, however, declined to endorse Plaintiff's proposed order to show cause. (Thayer Decl., Ex. F.)

[5] The reasoning behind many of Plaintiff's claims appears to be that, if Defendants disagree with her arguments or assertions in judicial proceedings, this amounts to retaliation, a self-evidently untenable position: disagreement in the course of judicial proceedings is not retaliation; it is litigation.

5

malice, libel, disparagement of a commercial entity, negligent entrustment, agency, breach of contract, and negligent hiring/retention. (Thayer Decl., Ex. G, at pp. G002-G003 ¶¶ 4–5.) On or about November 15, 2022, the Board moved to dismiss in this State-court action. (Thayer Decl., Ex. I (containing the Board's initial moving papers).) On April 14, 2022, New York County Supreme Court (Ramseur, J.) issued a Decision and Order dismissing the Complaint pursuant to N.Y. C.P.L.R. § 3211(a)(7). (Thayer Decl., Ex. M.)

Plaintiff filed this action on July 24, 2023. (Compl.) The Defendants moved to dismiss on November 10, 2023, and this motion was granted on May 8, 2024. (ECF No. 45.) In its O&O, the Court dismissed the vast majority of Plaintiff's claims on claim preclusion grounds, in light of Justice Ramseur's April 14, 2022 Decision and Order in New York County Supreme Court. The Court also dismissed Plaintiff's claims of retaliation in connection with the Board's post-election audit, but ultimately gave Plaintiff leave to replead these claims to cure certain deficiencies in her allegations with respect to *Monell* liability. (*Id.* at p. 19-20.)

On May 30, 2024, Plaintiff filed the First Amended Complaint ("FAC") purporting to amend her retaliation claims. (ECF No. 46.) The Defendants again moved to dismiss this FAC. (ECF Nos. 61-63, 77, 84.) However, around the same time, a number of related cases and proceedings were commenced.

**B.    *Nampiaparampil v. N.Y.C. Dep't of Sanitation Enf't Div.*, No. 24 CV 5605 (E.D.N.Y.)**

On or about August 2024, Plaintiff's mother, Mary J. Nampiaparampil, in her capacity as treasurer of Plaintiff's campaign, brought a case against the City of New York and others in the U.S. District Court for the Eastern District of New York. *See generally* Compl., *Nampiaparampil v. N.Y.C. Dep't of Sanitation Enf't Div.*, No. 24 CV 5605 (E.D.N.Y. 2024), ECF No. 1. Like the actions previously filed by Plaintiff, Mary alleged that her constitutional

6

rights had been violated throughout her daughter's 2021 campaign for Public Advocate. Specifically, Mary alleged claims related to the voter guide, the debate, the public campaign financing program, and the CFB's post-election audit of Plaintiff's campaign. *See id.* The single unique claim brought alleged that eleven sanitation violations issued against Mary for campaign signage during Plaintiff's 2021 campaign were retaliatory. *See id.* The defendants filed a motion to dismiss all claims in this case, and the Court granted it in March 2026. *See generally Nampiaparampil v. N.Y.C. Dep't of Sanitation Enf't Div.*, 24-cv-5605-LDH-JRC, 2026 U.S. Dist. LEXIS 70145 (E.D.N.Y. Mar. 31, 2026). Plaintiff has filed a notice of appeal of that decision.

**C.      *Nampiaparampil v. N.Y.C. Campaign Fin. Bd.*, No. 25 CV 1346 (S.D.N.Y.)**

In February 2025, Plaintiff's father, Xavier J. Nampiaparampil, brought a case in the Southern District of New York against the City of New York and others alleging that defendants infringed his constitutional rights in connection with his daughter's 2021 campaign for Public Advocate. *See generally* Compl., *Nampiaparampil v. N.Y.C. Campaign Fin. Bd.*, No. 25 CV 1346 (S.D.N.Y. 2025) ECF No. 1.

Xavier also challenged CFB rules and actions related to the public campaign finance funding program, the voter guide and the debate related to Plaintiff's 2021 campaign for Public Advocate. Xavier also claimed that the City inappropriately charged his wife, Mary, with sanitation violations. *Id*.

