UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEVI ELIZABETH NAMPIAPARAMPIL,

Plaintiff,

– *against* –

THE NEW YORK CITY CAMPAIGN FINANCE BOARD, DAVID DUHALDE, *in his official capacity as Senior Candidate Services Liaison for the New York City Campaign Finance Board*, HANNAH EGERTON, *in her official capacity as the Director of Candidate Services for the New York City Campaign Finance Board*, AMY LOPREST, *in her official capacity as Executive Director for the New York City Campaign Finance Board*, BETHANY PERSKIE, *in her official capacity as General Counsel for the New York City Campaign Finance Board*, FREDERICK SCHAFFER, *in his official capacity as Chairman of the New York City Campaign Finance Board*, MATTHEW SOLLARS, *in his official capacity as Director of Public Relations for the New York City Campaign Finance Board*, JACLYN WILLIAMS, *in her official capacity as a Candidate Services Liaison for the New York City Campaign Finance Board*, and CITY OF NEW YORK,

Defendants.

**OPINION & ORDER**

23-cv-6391 (ER)

RAMOS, D.J.:

Pending before the Court is a motion for sanctions pursuant to Federal Rule of Civil Procedure 11 and the Court's inherent powers, filed by *pro se* Plaintiff Devi Elizabeth Nampiaparampil against the New York City Campaign Finance Board ("CFB"), David Duhalde, Hannah Egerton, Amy Loprest, Bethany Perskie, Frederick Schaffer, Matthew Sollars, Jaclyn Williams, and the City of New York (collectively, "Defendants"). *See* Doc. 111. Nampiaparampil alleges that Defendants have taken inconsistent positions on the question of whether she is permitted to hire counsel for her various cases without penalty. For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

The Court assumes familiarity with the facts and the procedural history from the previous opinions and orders in this case. *See Nampiaparampil v. New York City Campaign Finance Board*, No. 23 Civ. 6391 (ER), 2024 WL 2058382 (S.D.N.Y. May 9, 2024); Doc. 143 at 1–3 (detailing procedural history through April 29, 2026).

On September 20, 2024, Nampiaparampil requested a pre-motion conference for leave to file a motion to sanction Defendants for discovery-related issues. Doc. 60 at 1. Primarily, Nampiaparampil alleged that Defendants deleted her Voter Guide video submission from their website and failed to preserve the video, which she may have used in support of her case. *Id.* at 1, 3. She also alleged that Defendants deleted information from past Voter Guides, and audits of other candidates. *Id.* at 1–2. On September 27, 2024, Defendants filed a letter opposing Nampiaparampil's request. Doc. 65 at 1. On December 27, 2024, Nampiaparampil filed a motion for sanctions against Defendants (the "December 2024 motion"),[1] arguing that Defendants: made inconsistent statements regarding whether Nampiaparampil may be subject to an audit or penalties if she were to hire counsel for various state and federal proceedings; deleted information from past Voter Guides and audit reports; denied the existence of a public hearing; and improperly sought a stay of discovery. Doc. 86 at 2, 4–5. On January 16, 2025, Defendants responded to the motion, stating that Nampiaparampil failed to give them adequate notice pursuant to the safe-harbor provision of Rule 11; that their legal arguments and factual assertions were not frivolous or false; and that Nampiaparampil failed to seek a pre-motion conference in accordance with this Court's rules. Doc. 99 at 12, 21. On January 23, 2025, Nampiaparampil replied, reiterating her prior arguments, elaborating her allegation that Defendants made inconsistent statements about her ability to hire counsel, and adding allegations related to failure to issue an enforcement notice. Doc. 100 at 2, 6.

[1] Nampiaparampil's September 20, 2024 filing was a pre-motion letter, not a motion for sanctions. Doc. 60. Despite this, Nampiaparampil's December 27, 2024 filing is listed on the docket as a "second" motion for sanctions. Doc. 86.

On January 30, 2025, the Court held a conference at which the December 2024 motion was denied without prejudice. Docket Entry dated January 30, 2025. At the conference, the Court discussed the requirements of the safe-harbor provision, including the requirement to send a notice to Defendants and give them twenty-one days to resolve the issue before filing a motion for sanctions. Doc. 112 at 20–21.