After Xavier filed a First Amended Complaint, the defendants filed a motion to dismiss this complaint, which the Court granted in part and denied in part. *See generally Nampiaparampil v. N.Y.C. Campaign Fin. Bd.*, 25-CV-1346 (JPO), 2026 U.S. Dist. LEXIS 122071 (S.D.N.Y. June 1, 2026). The defendants in this action have moved for reconsideration

of that portion of the decision that denied their motion to dismiss, and this motion for reconsideration is still being briefed.

**D.      Motion to Consolidate before the Judicial Panel on Multidistrict Litigation**

On December 19, 2024, Plaintiff and Mary sought to consolidate and transfer this action and Mary's Eastern District of New York action (No. 24 CV 5605) to the U.S. District Court for the District of Columbia ("D.D.C.") through an application to the U.S. Judicial Panel on Multidistrict Litigation (the "JPML"). *See* Motion to Consolidate, *In re Nampiaparampil Litig.*, MDL No. 3146, ECF 1. Ultimately, the JPML denied the request for consolidation and transfer. *See In re Nampiaparampil Litig.*, 776 F Supp 3d 1360, 1361 (J.P.M.L. 2025). Importantly, the JPML noted that "[e]ach action is brought by a member of the same family and arises from the same 2021 election campaign in New York City" and that "[t]he actions present factual overlap regarding defendants' alleged (1) discriminatory application of campaign finance laws and auditing procedures, (2) retaliatory conduct, and (3) denial of plaintiffs' access to legal representation." *Id.*

**E.      *Nampiaparampil v. N.Y.C. Campaign Fin. Bd.*, No. 3:25CV894 (W.D.N.C.) and *Nampiaparampil v. N.Y.C. Campaign Fin. Bd.*, No. 26 CV 1745 (S.D.N.Y.)**

Next, Plaintiff brought a case against the City of New York and others, including Defendants' undersigned counsel, in the U.S. District Court for the Western District of North Carolina, in Raleigh, where the JPML had heard oral argument on Plaintiff's application for consolidation. The defendants in that action again alleged infringement of their constitutional rights for a litany of reasons related to Plaintiff's 2021 campaign for Public Advocate, including the CFB contribution limits, debate, voter guide, and the CFB's post-election audit.

The defendants moved to dismiss or in the alternative for a transfer of venue. The Court issued an order transferring the case to the Southern District of New York where Judge

8

Vargas, to whom the case was assigned, indicated that she would consider the remainder of the motion seeking dismissal. *Nampiaparampil v. N.Y.C. Campaign Fin. Bd.*, 26-CV-1745 (JAV), 2026 U.S. Dist. LEXIS 83078, at *5 (S.D.N.Y. Apr. 14, 2026). That motion therefore remains *sub judice*.

**F.      Returning to This Case.**

Around same time as these other cases were filed and began to move forward, Plaintiff also sought orders vacating the decisions in the Justice Hagler and Justice Ramseur cases that Plaintiff had brought years ago in New York County Supreme Court. (SAC, ECF No. 149-2 p. 10.) These applications were denied, and Plaintiff has filed notices of appeal in those matters.

Plaintiff also sought vacatur of the stay in *this* matter, which had been entered at the point when Plaintiff sought consolidation of this action before the D.D.C. (ECF Nos. 120, 137.) Once the stay was lifted, the Court permitted Plaintiff to, in essence, file an omnibus Second Amended Complaint setting forth all of her claims in one single paper. (ECF No. 143.) This was filed on or about May 14, 2026. (ECF No. 149, 149-1 through 149-6.)

The SAC reiterates much of what was contained in Plaintiff's prior complaints, but also brings in new players, including State and federal agencies and entities, landlords and property managers, Plaintiff's husband and children, creditors, patients, prospective patients, and others. (*E.g.*, SAC, ECF No. 149 p. 6; ECF No. 149-2 p. 7, 10; ECF No. 149-6 pp. 3, 11.)

So far as can be discerned, at its core, the SAC alleges that the Defendants' application of the CFB rules that limit contributions to campaigns to $6,000—whether in actual funds or in-kind services—have prevented Plaintiff from hiring counsel to her detriment. (*E.g.*, SAC, ECF No. 149-4 p. 2 (asserting denial of access to the courts).