On February 10, 2025, eleven days after the conference, Nampiaparampil filed yet another motion for sanctions—the instant motion—alleging that Defendants made inconsistent and misleading statements about her ability to hire counsel in federal and state court proceedings.[2] Doc. 111 at 1. Nampiaparampil states that despite Defendants' statements that she can hire an attorney for the instant case, Defendants' statements in a February 6, 2025 state court filing suggest she may not hire an attorney for the state court case. *Id.* at 2–3. On February 19, 2025, Defendants partially responded to Nampiaparampil's motion, arguing that their statements were consistent, and that she again failed to satisfy the requirements of the safe-harbor provision. Doc. 121 at 1–2.

On February 27, 2025, seventeen days *after* filing the motion, Nampiaparampil sent a safe-harbor notice to Defendants. Doc. 131-1 at 1. In the notice, Nampiaparampil states among other things that Defendants: took contradictory positions regarding whether she may hire counsel; denied the existence of inconsistent enforcement actions against political candidates whose campaigns are audited; suppressed evidence by enforcing a separate action against another person allegedly a witness to this lawsuit; and took inconsistent positions across the instant case and other cases. Doc. 131-2 at 2–4. Nampiaparampil also states that the Judicial Panel on Multidistrict Litigation and the New York State Supreme Court were reviewing Defendants' actions. *Id.* at 1.

On March 21, 2025, twenty-two days after sending the safe-harbor notice, Nampiaparampil filed a letter (the "March 2025 Letter") which is titled "notice of non-

[2] Nampiaparampil's February 10, 2025 filing is listed on the docket as a "third" motion for sanctions, Doc. 111.

compliance with safe harbor notice" and which attaches the safe-harbor notice. Doc. 131 at 1. In the letter, she alleges that Defendants did not take corrective action in the twenty-one days after she served the notice. *Id.* She also states that she "reserves the right to seek sanctions . . . at a future date." *Id.*

During a conference on April 29, 2026, this Court ordered Defendants to respond to the instant motion. Doc. 143 at 3. On June 19, 2026, Defendants responded, arguing that: sanctions in this action are improper because the statements at issue were made in state court, they never received notice that satisfied the safe-harbor provision, and their statements were not lacking in support or frivolous. Doc. 157. Nampiaparampil filed an additional document on June 22, 2026 to detail her position on the procedural history related to the motions for sanctions.[3] *See* Doc. 158 at 1.

## II. LEGAL STANDARD

Courts liberally construe pleadings prepared by *pro se* litigants and hold them "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). It is appropriate to "liberally interpret[] *pro se* submissions to raise the strongest arguments that they suggest." *Gomez v. Brown*, 655 F. Supp. 2d 332, 342 (S.D.N.Y. 2009) (citation and internal quotation omitted). "The underlying reasoning of this policy is that [i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* (internal quotation omitted) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "This liberal standard, however, does not excuse a *pro se* litigant from complying with relevant rules of procedural and

---

[3] The document asserts, among other things, that the instant motion was fully briefed once Nampiaparampil filed Doc. 131, and that the December motion was "paused" until Nampiaparampil filed a safe harbor notice. Doc. 158 at 4. The Court disagrees with these characterizations. Instead, the instant motion was fully briefed when Defendants filed Doc. 157, and the December motion was denied, not paused, at the January 30, 2025 conference.

substantive law." *Langdon v. County of Columbia*, 321 F. Supp. 2d 481, 483 (N.D.N.Y. 2004) (citing *Traguth*, 710 F.2d at 95).

Pursuant to Rule 11, by presenting a pleading to the court, an attorney certifies to the best of her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Pursuant to the same rule, a motion for sanctions is required to be "made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). The proposed motion must first be served on the party who allegedly violated the Rule. *Id.* The non-movant is then afforded a twenty-one-day safe-harbor period to withdraw or correct the challenged conduct before the movant is allowed to file or present the motion to the court. *Id.*

## III. DISCUSSION

### A. The Procedural Requirements of Rule 11

Defendants state that Nampiaparampil failed to provide notice twenty-one days before filing the instant motion. Doc. 157 at 4. Defendants state that the only notice Nampiaparampil sent to them was on February 27, 2025, and the conduct complained of in the notice differed in scope from the conduct complained of in the instant motion. *Id.* Nampiaparampil does not state that she sent a notice to Plaintiffs before she filed the instant motion with the Court, but instead references the December 2024 motion. Doc. 111 at 3; *see generally* Docs. 111, 131, 158. She states that the instant motion for sanctions was filed as a response to the January 30, 2025 conference, Doc. 158 at 4, in which the Court discussed the requirements of the safe-harbor provision, Doc. 112 at 20–21. The Court will analyze the February 27, 2025 notice, the prior motion, and the January 30, 2025, conference in turn.