9

## ARGUMENT

### LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "[f]actual allegations" that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Sufficient facts must be provided to "state a claim to relief that is plausible on its face[,]" *id.* at 570, which only occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint is deficient if it does not contain "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the alleged violation. *Twombly*, 550 U.S. at 556. Though courts must accept as true all of the factual allegations contained in a complaint when evaluating a motion to dismiss under of Rule 12, *Iqbal*, 556 U.S. at 678, this requirement is "inapplicable to legal conclusions" — a court should not give credence to "[t]hreadbare recitals of the elements of a cause of action" or "mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008).

### POINT I

**THE COMPLAINT FAILS TO COMPLY WITH RULE 8 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND IS AT TIMES SUGGESTIVE OF DELUSION OR FANTASY.**

Rule 8 of the Federal Rules of the Civil Procedure requires that a complaint set out "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The purpose of Rule 8 is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate

10

defense and determine whether the doctrine of res judicata is applicable" *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 264 (N.D.N.Y. 2018) (internal alterations and quotations omitted); *see also Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 344-45 (W.D.N.Y. 2018). "Courts in this Circuit have dismissed complaints that are unnecessarily long-winded, unclear, or conclusory." *Annuity Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15 v. Tightseal Constr., Inc.*, 17 Civ. 3670 (KPF), 2018 U.S. Dist. LEXIS 138041, at *34 (S.D.N.Y. Aug. 14, 2018). This is especially warranted because prolix complaints place "'an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Rubin v. Bd. of Educ.*, 20 Civ. 10208 (LGS), 2023 U.S. Dist. LEXIS 36082, at *6-7 (S.D.N.Y. Mar. 3, 2023) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). Indeed, even within this District, courts have dismissed complaints that were 395 pages, comprised of hundreds pages of allegations and exhibits some of which "reproduced the text of lengthy letters, emails and memoranda," as violative of Rule 8. *Rubin*, 2023 U.S. Dist. LEXIS 36082, at *6-7, 9, 11.

Here, Plaintiffs' lengthy and convoluted Complaint contains "confused, ambiguous, vague" and at times "unintelligible" allegations. *Salahuddin*, 861 F.2d at 42. It veers between Plaintiff's experiences as a consultant for the U.S. Department of Veterans Affairs, her experiences during the COVID-19 pandemic, illnesses and travails of her family members, her experiences as a candidate for Public Advocate, Freedom of Information Law requests to the New York City Police Department, her experiences as an expert witness in various cases, her divorce, her pain medicine practice, her professional relationship with NYU Langone Health, her child's school placement, filings and appearances in this and other cases, alleged interference with her ability to prescribe certain medications, alleged interference with mail, threats of

11

eviction against her, alleged interference with her ability to pay bills, alleged interference with boarding passes of her children, alleged interference with permits, cellular service, and a host of other issues. (SAC, ECF No. 149 pp. 8, 25 ECF No. 149-1 p. 12, 44 ECF No. 149-2 p. 19 ECF No. 149-5 p. 5 ECF No. 149-6 p. 5, 13, 15, 18, 26.) Defendants quite simply cannot coalesce the statements in the Complaint into a coherent narrative of what they actually are alleged to have done to harm Plaintiff; instead, the Complaint appears to set out a wide-ranging laundry-list of troubles that Plaintiff (or her family members or her medical practice) has faced in recent years. With such scattershot material, the Defendants are not able to fairly discern the claims against them, and so the Complaint should be dismissed as violative of Rule 8.