The "safe-harbor" provision is meant to prevent the filing of a motion for sanctions "after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003); *see also Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir. 2003) ("This notice requirement permits the subjects of sanctions motions to confront their accuser and rebut the charges leveled against them in a pointed fashion."). As the Second Circuit has noted, "[t]he safe-harbor provision is a *strict procedural requirement*." *Star Mark Management, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) (emphasis added).

Nampiaparampil's February 27, 2025 safe-harbor notice to Defendants does not satisfy the safe-harbor provision: the notice was not served on Defendants twenty-one days before filing the instant motion for sanctions with the Court. Doc. 131-1 at 1; *see Star Mark*, 682 F.3d at 175. Indeed, Nampiaparampil sent the February 27, 2025 notice *after* filing the instant motion on February 10, 2025. Further, the conduct listed in the safe-harbor notice does not describe "the specific conduct or omission for which the sanctions are being considered." *Star Mark*, 682 F.3d at 175. For instance, the safe-harbor notice states generally that Defendants took contradictory positions regarding whether Nampiaparampil may hire counsel. Doc. 131-2 at 1–2. However, the notice says nothing of Defendants' statements at the January 30, 2025 hearing, which are a central topic of the instant motion. *Id.*, Doc. 111 at 1–2; *see Storey*, 347 F.3d at 389 (finding no satisfaction of the requirements of the safe-harbor provision where a notice failed to include a direct reference to a statement included in the motion for sanctions). Thus, the safe-harbor notice did not give Defendants adequate notice of the specific conduct at issue in the instant motion. *See Star Mark*, 682 F.3d at 175.

Nampiaparampil's December 2024 motion also does not satisfy the safe-harbor provision for the instant motion. Putting aside that the Court denied Nampiaparampil's December 2024 motion at the January 30, 2025 conference, her previous motion was not

served on Defendants, thus failing to meet the requirement of Rule 11. *See Robinson v. De Niro*, 614 F. Supp. 3d 73, 82 (S.D.N.Y. 2022) (holding that the requirement to serve the motion for sanctions is separate from the requirement to file the motion with the court promptly), *report and recommendation adopted*, No. 19 Civ. 09156 (LJL), 2022 WL 7091518 (S.D.N.Y. Oct. 12, 2022); *Star Mark*, 682 F.3d at 175–76.

Nampiaparampil's December motion also fails to satisfy the safe-harbor provision as it does not describe "the specific conduct or omission for which the sanctions are being considered." *Star Mark*, 682 F.3d at 175. While the instant motion and the December 2024 motion are based on some overlapping conduct, the conduct complained of in each motion differs in scope. For instance, in the instant motion, Nampiaparampil argues that Defendants' February 6, 2025 filing in state court constitutes sanctionable conduct. Doc. 111 at 2. The state court filing occurred four days prior to the filing of the instant motion and thus could not have been included as allegedly sanctionable conduct in the December 2024 motion. Thus, Defendants were not given adequate notice of the specific conduct at issue in the instant motion. *See Star Mark*, 682 F.3d at 175.

The Court's instruction during the January 30, 2025 conference also does not satisfy the safe-harbor provision requirements. The discussion at the hearing regarding the December 2024 motion and the safe-harbor provision did not "serve" the instant motion on the Defendants. *See SFM Realty Corp. v. Lemanski*, 20 Civ. 209 (KPF), 2021 WL 21987, at *5 (S.D.N.Y. Jan. 4, 2021) (concluding that neither a court order permitting a party to file a motion for sanctions nor a letter indicating "intent to file" motion for sanctions satisfied or waived the safe-harbor provision requirement); *Photocircuits Corp. v. Marathon Agents, Inc.*, 162 F.R.D. 449, 452 (E.D.N.Y. 1995) ("The granting of [leave to move for sanctions] in no way was intended, nor could it, circumvent the amended provisions of Rule 11."); *Chong v. Kwo Shin Chang*, 599 F. App'x 18, 19 (2d Cir. 2015) (summary order) (concluding that an informal e-mail without service of a separate Rule 11 motion was insufficient to satisfy Rule 11). Further, even if the discussion did equate to

notice of the motion, the discussion occurred only eleven days prior to the filing of the motion, not twenty-one days or more. *See Star Mark*, 682 F.3d at175.