In addition, the scale and the scope of material referenced in the Complaint suggests that the Defendants—and others with whom Plaintiff believes they are conspiring and who seemingly include (but are not limited to) hospitals, State and federal courts, State and federal governmental entities, landlord or property managers, and airlines—are being blamed for a raft of troubles endured by Plaintiff in her personal and professional life. (*E.g.*, SAC, ECF No. 149-2 p. 4 (describing threats of eviction).) This sort of wide-ranging "conspiracy," which approaches an assertion of constant "surveillance" that has resulted in the placement of a "'digital marker' on [Plaintiff] in order to collect . . . personal data and harass" her, (*see, e.g.*, ECF No.149-6, at p. 14 (suggesting the existence of "targeted interference through digital flagging or reclassifications"), is the type of allegation that the Second Circuit has confirmed may be dismissed as implausible, "fanciful, fantastic, or delusional," or as "irrational or . . . wholly incredible." *Kraft v. City of New York*, 823 F. App'x 62, 64 (2d Cir. 2020) (citing *Gallop v. Cheney*, 642 F.3d 364, 368  (2d Cir. 2011); *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Upon review of the Complaint, it appears that much of the allegations suggest that misconduct

12

on the part of the Defendants has been in coordination with others and has been in an attempt to impede Plaintiff's ability to function in her daily life, (*e.g.*, SAC, ECF No. 149-6 p. 15), and these sort of allegations of organized, deliberate, and pervasive machinations on the part of the Defendants is facially implausible and should be dismissed as irrational or wholly incredible.

**POINT II**

**TO THE EXTENT THAT PLAINTIFF CONTINUES TO ASSERT CLAIMS ABOUT THE DEFENDANTS' CONDUCT VIS-À-VIS THE VOTER GUIDE, DEBATES, AND/OR THE APPLICATION OF CAMPAIGN FINANCE RULES TO HER, THESE SHOULD BE DISMISSEDAS PRECLUDED.**

As the Court is aware, it previously dismissed the vast majority of the original Complaint in this action on claim-preclusion grounds. (*See generally* O&O, ECF No. 45.) However, the Court gave Plaintiff leave to replead certain claims of retaliation. (*Id.* at pp. 19-20.) Throughout the SAC, Plaintiff references the Voter Guide, the debates, and her fundamental disagreements with the rules for candidates participating in the public funding campaign finance program and their application to her. (SAC, ECF No. 149 p. 50; ECF No. 149-1 p. 1-3; ECF No. 149-1 p. 14, 18, 20.) However, as the Court has already determined, these claims are precluded and must be dismissed. (O&O, at p. 15.) As such, any claims arising out of Plaintiff's qualms about her inclusion in the print or online Voter Guide, the debate, or the Board's public campaign finance program must be dismissed consistent with the Court's prior ruling and the law of the case.

Additionally, during the pendency of this action, Plaintiff's mother and the treasurer of Plaintiff's campaign, Mary Joseph Nampiaparampil, brought a more recent action against the City of New York in the U.S. District Court for the Eastern District of New York, encompassing much of the same subject matter that appears to be alleged in the SAC, notably

13

including the allegations of a post-election retaliatory audit. *See, e.g.*, *Nampiaparampil v. N.Y.C. Dep't of Sanitation Enf't Div.*, 24-cv-5605-LDH-JRC, 2026 U.S. Dist. LEXIS 70145, at *11-12 (E.D.N.Y. Mar. 31, 2026). There, the Honorable LaShann Darcy Hall concluded that much of Plaintiff's mother's case was precluded for the same reasons that this Court set out in its O&O, concluding that the Plaintiff's mother was in privity with the Plaintiff and was complaining about the same—or arising from the same—allegedly unlawful conduct of the Defendants as had been litigated in State court, *Nampiaparampil*, 2026 U.S. Dist. LEXIS 70145, at *19-20, 22. In other words, the preclusive effect of the State court decision referenced in this Court's O&O has been now confirmed by another federal court. The Court should therefore adhere to its holding that these claims are precluded.

**POINT III**

**ANY CLAIMS OF A RETALIATORY AUDIT
FAIL AND SHOULD BE DISMISSED.**

The SAC is a discursive document that does not provide an easily understandable or linear narrative to follow, but so far as Defendants can discern, Plaintiff's primary retaliation arguments are that the Board's commencement of the post-election audit constituted retaliation against her and that the Board's application of its contribution limits upon Plaintiffs—specifically if the provision of legal or accounting services to Plaintiff could be considered an in-kind contribution—constitutes retaliation or is otherwise unlawful. (*E.g.*, SAC, ECF No. 149-1 p. 20.)