Nampiaparampil did not otherwise serve the instant motion on Defendants before filing it with the Court on February 10, 2025. *See* Docs. 111, 158. As such, Nampiaparampil did not meet the procedural requirement to serve the motion detailing the specific conduct to Defendants twenty-one days before filing the motion. *See* Fed. R. Civ. P. 11(c)(2); *Star Mark*, 682 F.3d at 175. On this basis alone, the motion for sanctions must be denied.

In the March 2025 Letter filed after the instant motion and titled "notice of non-compliance with safe harbor notice," Nampiaparampil states that her February 27, 2025 notice to Defendants triggered the twenty-one day period for Defendants to take corrective action. Doc. 131 at 1. However, Nampiaparampil did not file a motion for sanctions twenty-one days or more after sending the safe-harbor notice. Nampiaparampil does not argue the March 2025 Letter is a motion for sanctions; she instead states she filed the letter because it was relevant for the Judicial Panel on Multidistrict Litigation. *See id.* at 1. In fact, she later confirms that she intended the instant motion, Doc. 111, to be her motion for sanctions. Doc. 158 at 4. For the avoidance of doubt, the March 2025 Letter does not satisfy the Rule 11 requirements either, for the substantive reasons listed below, the alleged conduct is not sanctionable.

**B. The Substantive Requirements of Rule 11**

Even if Nampiaparampil satisfied the procedural requirements for Rule 11 sanctions, a request for sanctions would still be denied based on the substance of the allegations.

Nampiaparampil argues that the Court should use its inherent powers to sanction Defendants for allegedly inconsistent positions between the present case and two cases outside of federal court. Doc. 111 at 3–4; *see* Doc. 131 at 1; Doc. 131-2 at 2–4. Defendants argue that their position has been consistent: campaign-related legal

expenses may be subject to auditing, but legal proceedings not in furtherance of a candidate's campaign are not subject to audit. Doc. 157 at 2. Defendants also state that the statements they made in state courts are not sanctionable in federal court. *Id.* at 2–4.

The Court may impose sanctions through its inherent powers, which derive from the very nature of courts and their need to be able "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31 (1962)). The Supreme Court has made clear that because of the "very potency" of a court's inherent powers, they should be exercised "with restraint and discretion." *Chambers*, 501 U.S. at 44. "The issue of sanctions brings to the surface the tension between the goal of discouraging abuse of the legal system and that of encouraging refinement of the law through the assertion of novel but non-frivolous legal theories." *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 166 (2d Cir. 1999). Accordingly, a clear "showing of bad faith" is required to justify the use of the court's inherent power. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (citation omitted).

The Court does not find bad faith or improper purpose in the Defendants' repeated assurances that it is permissible for Nampiaparampil to retain a lawyer in connection with this federal lawsuit. To the extent that Nampiaparampil asks this Court to compare Defendants' position to their position in other courts, the Court will not sanction Defendants' statements in another court. "[B]ecause it is a federal rule, Rule 11 does not apply to filings in state court." *Ray v. Fariello*, No. 18 Civ. 11211 (JLR) (KHP), 2024 WL 2785261, at *3 (S.D.N.Y. May 10, 2024), *report and recommendation adopted*, No. 18 Civ. 11211 (JLR), 2024 WL 2785141 (S.D.N.Y. May 28, 2024); *see Mareno v. Jet Aviation of America, Inc.*, 970 F.2d 1126, 1128 (2d Cir. 1992) (holding Rule 11 has no retrospective application to a complaint filed in state court).

## IV. CONCLUSION

For the reasons set forth above, and providing due deference to the plaintiff's *pro se* status, the motion for sanctions is DENIED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 111.

It is SO ORDERED.

Dated: September 23, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.