In order for a plaintiff to plead a First Amendment retaliation claim, she must allege that she (1) "has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [her] exercise of that right; and (3) the defendant's

14

actions caused [her] some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). Often this injury is in the form of chilled speech or another concrete injury. *See id.*

Plaintiff fails to adequately plead any retaliation claim. First, with respect to her allegations that Defendants' conduct of a post-election audit against her constitutes retaliation, (*e.g.*, SAC, ECF No. 149-2 p. 59), Plaintiff does not — and cannot — plausibly claim that this was "motivated or substantially caused" by any exercise of her First Amendment rights. As Defendants have previously pointed out to Plaintiff and the Court, the Board is required to perform audits of *all* candidates in elections for City offices. 52 R.C.N.Y. § 10-01(a) ("The Board shall conduct desk and field audits of participants and non-participants [in the Board's public financing program], regardless of whether the candidates receive public funds."); *see also* Opinion & Order, at p. 16 (citing *Montero v. City of Yonkers*, 890 F.3d 386, 403 (2d Cir. 2018)) ("The mere fact that an audit took place as required by law is insufficient to support the claim that a policy of retaliation existed."). In other words, regardless of any exercise by Plaintiff of her First Amendment rights, the Board would still be required to audit her. Plaintiff therefore fails to plead the existence of a standing policy of retaliation on the part of the Board against her or other candidates. Thus, Plaintiff cannot plead the necessary elements to state this claim.

Relatedly, Plaintiff cannot plausibly claim that the application of the Board's generally applicable regulations concerning the public campaign financing program to her is retaliation. *See Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 171 (2d Cir. 2024) (citing *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023)) (noting, in employment context, that employer's adverse action vis-à-vis an employee that is consistent with generally applicable workplace policies is insufficient to constitute retaliation against the employee). Here, Plaintiff, who herself enrolled in the public funding campaign financing program, (*see* SAC, ECF No. 149

15

p. 34), is clearly subject to the rules of that program. Her disagreement with the appropriateness or wisdom of those rules as applied to her does not amount to retaliation against her specifically. In any event, these claims are also claim-precluded, as previously discussed. As such Plaintiff's claims to this effect should be dismissed.

Moreover, it is well-settled that direct contribution limits on supporters who wish to contribute to a campaign participating in a public campaign financing programs do not violate the First Amendment. *Corren v. Condos*, 898 F.3d 209, 224 (2d Cir. 2018) ("[I]f a candidate declines private contributions in favor of public funds, the candidate's supporters cannot complain that the state has infringed their rights to make contributions.") And the U.S. Supreme Court has also made clear that contribution limits *out*side of public campaign financing programs also do not violate the First Amendment. Indeed, in its foundational decision of *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), the Court considered the constitutionality of direct campaign contribution limits by individuals, and in doing so, weighed the interests of individuals in making their support for a candidate known by contributing to a political campaign with the interests of the government, among other things, in preventing corruption by limiting oversize donations from benefactors seeking political favors. 424 U.S. at 24-26. Ultimately, in no uncertain terms, the Court concluded that "the weighty interests served by restricting the size of financial contributions to political candidates are sufficient to justify the limited effect upon First Amendment freedoms." *Id.* at 29.[6] In other words, the Court held that the government may constitutionally limit individuals' direct contributions to campaigns. *See also Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 395-98 (2000) (expanding Buckley's holding to campaign

---

[6] Defendants note as well that the *Buckley* Court even seemed to suggest that donations or in-kind assistance was "the same as if the person had contributed the dollar amount to the

16

contribution limitations in State law and concluding that a Missouri $1,095 contribution limit was not unconstitutional). The *Buckley* Court's holding on this front was separate and distinct from its holding that public campaign financing programs, like the one administered by the CFB, are constitutional. *See generally id.* at 86-109.[7]

As the foregoing makes clear, to the extent that Plaintiff's argument is that the continuing application of the CFB's contribution limits upon her—in the form of her so-called attorney or accounting ban[8]—then the Supreme Court has made clear that such contribution limits are not unconstitutional.

At the same time, Plaintiff's arguments about the contribution limits are also a red-herring, as the Defendants have made clear to the Court that they do not consider this action or a slew of other federal and State court proceedings commenced by Plaintiff and identified in the Defendants' recent letter to the Court, (ECF No. 150, at p. 3 n.5), to be campaign-related and are therefore not within the ambit of the contribution limit itself, and/or these proceeding are not

---

candidate" and thus could be properly considered contributions and restricted constitutionally. *Buckley*, 424 U.S. at 36-37.

[7] The broader *Buckley* decision has, of course, been narrowed in recent years, but its holdings on the constitutionality of campaign contribution limitations remain in force. In fact, in *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), the Supreme Court took pains to make clear that the *Buckley* Court's holding with respect to the constitutionality of limits on individuals' direct contributions to campaigns was a separate matter from the issue that the *Citizens United* Court was considering, namely, the expenditures of independent entities in furtherance of—but not at the direction of—political campaigns. 558 U.S. at 345-46; *see also* 558 U.S. at 359 (noting that "contribution limits . . . have been an accepted means to prevent quid pro quo corruption" and differentiating those from the independent expenditures at issue); *Ognibene v. Parkes*, 671 F.3d 174, 183-84 (2d Cir. 2011). In other words, *Buckley*'s holding with respect to the constitutionality of campaign contribution limitations was not undermined by *Citizens United*.

[8] Defendants also note that there is no ban on Plaintiff's access to counsel, merely a per-person limitation on contributions, whether financial or in-kind, that an individual may directly contribute to a campaign.

17

subject to scrutiny by the CFB due to the fact that the audit of Plaintiff's 2021 campaign has completed and is no longer obliged to file financial disclosures with the CFB. In other words, the CFB's audit relationship with Plaintiff in connection with the 2021 election has been terminated, so her hiring of counsel is unencumbered in any respect.

Somewhat relatedly, it is black letter law that Plaintiff may not make claims on others' behalf while acting *pro se*. Actions "must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). In certain circumstances, a fiduciary, such as a guardian, committee, or conservator, or a next friend or guardian *ad litem*, may institute an action in their own name on behalf of another. Fed. R. Civ. P. 17(c). Absent one of those exceptions, however, plaintiffs *pro se* may not bring claims on behalf of other parties, including family members. *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). Accordingly, any of the allegations that the Defendants retaliated against Plaintiff's family members, friends, and supporters, or against her pain medicine clinic Metropolis Pain Medicine PLLC, insofar as any of these persons or entities also wanted to hire counsel, should be disregarded as she lacks authority to assert such claims while acting *pro se*.

In sum, Plaintiff's scattershot approach in which she appears to see retaliation in every aspect of her interactions with the Defendants ultimately does not make her grievances cognizable under federal law. The Defendants, consistent with their mandated duties, have not retaliated against Plaintiff, and her retaliation claims must therefore fail.

18

**POINT IV**

**PLAINTIFFS ALLEGATIONS THAT SHE HAS BEEN DENIED ACCESS TO THE COURTS SHOULD BE DISMISSED.**

Plaintiff appears to assert that the Defendants' application of generally applicable rules of the CFB to her campaign, in the form of a direct contribution limit, unconstitutionally interferes with her access to the courts. (*E.g.*, SAC, ECF No. 149-4 p. 2.) This is not so.

To start, it is self-evident that Plaintiff has absolutely no impediment to her access to the courts and has routinely brought complaints in the Supreme Court of the State of New York, the U.S. District Court for the Eastern District of New York, this Court, the U.S. District Court for the Western District of North Carolina, as well as proceedings in the Supreme Court of the State of New York and the U.S. Judicial Panel on Multidistrict Litigation. Plaintiff's true complaint, therefore, appears to center on her perceived inability to hire counsel (or other professionals) due to the CFB's limitations on individual's direct contributions to campaigns.

In response, it should first be noted that the Plaintiff's attack on the propriety of the CFB contribution limits has already been ruled upon in the Court's O&O: those claims are precluded by a State court decision, and the Court should continue to hold as such.

Additionally, there is no constitutional right to counsel in a civil action and, indeed, the lack of such a right is part of the reason why litigants are permitted to appear in civil actions *pro se. See Iannaccone v. Law*, 142 F.3d 553, 557-58 (2d Cir. 1998). The Sixth Amendment's guarantee to counsel does not have application in a civil action. *Daniel v. T&M Prot. Res., LLC*, 844 F. App'x 4533, 436 (2d Cir. 2021) (citing *Turner v. Rogers*, 564 U.S. 431, 441-43 (2011)).

Next, even if Plaintiff nevertheless wanted to argue that the Defendants have infringed her right to access to the courts by interfering with her right to self-representation, she

could not because, "[t]o succeed on an access-to-court claim, a plaintiff must demonstrate 'actual injury' by proving that the denial of access 'hindered [her] efforts' to pursue a non-frivolous legal claim." *Whitfield v. Imperatrice*, 477 F. App'x 806, 808 (2d Cir. 2012) (quoting *Lewis v. Casey*, 518 U.S. 343, 349, 351-53 (1996)). As noted, however, Plaintiff has not been denied access or otherwise shut out of court; she has brought many claims in a variety of courts, all of which have either lacked merit, contained procedural flaws, or have been dismissed and/or denied. As such, the Court should dismiss any claims that purport to allege interference with her access to the courts.

## POINT V

### PLAINTIFF FAILS TO PLEAD *MONELL* LIABILITY ON HER OTHER CLAIMS, MANY OF WHICH ALSO FAIL INDEPENDENTLY.

At times throughout the SAC, Plaintiff passingly references other seeming bases of potential liability. For example, she mentions the Thirteenth Amendment, a temporary disability, the Equal Protection Clause, the Due Process Clause, the Supremacy Clause, and the Commerce Clause. (*E.g.*, SAC, ECF No. 149-3 p. 31, ECF No. 149-5 p. 5, 7.) To plead any of these claims (or others) under 42 U.S.C. § 1983 against a municipality or a government official in their official capacity, a plaintiff must also plead the existence of so-called *Monell* liability. "The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020).

To sufficiently plead the existence of a policy or custom, Plaintiff must "allege the existence of" one of the following:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government

20

officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Ortiz v. City of New York*, 19 Civ. 7887 (ER), 2021 U.S. Dist. LEXIS 130333, at *6–7 (S.D.N.Y. July 13, 2021) (quoting *Cuellar v. Love*, No. 11 Civ. 3632 (NSR), 2014 U.S. Dist. LEXIS 51622, 2014 WL 1486458, at *10 (S.D.N.Y. Apr. 11, 2014) (quoting *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996))).

Plaintiff utterly fails to plead how the City has a policy of forcing *pro se* individuals into coerced labor under the Thirteenth Amendment through (from what it seems from the SAC) litigating against them. Nor does the Plaintiff plead any information sufficient to show a policy or practice of the City to discriminate against persons with disabilities in the context of campaign finance rules. Instead, the purportedly wrongful conduct of the Defendants in these circumstances appears merely to be singular instances of misconduct, but "case law is clear that 'a single incident of errant behavior is an insufficient basis for finding that a municipal policy caused plaintiff's injury.'" *Torres v. City of New York*, 19 Civ. 6332 (ER), 2023 U.S. Dist. LEXIS 8079, at *13-14 (S.D.N.Y. Jan. 17, 2023) (quoting *Sarus v. Rotundo*, 831 F.2d 397, 402-03 (2d Cir. 1987)); *see also DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). These claims should therefore be dismissed.

Other than mentioning the Due Process Clause, the Supremacy Clause, and the Commerce Clause, Plaintiff does not provide further information such that the Defendants can glean the nature of the claims against them under those constitutional provisions. As such, they too should be dismissed.

21

## POINT VI

### TO THE EXTENT ANY OF THE INDIVIDUAL DEFENDANTS HAVE BEEN SUED IN THEIR INDIVIDUAL CAPACITIES, THEY ARE PROTECTED BY QUALIFIED IMMUNITY.

It is not apparent from the Complaint whether the individual Defendants are being sued in their personal capacities. To the extent claims are brought against any of the Defendants in their personal capacity, such Defendants are shielded by qualified immunity.

As the Second Circuit has recently emphasized, "'[t]he doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate [(1)] clearly established statutory or constitutional rights of which [(2)] a reasonable person would have known."'" *Russell v. Scott*, 170 F.4th 83, 93 (2d Cir. 2026) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, "[o]fficials are entitled to qualified immunity unless a plaintiff can show '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Russell*, 170 F.4th at 93 (quoting *Nat'l Rifle Ass'n of America v. Vullo*, 144 F.4th 376, 389 (2d Cir. 2025) (citation modified) (quoting *Tanvir v. Tanzin*, 120 F.4th 1049, 1060 (2d Cir. 2024))).

Here, the structure of Plaintiff's SAC makes it difficult to discern what federal statutory or constitutional rights each individual Defendant allegedly violated. The Complaint addresses Plaintiff's grievances in a general sense, speaking of violations of constitutional rights in sweeping language, but Plaintiff's allegations fail to establish a particular constitutional right that any of the individual Defendants actually violated. (And to the extent that the individual Defendants' conduct relates to the Voter Guide, the debates, or the CRB's rules, these are claim-precluded, as has been repeatedly emphasized.) Indeed, the contribution limits of the CFB are

22

lawful for the reasons set forth above, and the CFB's audit of Plaintiff's campaign was required by law. 52 R.C.N.Y. § 10-01(a) ("The Board shall conduct desk and field audits of participants and non-participants [in the Board's public financing program], regardless of whether the candidates receive public funds."). In short, Plaintiff fails to explain how the challenged activity by the individual Defendants including the application of a campaign finance program laws and the performance of a mandatory audit amounts to a constitutional violation.

Even if Plaintiff had adequately alleged the violation of a federal or constitutional right, which she does not, her allegations do not show such rights were "clearly established" such that a "reasonable person would have known." *Russell*, 170 F.4th at 93. To the extent that Plaintiff alleges that the individual Defendants violated Plaintiffs' rights by applying CFB rules and regulations and performing an audit that was mandated by law, the performance of those mandated duties is not clearly established unconstitutional conduct. Indeed, Plaintiff fails to explain how the individual Defendants should or could have known that performing an audit required by law would be a violation of Plaintiffs' rights.

Accordingly, the individual Defendants are entitled to qualified immunity.

**POINT VII**

### THE CFB LACKS THE CAPACITY TO BE SUED.

Plaintiff continues to purport to sue the CFB in its own right, notwithstanding the fact that she has joined the City of New York. However, the Charter of the City of New York provides that "[a]ll actions shall be brought in the name of the city of New York and *not* in that of any agency, except where otherwise provided by law." N.Y.C. Charter § 396 (emphasis added). As is black-letter law and this Court held in its O&O, City agencies like the CFB are incapable of being sued as subordinate divisions of the City of New York. *See, e.g.*, *Weinstein v.*

23

*City of New York*, No. 16-CV-6034-LTS-DCF, 2019 U.S. Dist. LEXIS 53099, at *17 (S.D.N.Y. Mar. 28, 2019). As such, the claims against the CFB should be dismissed.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court grant their motion to dismiss, dismiss the Second Amended Complaint, deny any and all claims set forth therein in their entirety, award judgment in Defendants' favor, and grant to Defendants such other and further relief that the Court may deem just and proper.

Dated:     June 24, 2026
           New York, New York

           STEVEN BANKS
           *Corporation Counsel of the City of New York*
           Attorney for the Defendants
           100 Church Street
           New York, NY 10007
           t: (212) 356-2649
           f: (212) 356-1148
           e: dthayer@law.nyc.gov


           By:    */s/ David S. Thayer*
                  DAVID S. THAYER
                  *Assistant Corporation Counsel*

24

25

## CERTIFICATION OF COMPLIANCE

Pursuant to 28 U.S.C. § 1746, I, **DAVID S. THAYER**, certify as follows:

Consistent with Local Civil Rule 7.1(c)'s requirement that, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, memoranda of law drafted by an attorney or with a computer in support of a motion may not exceed 8,750 words, and reply briefs may not exceed 3,500 words, the number of words in this document, as determined by Microsoft Word's Word Count feature, is 7,449 words.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:      June 24, 2026
            New York, New York

                                        */s/ David S. Thayer*
                                        DAVID S. THAYER